A–570–952 and C–570–953: Narrow Woven Ribbons With Woven Selvedge From China

*Requestor:* D&F Consolidated, Inc., DBA Car-Mel Products Inc. Three label tapes are covered by the scope of the AD and CVD orders on narrow woven ribbon with woven selvedge from China because they meet the physical specifications outlined by the scope and do not qualify for an exclusion; July 27, 2021.

A–570–909: Certain Steel Nails From China

*Requestor:* Simpson Strong-Tie Company (Simpson). Simpson's split-drive masonry anchors are outside the scope of the AD order. Consistent with the U.S. Court of Appeals for the Federal Circuit's reasoning in *OMG, Inc.* v. *United States,* we find that Simpson's masonry anchors are not nails because the anchors require pre-drilled holes for installation. This is a revision, based on litigation, to our previous scope ruling. *See Certain Steel Nails from the People's Republic of China: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision,* 86 FR 43994 (August 11, 2021).

A–570–909: Certain Steel Nails From China

*Requestor:* Simpson Strong-Tie Company (Simpson). Simpson's crimp drive anchors are outside the scope of the AD order. Consistent with the U.S. Court of Appeals for the Federal Circuit's reasoning in *OMG, Inc.* v. *United States,* we find that Simpson's masonry anchors are not nails because the anchors require pre-drilled holes for installation. This is a revision, based on litigation, to our previous scope ruling. *See Certain Steel Nails from the People's Republic of China: Notice of Court Decision Not in Harmony With Final Scope Ruling and Notice of Amended Final Scope Ruling Pursuant to Court Decision,* 86 FR 43993 (August 11, 2021).

A–570–073 and C–570–074: Common Alloy Aluminum Sheet From China

*Requestor:* Sunbeam Products Inc. Stamped circular disc blanks are not covered by the scope of the AD and CVD orders on common alloy aluminum sheet from China because stamped circular disc blanks are stamped or punched from aluminum sheet in China, are in non-rectangular shapes and are no longer in coils or cut-to-length sheets when exported from China, and the punching of these stamped circular disc blanks has the functional purpose of preparing the discs to be pressed into circular vessels such as pots and pans; August 20, 2021.

A–570–108 and C–570–109: Ceramic Tile From China

*Requestor:* Maryland Mosaics, LLC. Decorative ceramic tile mosaic pieces in heart, star, circle, and petal shapes are covered by the scope of the AD and CVD orders on ceramic tile from China because they are tiles made from porcelain and fall within the tile sizes covered by the scope; August 31, 2021.

A–570–117 and C–570–118: Wood Mouldings and Millwork Products From China

*Requestor:* Greenbrier International, Inc. and Family Dollar Services, LLC. Craft dowels are covered by the scope of the AD and CVD orders on wood mouldings and millwork products from China because they are dowels made of wood and continuously shaped; September 7, 2021.

*Notification to Interested Parties*

Interested parties are invited to comment on the completeness of this list of completed scope inquiries and anti-circumvention determinations made during the period July 1, 2021 through September 30, 2021. Any comments should be submitted to the Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, Enforcement and Compliance, International Trade Administration, via email to *CommerceCLU@trade.gov.*

This notice is published in accordance with 19 CFR 351.225(o).

Dated: December 2, 2021.

**James Maeder,**
*Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations.*

[FR Doc. 2021–26552 Filed 12–7–21; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

## International Trade Administration

**[A–549–502]**

## Circular Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The Department of Commerce (Commerce) determines that circular welded carbon steel pipes and tubes from Thailand were sold at less than normal value during the period of review (POR) March 1, 2019, through February 29, 2020.

**DATES:** Applicable December 8, 2021.

**FOR FURTHER INFORMATION CONTACT:** Thomas Schauer, AD/CVD Operations, Office I, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–0410.

**SUPPLEMENTARY INFORMATION:**

### Background

On June 8, 2021, Commerce published the preliminary results of the 2019–2020 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand.[1] The review covers 29 producers and/or exporters of subject merchandise. We invited interested parties to comment on the *Preliminary Results.* A full description of the events since the *Preliminary Results* is contained in the Issues and Decision Memorandum.[2] Commerce conducted this review in accordance with section 751(a) of the Tariff Act of 1930, as amended (the Act).

### Scope of the Order [3]

The products covered by the antidumping duty *Order* are circular welded carbon steel pipes and tubes. A full description of the scope of the *Order* is contained in the Issues and Decision Memorandum.

### Analysis of Comments Received

All issues raised in the case and rebuttal briefs are listed in the appendix to this notice and addressed in the Issues and Decision Memorandum. The Issues and Decision Memorandum is a public document and is on file electronically *via* Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *https://access.trade.gov.* In addition, a

---

[1] *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2019–2020,* 86 FR 30405 (June 8, 2021) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum.

[2] *See* Memorandum, ''Circular Welded Carbon Steel Pipes and Tubes from Thailand: Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination, In Part; 2019–2020,'' dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum).

[3] *See Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand,* 51 FR 8341 (March 11, 1986) (*Order*).

complete version of the Issues and Decision Memorandum can be accessed directly at *https://access.trade.gov/public/FRNoticesListLayout.aspx.*

## Final Determination of No Shipments

We preliminarily found that Blue Pipe Steel Center (Blue Pipe) and K Line Logistics (Thailand) Ltd. (K-Line) each had no shipments of subject merchandise during the POR.[4] Based on the comments received, we continue to find that Blue Pipe had no shipments.[5] Moreover, no party commented on the *Preliminary Results* regarding the no-shipments decision with respect to K-Line. Therefore, for these final results, we continue to find that each of these companies had no shipments of subject merchandise during the POR and will issue appropriate instructions to U.S. Customs and Border Protection (CBP) based on these final results.

## Changes Since the Preliminary Results

Based on a review of the record and comments received from interested parties regarding our *Preliminary Results,* and for the reasons explained in the Issues and Decision Memorandum, we made revisions to our calculations in the *Preliminary Results* of the weighted-average dumping margin for the mandatory respondent, Saha Thai Steel Pipe Public Co., Ltd., also known as Saha Thai Steel Pipe (Public) Co., Ltd. (collectively, Saha Thai), and the weighted-average dumping margin assigned to the non-examined companies.

## Rate for Non-Examined Companies

In the *Preliminary Results,* we determined the weighted-average dumping margin for Saha Thai that is not zero, *de minimis* or based entirely on facts available. For the other mandatory respondent, Blue Pipe, we determined that Blue Pipe had no shipments during the POR and accordingly we did not determine a weighted-average dumping margin for Blue Pipe for these final results. Following the guidelines for calculating the ''all-others'' rate in a less-than-fair-value investigation, we accordingly determined that the weighted-average dumping margin for each of the companies not selected for individual examination to be equal to the weighted-average dumping margin calculated for Saha Thai.

## Final Results of Administrative Review

Commerce determines that the following weighted-average dumping margins exist for the period March 1, 2019, through February 29, 2020:

| Producer/exporter | Weighted-average dumping margin (percent) |
| --- | --- |
| Saha Thai Steel Pipe Public Company, Ltd .................................................... | 36.97 |

**Rate Applicable to the Following Non-Selected Companies**

| | |
| --- | --- |
| Apex International Logistics .................. | 36.97 |
| Aquatec Maxcon Asia ........................... | 36.97 |
| Asian Unity Part Co., Ltd ...................... | 36.97 |
| Bis Pipe Fitting Industry Co., Ltd .......... | 36.97 |
| Chuhatsu (Thailand) Co., Ltd ................ | 36.97 |
| CSE Technologies Co., Ltd .................. | 36.97 |
| Expeditors International (Bangkok) ....... | 36.97 |
| Expeditors Ltd ...................................... | 36.97 |
| FS International (Thailand) Co., Ltd ...... | 36.97 |
| Kerry-Apex (Thailand) Co., Ltd ............ | 36.97 |
| Oil Steel Tube (Thailand) Co., Ltd ........ | 36.97 |
| Otto Ender Steel Structure Co., Ltd ...... | 36.97 |
| Pacific Pipe and Pump ......................... | 36.97 |
| Pacific Pipe Public Company Limited ... | 36.97 |
| Panalpina World Transport Ltd ............. | 36.97 |
| Polypipe Engineering Co., Ltd .............. | 36.97 |
| Schlumberger Overseas S.A ................ | 36.97 |
| Siam Fittings Co., Ltd ........................... | 36.97 |
| Siam Steel Pipe Co., Ltd ...................... | 36.97 |
| Sino Connections Logistics (Thailand) Co., Ltd .............................................. | 36.97 |
| Thai Malleable Iron and Steel .............. | 36.97 |
| Thai Oil Group ...................................... | 36.97 |
| Thai Oil Pipe Co., Ltd .......................... | 36.97 |
| Thai Premium Pipe Co., Ltd ................. | 36.97 |
| Vatana Phaisal Engineering Company | 36.97 |
| Visavakit Patana Corp., Ltd .................. | 36.97 |

## Disclosure

Commerce intends to disclose the calculations performed for these final results within five days of the date of publication of this notice, in accordance with 19 CFR 351.224(b).

## Assessment Rates

Pursuant to section 751(a)(2)(A) of the Act and 19 CFR 351.212(b), Commerce shall determine, and CBP shall assess, antidumping duties on all appropriate entries of subject merchandise in accordance with the final results of this review. Commerce intends to issue assessment instructions to CBP no earlier than 35 days after the date of publication of the final results of this review in the **Federal Register**. If a timely summons is filed at the U.S. Court of International Trade, the assessment instructions will direct CBP not to liquidate relevant entries until the time for parties to file a request for a statutory injunction has expired (*i.e.,* within 90 days of publication).

For Saha Thai, we calculated importer-specific antidumping duty assessment rates on the basis of the ratio of the total amount of dumping calculated for each importer's examined sales and the total entered value of those sales in accordance with 19 CFR 351.212(b)(1). If an importer-specific assessment rate is zero or *de minimis,* then we will instruct CBP to liquidate the entries for that importer without regard to antidumping duties.

For entries of subject merchandise during the POR produced by Saha Thai for which it did not know its merchandise was destined for the United States, and for Blue Pipe and K-Line, the two companies which we find had no shipments during the POR, we will instruct CBP to liquidate unreviewed entries at the all-others rate if there is no rate for the intermediate company(ies) involved in the transaction.

The assessment rate for antidumping duties for each of the companies not selected for individual examination, will be equal to the weighted-average dumping margin listed above in the final results of review.

## Cash Deposit Requirements

The following cash deposit requirements will be effective upon publication of the final results of these reviews for shipments of the subject merchandise from China entered, or withdrawn from warehouse, for consumption on or after the publication date, as provided by section 751(a)(2)(C) of the Act: (1) The cash deposit rate for the companies listed above in the final results of review will be equal to the company-specific weighted-average dumping margin established in the final results of this review; (2) for previously reviewed or investigated companies not listed above in the ''Final Results of Administrative Review,'' above, including companies for which Commerce may determine to have had no shipments during the POR, the cash deposit rate will continue to be the company-specific rate published for the most recently completed segment of this proceeding; (3) if the exporter is not a firm covered in this review or another completed segment of this proceeding, but the producer is, then the cash deposit rate will be the rate established for the most recently completed segment of this proceeding for the producer of the merchandise; and (4) if neither the exporter nor the producer is a firm covered in this or any previously completed segment of this proceeding, then the cash deposit rate will be the all-others rate of 15.67 percent established in the less-than-fair-value investigation.[6]

These deposit requirements, when imposed, shall remain in effect until further notice.

---

[4] *See Preliminary Results,* 86 FR 30406.

[5] *See* Issues and Decision Memorandum at comment 1.

[6] *See Order,* 51 FR at 8341.

Barcode:4187711-03 A-549-502 REV - Admin Review 3/1/19 - 2/29/20

**69622**    **Federal Register** / Vol. 86, No. 233 / Wednesday, December 8, 2021 / Notices

## Notification to Importers

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this POR. Failure to comply with this requirement could result in Commerce's presumption that reimbursement of the antidumping duties occurred and the subsequent assessment of doubled antidumping duties.

## Notification Regarding Administrative Protective Order

This notice also serves as a reminder to parties subject to administrative protective order (APO) of their responsibility concerning the return or destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305. Timely written notification of the return or destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and terms of an APO is a violation subject to sanction.

## Notification to Interested Parties

Commerce is issuing and publishing this notice in accordance with sections 751(a)(1) and 777(i)(1) of the Act and 19 CFR 351.221(b)(5).

Dated: December 2, 2021.

**Ryan Majerus,**

*Deputy Assistant Secretary for Policy and Negotiations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

## Appendix

### List of Topics Discussed in the Issues and Decision Memorandum

I. Summary
II. Background
III. Scope of the Order
IV. Changes to the Preliminary Results
V. Discussion of the Issues
   Comment 1: Whether Commerce Should Base the Weighted-Average Dumping Margins for Saha Thai and Blue Pipe on Adverse Facts Available
   Comment 2: Whether Saha Thai Created a Fictitious Market
   Comment 3: Whether Saha Thai Is Affiliated with Certain Companies
   Comment 4: Whether Commerce Should Require Saha Thai and Blue Pipe to Resubmit Certain Submissions
   Comment 5: Whether Commerce Must Take Steps to Ensure the Government Can Collect the Duties Owed
   Comment 6: Whether Commerce Should Reconsider Prior Reviews to Account for Potential Fraud
   Comment 7: Whether Commerce Should Adjust Saha Thai's Costs to Account for a Particular Market Situation
   Comment 8: Whether Commerce's Preliminary Determination for Non-Examined Companies Is Contrary to Law
   Comment 9: Whether Commerce Should Calculate an Individual Weighted-Average Dumping Margin for Thai Premium Pipe Co., Ltd.
VI. Recommendation

[FR Doc. 2021–26573 Filed 12–7–21; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**[RTID 0648–XB547]**

### Marine Mammals; File No. 25900

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice; receipt of application.

**SUMMARY:** Notice is hereby given that Echo Pictures Ltd. (Responsible Party: Joe Stevens), St Nicholas House, 31–34 High Street, Bristol, BS1 2AW, United Kingdom has applied in due form for a permit to conduct commercial or educational photography on humpback whales (*Megaptera novaeangliae*).

**DATES:** Written, telefaxed, or email comments must be received on or before January 7, 2022.

**ADDRESSES:** These documents are available upon written request via email to *NMFS.Pr1Comments@noaa.gov.*

Written comments on this application should be submitted via email to *NMFS.Pr1Comments@noaa.gov.* Please include File No. 25900 in the subject line of the email comment.

Those individuals requesting a public hearing should submit a written request via email to *NMFS.Pr1Comments@noaa.gov.* The request should set forth the specific reasons why a hearing on this application would be appropriate.

**FOR FURTHER INFORMATION CONTACT:** Jordan Rutland or Carrie Hubard, (301) 427–8401.

**SUPPLEMENTARY INFORMATION:** The subject permit is requested under the authority of the Marine Mammal Protection Act of 1972, as amended (MMPA; 16 U.S.C. 1361 *et seq.*) and the regulations governing the taking of marine mammals (50 CFR part 216).

The applicant proposes to film humpback whales off the coast of Maui, Hawaii to obtain footage for a television series. Up to 1,120 humpback whales may be harassed during filming from vessels, an unmanned aircraft system, and underwater divers. The permit would expire April 30, 2022.

It has come to the agency's attention that the 2016 interim final humpback approach rule (50 CFR 216.19; 81 FR 62010, September 8, 2016) does not explicitly exempt permits issued under section 104(c)(6) of the MMPA from its prohibitions. It is not the agency's intent to preclude the issuance of permits or authorizations consistent with the requirements of the MMPA. We interpret the rule to allow issuance of these permits. Consistent with this interpretation, it has been our practice to continue to issue section 104(c)(6) permits that are in compliance with the Act's requirements and our review procedures, as evidenced by issuance of four such permits since the rule's effective date. However, to eliminate any potential ambiguity, we intend to revise the rule to explicitly clarify that photography permits issued under section 104(c)(6) of the MMPA are exempt from the prohibitions on approach.

In compliance with the National Environmental Policy Act of 1969 (42 U.S.C. 4321 *et seq.*), an initial determination has been made that the activity proposed is categorically excluded from the requirement to prepare an environmental assessment or environmental impact statement.

Concurrent with the publication of this notice in the **Federal Register**, NMFS is forwarding copies of the application to the Marine Mammal Commission and its Committee of Scientific Advisors.

Dated: December 3, 2021.

**Julia M. Harrison,**

*Chief, Permits and Conservation Division, Office of Protected Resources, National Marine Fisheries Service.*

[FR Doc. 2021–26563 Filed 12–7–21; 8:45 am]

**BILLING CODE 3510–22–P**

---

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**[RTID 0648–XB617]**

### Taking and Importing Marine Mammals; Taking Marine Mammals Incidental to Geophysical Surveys Related to Oil and Gas Activities in the Gulf of Mexico

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice of issuance of Letters of Authorization.

**SUMMARY:** In accordance with the Marine Mammal Protection Act