A-549-502<br>
Remand<br>
Court No. 21-00627<br>
POR: 03/01/2019 – 02/29/2020<br>
**Public Document**<br>
E&C/OI: TES

*Saha Thai Steel Pipe Public Company Limited v. United States*,
Consolidated Court No. 21-00627 (CIT October 11, 2022)
Circular Welded Carbon Steel Pipes and Tubes from Thailand

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Saha Thai Steel Pipe Public Company Limited v. United States*, Court No. 21-00627 (CIT October 11, 2022) (*Remand Order*). These final results of redetermination concern the final results of the 2019-2020 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes (CWP) from Thailand.[1]

In the *Remand Order*, the Court granted Commerce's request for a voluntary remand in order to "recalculate the weighted-average dumping margin without making a cost-based particular market situation adjustment."[2]

**II.   LEGAL FRAMEWORK**

Section 504 of the Trade Preferences Extension Act of 2015 (TPEA) added the concept of "particular market situation" in the definition of the term "ordinary course of trade," and for

---

[1] *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 86 FR 69620 (December 8, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Remand Order* at 1 and 4.

purposes of constructed value under section 773(e) of Tariff Act of 1930, as amended (the Act).[3] Section 773(e) of the Act states that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under this subtitle or any other calculation methodology."  Although the Act does not define "particular market situation," the SAA explains that, for example, a situation may exist "where there is government control over pricing to such an extent that home market prices cannot be considered competitively set" or where there are "differing patterns of demand in the United States and the foreign market."[4]

Section 504 of the TPEA also amended the Act to provide Commerce with additional discretion when applying the "particular market situation" concept to determine normal value.[5] Specifically, Congress added the particular market situation (PMS) concept to sales and transactions that Commerce will consider outside the "ordinary course of trade," and are thus, not usable in its antidumping calculations.  Under section 771(15) of the Act, Commerce shall find "sales and transactions" to be "outside the ordinary course of trade" in situations in which it "determines that the particular market situation prevents a proper comparison with the export price or constructed export price."[6]  In addition to adding the concept of "particular market situation" to the definition of the term "ordinary course of trade" in section 771(15) of the Act, section 504 of the TPEA added the concept of "particular market situation" to the definition of constructed value under section 773(e) of the Act.  Section 773(e) of the Act states that "if a

---

[3] *See Trade Preferences Extension Act of 2015*, Pub. L. No. 114-27, 129 Stat. 362, 385 (2015) (TPEA).
[4] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 822.
[5] *See* TPEA at 385.
[6] *See* TPEA.

2

particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under this subtitle or any other calculation methodology." At the time Commerce issued the *Final Results*, Commerce interpreted the amendments to sections 771(15) and 773(e) of the Act to be applicable for purposes of Commerce's below-cost test under section 773(b)(3) of the Act.

### III.  BACKGROUND

In the *Final Results*, Commerce found that record evidence supported a finding that a PMS existed in Thailand which distorted the costs of production of CWP due to the totality of circumstances.[7] Specifically, Commerce found that a PMS resulted from the "collective impact of the effects of the subsidization of {hot-rolled coil (HRC)} by the {Government of Thailand} and distorted import prices of HRC due to global overcapacity, dumping, and subsidization."[8] Therefore, for the *Final Results*, Commerce calculated a PMS adjustment to the cost of production based on the regression analysis submitted by Wheatland Tube Company (Wheatland).[9]

Shortly after Commerce published the *Final Results*, the U.S. Court of Appeals for the Federal Circuit (CAFC) held that "section {773 of the Act}, as amended by the TPEA, clearly indicates that Congress intended to limit PMS adjustments to calculations pursuant to the 'constructed value' and not to authorize Commerce to make such adjustments pursuant to the 'cost of production' subsection."[10] In response to Commerce's request for a remand to "recalculate the weighted-average dumping margin without making a cost-based particular

---

[7] *See Final Results* IDM at Comment 1.
[8] *Id.*
[9] *Id.*
[10] *See Hyundai Steel Co., Ltd. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021) (*Hyundai Steel*).

market situation adjustment," the Court issued the *Remand Order* granting Commerce's request.[11]

On October 27, 2022, we released the Draft Results to interested parties for comment.[12] On November 3, 2022, we received comments from Wheatland,[13] Saha Thai Steel Pipe Public Company, Ltd. (Saha Thai),[14] and Thai Premium Pipe Company Ltd. (TPP).[15]

IV.    ANALYSIS

Pursuant to the CAFC's decision in *Hyundai Steel* referenced above, the statute only permits the adjustment of cost of production for a PMS when making comparisons based on constructed value. In this review, all U.S. sales reported by Saha Thai matched to sales of identical or similar control numbers of its home market sales.[16] As a result, it was not necessary to match to constructed value under section 773(b) of the Act. Accordingly, we have not made a PMS adjustment to the cost of production for these final results of redetermination and have recalculated Saha Thai's weighted-average dumping margin accordingly.[17]

Furthermore, because we based the rate for non-selected companies on the rate for Saha Thai,[18] we used the recalculated rate for Saha Thai for the only non-selected respondent who is party to this litigation, Thai Premium Pipe Co., Ltd., for these final results of redetermination.

---

[11] *See Remand Order* at 1 and 4.
[12] *See* Draft Results of Remand Redetermination, *Saha Thai Steel Pipe Public Company Limited v. United States*, Consolidated Court No. 21-00627 (CIT October 11, 2022), dated October 27, 2022 (Draft Results).
[13] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Wheatland's Comments on Draft Remand Results," dated November 3, 2022 (Wheatland's Comments).
[14] *See* Saha Thai's Letter, "Saha Thai's Comments Concerning the Department's Draft Remand Redetermination in Consolidated Court Case No. 21-00627, *Saha Thai Steel Pipe Public Company Limited v. United States* Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated November 3, 2022 (Saha Thai's Comments).
[15] *See* TPP's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Comments on Commerce's Draft Remand Results," dated November 3, 2022 (TPP's Comments).
[16] *See* Memorandum, "Circular Welded Carbon Steel Pipe and Tubes from Thailand:  Final Analysis Memorandum for Saha Thai Steel Pipe Public Co., Ltd.," dated December 2, 2021, at the attached margin-calculation log (line 187).
[17] *See* Memorandum, "Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Draft Remand Results Calculation Memorandum for Saha Thai Steel Pipe Public Company, Ltd.," dated October 27, 2022.
[18] *See Final Results*, 86 FR at 69621.

V.     **COMMENTS ON DRAFT RESULTS OF REDETERMINATION**

Comment:  Whether to Make a Cost-Based PMS Adjustment

*Wheatland's Comments*

- Commerce should adjust Saha Thai's cost of production (COP) to account for the PMS that existed during the period of review.[19]
- In the Draft Results, Commerce incorrectly claimed that the CAFC held that the statute only permits the adjustment of cost of production for a PMS when making comparisons based on constructed value; in fact, the CAFC held that the provisions of the Act "do not authorize Commerce to use the existence of a PMS as a basis for adjusting a respondent's {COP} to determine whether a respondent has made home market sales below cost."[20]
- Not only did the CAFC never hold that all cost-based PMS adjustments are forbidden when normal value is initially based on home market sales, the CAFC actually went out of its way to identify at least one path available to Commerce to adjust costs in such situations and to reserve judgment on another possible means of adjusting PMS-distorted costs, which Commerce has ignored.[21]
- The CAFC noted that Commerce may depart from using home market sales if it finds that a "{PMS} in the exporting country does not permit a proper comparison with the export price or constructed export price," explaining that this provision gives Commerce the power "to address home market sales that are affected by a PMS yet still pass the sales-below-cost test" and that all Commerce would need to find (in addition to finding that the costs do not accurately reflect the costs of production in the ordinary course of trade) is that the PMS prevents a proper comparison to the export price.[22]
- Commerce's ability to disregard home market sales in such a situation is further supported by the statute's instruction that such prices should only form the basis for normal value if they are in the "ordinary course of trade"; by forcing more sales to pass the sale-below-cost test than would otherwise be the case, a cost-based PMS prevents Commerce from ensuring that normal value is based solely on sales that are above a non-distorted cost and thus in the ordinary course of trade.[23]
- By declining to address the argument that section 773(f)(1)(A) of the Act permits Commerce to adjust a respondent's costs when those costs are distorted by a PMS, the CAFC left available a tool Commerce may be able to use to account for PMS-distorted costs when normal value is based on home market sales; specifically, Commerce could find that a PMS that distorts costs causes reported costs to no longer "reasonably reflect" the actual, undistorted "costs associated with the production … of the merchandise," permitting Commerce to disregard or adjust those distorted costs.[24]
- Commerce recognized in the past that section 773(f)(1)(A) of the Act gives the agency the authority not to use costs that are outside the ordinary course of trade; PMS-distorted

---

[19] *See* Wheatland's Comments at 5-9.
[20] *Id*. at 5 (citing *Hyundai Steel*, 19 F.4th at 1348 (emphasis in original)).
[21] *Id*.
[22] *Id*. at 6 (citing *Hyundai Steel*, 19 F.4th at 1355).
[23] *Id*. at 6-7.
[24] *Id*. at 7-8 (citing *Hyundai Steel*, 19 F.4th at 1356).

- costs are, by definition, outside the ordinary course of trade.[25]
- Commerce should take full advantage of the tools provided by the statute – and explicitly left available to Commerce by the CAFC – to avoid distorted costs and ensure that normal value actually permits a "fair" and "proper" comparison with export price in this review.[26]
- In the *Remand Order*, the Court expressly gave Commerce the ability to use these alternative methodologies on remand by refusing to issue its own opinion on the correct interpretation of *Hyundai Steel*; rather the Court left "it for Commerce to decide how best to proceed."[27]

*Saha Thai's Comments*

- Commerce's interpretation of *Hyundai Steel* is correct and Commerce's implementation of that legal conclusion as it relates to the recalculation of Saha Thai's antidumping duty assessment rate is sound.[28]
- The Draft Results fully comply with the Court's *Remand Order* and should be submitted to the Court in its current form.[29]

*TPP's Comments*

- TPP concurs with Commerce's decision that a PMS adjustment to the mandatory respondent's cost of production is not warranted in this proceeding.[30]
- TPP agrees that any modification to the rate calculated for the mandatory respondent also should be applied to the rate assigned to the non-selected party to this litigation.[31]
- Commerce should continue to make these determinations in its final results of redetermination.[32]

**Commerce's Position:** While we recognize that Wheatland makes certain statutory arguments to support making a cost-based particular market situation adjustment, pursuant to Commerce's remand request and the Court's *Remand Order*, we determine that it is not appropriate to address those arguments in the context of these finals results of redetermination.

---

[25] *Id*. at 8 (citing, *e.g.*, *Suspension of Antidumping Duty Investigation of Certain Cut-to-Length Carbon Steel Plate from the Russian Federation*, 68 FR 3859, 3861 at n.3 (January 27, 2003)).
[26] *Id*. at 9.
[27] *Id*. at 9-10 (citing *Remand Order* at 3).
[28] *See* Saha Thai's Comments at 2.
[29] *Id*. at 3.
[30] *See* TPP's Comments at 2.
[31] *Id.*
[32] *Id.*

6

Commerce requested a remand specifically to "recalculate the weighted-average dumping margin without making a cost-based particular market situation adjustment" and the Court granted Commerce's request for voluntary remand so that Commerce may "recalculate the weighted-average dumping margin without making a cost-based particular market situation adjustment."[33]  While Wheatland contends that Commerce may rely on other avenues to support making a cost-based particular market situation adjustment in accordance with the CAFC's decision in *Hyundai Steel*, in line with Commerce's remand request and the Court's *Remand Order*, we determine that this remand redetermination is not the appropriate proceeding in which Commerce should interpret, for the first time, alternative possible interpretations of the CAFC's analysis in *Hyundai Steel*.  Accordingly, we have declined to consider Wheatland's argument in the context of these final results of redetermination, and we have not made any changes to our margin calculations in the Draft Results.

## VI.   FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its dumping analysis.  Based on these changes, Commerce determines that the following weighted-average dumping margins exist for the period of March 1, 2019, through February 29, 2020:

| Company | *Final Results* Margin (percent) | Remand Weighted-Average Dumping Margin (percent) |
|---|---|---|
| Saha Thai Steel Pipe Public Company, Ltd. | 36.97 | 14.74 |
| Thai Premium Pipe Co., Ltd. | 36.97 | 14.74 |

Should the Court affirm these final results of redetermination, once final judgment pertaining to the final results of the 2019-2020 administrative review of the antidumping duty

---

[33] *See Remand Order* at 1-2.

7

order on CWP from Thailand has been issued, Commerce intends to publish a notice of amended final results in the *Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

11/28/2022

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

8