U.S. COURT OF INTERNATIONAL TRADE


CIT DOCKET FOR CASE NO: 1:21-cv-00627


--------------------------------------------------------X

SAHA THAI STEEL PIPE

PUBLIC COMPANY LIMITED,

                    Plaintiff,


v.


UNITED STATES,

                    Defendant.

--------------------------------------------------------X

                              Date:

                              March 20, 2025



B E F O R E :


        THE HONORABLE STEPHEN ALEXANDER VADEN










Digitally recorded proceeding transcribed by:

Mary Ellen Beaulieu

Toby Feldman, Inc.

2

```
 1              A P P E A R A N C E S

 2

 3    PILLSBURY WINTHROP SHAW PITTMAN, LLC

 4                 Attorneys for the Plaintiffs

 5                 1200 17th Street, NW., Suite 8-47

 6                 Washington, DC 20036

 7    BY:  DANIEL PORTER, ESQ.

 8         WILLIAM CHANDLER, ESQ.

 9

10    U.S. DEPARTMENT OF JUSTICE - COMMERICAL LITIGATION

11    BRANCH - CIVIL DIVISION

12                 Attorneys for the Defendant

13                 P.O. Box 480

14                 Ben Franklin Station

15                 Washington, DC 20044

16    BY:  COLLIN MATHIAS, ESQ.

17

18    U.S. DEPARTMENT OF COMMERCE - OFFICE OF CHIEF COUNSEL FOR

19    TRADE ENFORCEMENT & COMPLIANCE

20                 Attorneys for the Defendant

21                 1401 Constitution Avenue, NW.

22                 Washington, DC 20230

23    BY:  JONZACHARY FORBES, ESQ.

24

25
```

3

```
1              A P P E A R A N C E S

2

3   SCHAGRIN ASSOCIATES

4              Attorneys for the Defendant-Intervenor

5              700 Pennsylvania Avenue, S.W.

6              Suite 500

7              Washington, D.C.   20003

8   BY:  CHRIS CLOUTIER, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
1              THE COURT:  Please be seated.
2              THE BAILIFF:  United States Court of
3      International Trade is now in session.  The Honorable
4      Stephen Alexander Vaden presiding before Court Number
5      21-00627, Saha Thai Steel Pipe Public Company Limited
6      versus The United States of America.
7              Will the attorneys please state their name
8      and firm for the record starting with Plaintiff?
9              MR. PORTER:  Hi.  Daniel Porter.  Third day
10     at my new law firm, Pillsbury, appearing on behalf of
11     Saha Thai.
12             MR. CHANDLER:  Will Chandler, also with
13     Pillsbury, appearing on behalf of Saha Thai.
14             MR. MATHIAS:  Collin Mathias on behalf of
15     the United States.  And I am joined by JonZachary
16     Forbes from the Department of Commerce.
17             MR. CLOUTIER:  Chris Cloutier of Schagrin
18     Associates for Wheatland Tube.
19             THE COURT:  All right.  Thank you all for
20     joining us here this afternoon.  Have a few things I
21     want to discuss with you, but first, I want to
22     welcome back two former clerks of the court.
23     Happily, I guess, they are distributed one on each
24     side of the issues.  We have William Chandler.  I
25     think you clerked for Judge Stanceu, if memory
```

5

1          serves.  And then, Collin, you were with Judge

2          Restani --

3                    MR. MATHIAS:  Yes, Your Honor.

4                    THE COURT:  -- back when I used to be

5          across from her, so her chambers.  So welcome.

6          Welcome to you both.  And glad to see that your

7          clerkships with the court did not scare you away from

8          the area of law to practice.

9                    I always like to remind people that if you

10         would like a transcript of today's proceedings,

11         please request that within seven days of today's

12         date.  That way we know whether or not we are going

13         to receive a transcript in order to help us out with

14         this.

15                   I'd like to begin with a factual question

16         just to help jog my memory.  Mr. Zachary Forbes, if

17         memory serves, you have been the Commerce counsel on

18         this case from the beginning of its arrival here at

19         the Court of International Trade; is that not

20         correct?

21                   MR. FORBES:  That's correct.

22                   THE COURT:  Okay.  So it would be fair to

23         state that you're very familiar with everything that

24         has transpired in this case both at the Agency, in

25         this Court, on remand, and now that we're back here,

6

1       correct?

2              MR. FORBES:  I was the Commerce attorney as

3       this case was at the CIT, although, I just joined

4       Commerce as this case was appealed to the CIT.  So I

5       was not the Commerce attorney for the majority of the

6       administrative proceeding before.

7              THE COURT:  Okay.  But you joined when it

8       reached here.

9              MR. FORBES:  Correct.

10              THE COURT:  And so if I -- I assume that as

11       part of your duties, once you receive a new case,

12       regardless of where it may have been before, you

13       review the record, you review the Agency decision,

14       the grounds on which it rested, et cetera.

15              MR. FORBES:  That's correct, Your Honor.

16              THE COURT:  Okay.  So you know the history

17       of this case.  Good.

18              So what I wanted to call you here to talk

19       about today is what I have -- what I fear may be an

20       attempt by the Commerce Department to, without any

21       notice that this is what it has done, shift the

22       grounds for its decision in order to try to bolster

23       its case for an assumed appeal to the Federal Circuit

24       without acknowledging, as an agency is required to do

25       when it changes its position, that it has done so.

1     That is the first step in administrative law.

2     Agencies are free to change their position, but they

3     must acknowledge forthrightly in the decision that

4     they have done so.  And then of course, they need to

5     explain why they've had a change of heart.

6          As I read the briefs in this case, the

7     comments, to be accurate, I hear the people on the

8     Government counsel saying, oh, the Court has tied my

9     hands.  There was only one result that we could reach

10    based on the Court's ruling, and we have kept --

11    basically, we've left everything the same except for

12    the fact that we are -- our hands are now tied, and

13    we can't find affiliation.  Let's walk through the

14    documents and see if that is a correct statement of

15    what has occurred here.

16         I'm going to start out with appendix pages

17    14295 to 14296.  This is the original Issues and

18    Decision Memorandum.  In other words, the Agency's

19    final decision on this case that was appealed.  I'm

20    looking on these two pages because this is where the

21    Agency, in a document that is completely public,

22    tells the public why it made the decision that it did

23    regarding BNK.  I'm not going to quote it all, that

24    would be a waste of time.  But I am going to quote

25    some relevant portions, say some things about it,

8

1     then we're going to move on to the next document,

2     then we are going to move on to the next document,

3     and then we are going to turn to the Remand

4     Determination, and we will see if anything changes.

5     Play along with me.

6              Reading from the next to the last full

7     paragraph on appendix page 14295, here's what the

8     Agency said in its Original Determination.  In our

9     original questionnaire, we asked Saha Thai to

10    identify, quote, all suppliers, subcontractors,

11    lenders, exporters, distributors, resellers, and

12    other persons involved in the development,

13    production, sale, and/or distribution of the

14    merchandise under review, which Commerce may also

15    consider affiliated with your company in accordance

16    with section 771(33) of the Act and 19 CFR 351.102(b)

17    and 351.401(f).  Some factors which you should

18    consider include, for example, other relationships

19    between your company and the other person, such as

20    directors and managers.  Furthermore, we asked Saha

21    Thai, when reporting its home market sales, to report

22    the code designating whether the customer is

23    affiliated.  Standard question at the front end.

24             You then go on to say, in a supplemental

25    questionnaire, we asked Saha Thai to -- and I want

9

1          you to pay particular attention to this paragraph --

2          provide a complete family tree for Saha Thai for all

3          Saha Thai's owners and to identify any member of

4          these families that has any role in any company

5          involved in the development, production, sale, and/or

6          distribution of the merchandise under review.

7          Further, we asked Saha Thai to state whether Saha

8          Thai's or any of Saha Thai's affiliates, employees,

9          stockholders, managers, directors, officers, or

10         department heads has an equity or a debt position in

11         any other company involved in the development,

12         production, sale, and/or distribution of the

13         merchandise under review.

14              Our review of the evidence on the record

15         indicates that some of Saha Thai's home market

16         customers may, in fact, be affiliated with Saha Thai

17         and that Saha Thai did not report them as affiliated

18         customers, nor did it report certain family members

19         that had a role with respect to those customers.

20         Because our analysis of the evidence on the record

21         involves proprietary information, please see the Saha

22         Thai Final Analysis Memorandum for further details.

23              We will do as the Agency instructs and go

24         to the Final Analysis Memorandum.  But before we do,

25         I want you to remember the three questions that they

1    identified in this document as potentially relevant

2    to all seven of the companies.  The broad question

3    asking, tell us any supplier which may possibly be

4    affiliated, the second question, which asked about a

5    family tree, and especially the third question, which

6    asked about whether there was an employee or

7    stockholder or manager or director which has an

8    equity or debt position in any other company involved

9    in the development, production, sale, and/or

10   distribution of the merchandise under review.  Now,

11   the Agency quite forthrightly says, we don't want to

12   discuss all this in the public domain, so we're going

13   to give you the details about all of these companies

14   in the Final Analysis Memorandum.

15            The Final Analysis Memorandum is on

16   appendix pages 99504 through 99506.  And happily, the

17   portions which are relevant to this particular

18   determination do not appear in brackets, so we can

19   discuss them openly.  And indeed, this was quoted in

20   my original opinion in this case.  For these

21   purposes, we don't care about the other six

22   companies.  We're only looking at the one company,

23   BNK.  What did Commerce identify as its rationale in

24   its original decision for why it chose to draw an

25   adverse inference and to find affiliation?  Well, you

1    tell us that with regard to a company there was an

2    employee whose name is redacted, it is in the public

3    domain that this employee was an HR manager, so we'll

4    refer to him as that, and this HR manager shared an

5    email address with Saha Thai; i.e., he appears to be

6    a shared employee between BNK and Saha Thai.

7         But let's go down a little further.  What

8    was the problem, according to the Commerce

9    Department?  Well, the Commerce Department says, as

10   discussed in the Issues and Decision Memorandum;

11   i.e., what we just read, we asked Saha Thai to state

12   whether Saha Thai's or any of Saha Thai's,

13   affiliates, employees, stockholders, managers,

14   directors, officers, or department heads has an

15   equity or debt position in any other company involved

16   in the development, production, sale, and/or

17   distribution of the merchandise under review.  This

18   information only came to light as a result of

19   Wheatland's research of public records.  Because

20   Wheatland was limited to public records in its

21   research, we cannot assume that there are no other

22   ties between Saha Thai and BNK which Saha Thai failed

23   to disclose.  As a result, we cannot determine that

24   Saha Thai is, my favorite phrase, necessarily not

25   affiliated with BNK.

12

1          Now, what I want you to remember there is,

2     is that the Agency identified the question that Saha

3     Thai failed to answer and the question that it should

4     have disclosed the existence of BNK at as a question

5     involving whether there is an employee who has a debt

6     or equity position in the company, that you had three

7     questions that you listed with regard to BNK.  You

8     very specifically identified the question that you

9     believe they withheld information on, and that was

10    one question, debt or equity.  So in other words,

11    what you must believe, what I have to take it you

12    must believe is that you think a human resources

13    manager likely has a debt or equity position in the

14    company.  I suppose it's possible.  That would be

15    rather strange for an HR manager, not someone

16    typically taken as a C-suite executive or what have

17    you.  But that's what you sank your anchor into.

18          Let's go to my opinion.  My opinion in this

19    case was issued November 13, 2023.  We address BNK,

20    and I've got the slip opinion in front of me.  We

21    address BNK beginning on page 34 of the slip opinion

22    and continuing through page 37 of the slip opinion.

23    If you look at the middle of page 35 of the slip

24    opinion and continue down, you will see that when I

25    said that the Commerce Department provided an

1    explanation for why it thought BNK was properly

2    categorized as an affiliate, and that was a result of

3    an adverse inference that the Agency drew, its

4    justification was based on a paragraph in that

5    memorandum which I just read and you see reproduced

6    to you in -- with the business protected information

7    redacted, namely the employee's name.  It's the same

8    thing.  And I quoted that same question, state

9    whether Saha Thai's or any of Saha Thai's affiliates,

10    employees, stockholders, managers, directors,

11    officers, or department heads has an equity or debt

12    position in any other company involved in the

13    development, production, sale, and/or distribution of

14    the merchandise under review.  Same question, the

15    debt or equity question.  And then on the next two

16    pages -- I'm not going to read it to you; you've

17    already read it.  But I basically say, I don't see

18    any explanation here that justifies this.  Not based

19    on the statute, not based on Agency analysis.  You're

20    going to have to do better than this.  Okay.  We go

21    back.  We're now at the Remand Determination.  What

22    has the Commerce Department said this time around?

23           Well, let's take a look at what it said.

24    And in your Remand Determination, I think you will

25    note that there have been some changes.  Even though

1        the Commerce Department, in its wording, and we're

2        going to talk about the wording in a minute, was --

3        I'll be careful with my wording -- appears to have

4        intended to leave the impression that nothing has

5        changed when it most certainly has.

6                We'll turn first to pages 7 and 8 of the

7        Remand Determination.  I'm not going to read

8        Wheatland's comments.  I don't think, with due

9        respect to them, that it adds anything to this

10       analysis.  They're advocating on behalf of their

11       client, as they should.  But let's read what the

12       Commerce Department said.  We continue -- note the

13       verb, continue, to find that Saha Thai and BNK are

14       unaffiliated based on the available record

15       information consistent with the Court's remand.

16       However, we agree with Wheatland and Saha Thai -- we

17       agree with Wheatland that Saha Thai omitted

18       information and failed to act to the best of its

19       ability -- well, that's the same thing it said

20       before.  That's a continuance, it omitted information

21       -- and thus are issuing these final results of

22       redetermination under respectful protest.  Agency

23       exactly has the right to do that.  Let's continue on.

24       Saha Thai does not contest Commerce's finding that it

25       and BNK are unaffiliated, though Saha Thai opposes

15

1       Commerce's expression of disagreement with the

2       Court's decision in these final results.

3              Now, pay close attention to this paragraph.

4       This is a cute little move.  Saha Thai contends that

5       Commerce only asked for information regarding

6       employees involved in the development, production,

7       sale, and/or distribution of the merchandise under

8       review.  In fact, as explained above, Commerce

9       requested that Saha Thai report, quote, Saha Thai's

10      or any of Saha Thai's affiliates, employees,

11      stockholders, managers, directors, officers, or

12      department heads currently are or previously were

13      employed by any other company involved in the

14      development, production, sale, and/or distribution of

15      the merchandise under review.  Commerce did not ask

16      for managers specifically involved in the sale of

17      subject merchandise, but instead for managers

18      currently or previously employed by any other company

19      involved in the sale of subject merchandise, which

20      would include BNK.  Saha Thai's failure to disclose

21      this connection with one of its home market customers

22      prevented Commerce from potentially issuing further

23      questions probing the extent of the relationship.

24      And such information would be necessary information

25      within the meaning of section 776(a)(1) of the Act.

16

1              Did you notice the change there?  You

2       switched questions.  In nothing that I read in your

3       Original Determination did you cite to -- its

4       question number 5 of your supplemental review.  You

5       based your Original Determination on question 6,

6       which involved employees who would be expected to

7       have, quote, an equity or a debt position in any

8       other company involved with the merchandise under

9       review.  You switched questions without acknowledging

10      it and while pretending you were doing the same

11      thing.  Why do I say that?  Let's turn back to an

12      incredibly carefully worded paragraph.  Oh, this

13      ought to be taught in law school.  On page 4.  I'm

14      going to read this paragraph.  It's going to give off

15      a particular impression, but when we put our English

16      professor hat on, we're going to find out how

17      carefully crafted it actually was.

18              We observe, however, that the affiliation

19      determination in the final results, that's the Issue

20      and Decision Memorandum, was not based on analysis of

21      a single human resources manager but was instead

22      based on drawing an adverse inference.  Specifically,

23      Commerce did not apply an adverse inference to Saha

24      Thai based on its potential relationship with BNK in

25      the preliminary results because when Commerce asked

17

1        Saha Thai to report, quote, Saha Thai or any of Saha

2        Thais, affiliates, employees, stockholders, managers,

3        directors, officers, or department heads currently

4        are or previously were employed by any other company

5        involved in the development, production, sale, and/or

6        distribution of the merchandise under review in one

7        questionnaire and then again in a supplemental

8        questionnaire, Saha Thai did not report any

9        connection whatsoever with BNK.  Subsequently,

10       Wheatland put on the record information demonstrating

11       that Saha Thai's response was erroneous with respect

12       to BNK as well as a number of other companies, and

13       then further explained that information -- explained

14       that information in its administrative case brief.

15       Specifically, Wheatman placed information on the

16       record reflecting that there was a single shared

17       human resources manager between Saha Thai and BNK, a

18       fact which -- it should be had not been, you have had

19       not be, reported by Saha Thai in its questionnaire

20       response.  Accordingly, in the final results, based

21       on the information supplied by Wheatland, Commerce

22       determined that Saha Thai had failed to act to the

23       best of its ability in providing information,

24       including the existence of the human resources

25       manager, pertaining to the relationship between Saha

1    Thai and BNK.

2    Now, if you read that paragraph, you would

3    be left with the impression, and I think that's the

4    appropriate noun, the impression that what that

5    paragraph does is describe what the Commerce

6    Department did in its final results.  And it leaves

7    the impression that it based its determination in the

8    final results on the question there quoted involving

9    employees, stockholders, managers, directors, who,

10   you know, may have been employed by any other company

11   involved in the development, production, sale, and/or

12   distribution of the merchandise under review.  We

13   know from what we have just read that that would be a

14   false impression because that is not what the

15   Commerce Department based its Original Determination

16   on.  It identified three questions in the Issues and

17   Decisions Memorandum.  None of those three questions

18   were the question quoted on page 4.  And then when we

19   go to the final analysis memorandum, it picks what

20   was question number 6 of the supplemental

21   questionnaire involving a debt or equity position.

22   Well, then when I put my English professor

23   hat on and I go through and read that paragraph, you

24   note the following.  It begins by talking about the

25   final results.  The next sentence, where it possibly

19

1    misleadingly, shall we say, suggests that the basis

2    of what is to come is this question, which was

3    nowhere mentioned in the final results or for that

4    matter, in the final analysis memorandum, it switches

5    quickly to talking about the preliminary results.

6    Then it talks about what Wheatland did, and then it

7    talks about what Wheatland said.  And then it has

8    that wonderful word, accordingly, in the final

9    results, we found that it failed to act to the best

10   of its ability in providing information.

11       So there's not an actual sentence in there

12   that I as a judge can point to as an outright

13   fabrication.  There's not a sentence in there that

14   says, in our final results, we cited this question,

15   which we have quoted to you as the basis for our --

16   as the basis for our determination, which was

17   ultimately reversed.  But when you add up everything

18   that's in that paragraph, that expertly crafted

19   paragraph, it leaves a decidedly misleading

20   impression which is then harped on when you get to

21   the penultimate page, page 8, where you refer back to

22   that misleading discussion.  You requote the question

23   which you nowhere put, in the final Issues and

24   Decision Memorandum or the Agency Final Calculation

25   Memorandum, and you say, this has been the basis all

20

1          along, and we're sticking with that, but the judge

2          has left us no choice than to find affiliation.

3                    Can you understand why I got a problem.  I

4          got a host of problems, only the slightest of which

5          is that you violated the administrative law principle

6          that you can't switch your position without

7          acknowledging it.  That's just the beginning.  The

8          real question is what the motive here behind this was

9          and whether there was intent behind this

10         misrepresentation.  That's the question.  Because the

11         record is clear, and to make certain that I wasn't

12         reading something that wasn't there, I turned it over

13         to my clerks, none of whom were here when this case

14         was originally decided.  I said, you read all this,

15         you tell me, can you find?  I can't.  But, you know,

16         maybe I'm too in the weeds.  Maybe I'm too invested.

17         That can happen when you're a judge.  That's why it's

18         so good we have clerks.  They're not invested in

19         anything but completing their one year so they can

20         get a nice fat bonus.  So why don't you take a look

21         and tell me if I've missed something.  And you know

22         what they came back and told me?  We can't find it

23         either, Judge.  We're kind of mystified.  And by the

24         way, isn't it strange that someone thinks that an HR

25         manager has got lots of stock options?  Yeah, it is.

1        That's a pretty weak basis on which to sink your

2        anchor.  Which would help to explain why you might

3        want to change your position to a different question,

4        particularly if you're hot to appeal.

5            But of course, the problem with an appeal

6        is that, well, if you're going to change your

7        position, you need to forthrightly acknowledge you're

8        going to change your position.  And what I told you

9        was provide me with a better explanation and follow

10       the statute on affiliation, if that's the direction

11       you want to go, and explain to me how you're drawing

12       an adverse inference.  Instead, what appears to have

13       happened is the Agency concocted a misleading

14       description of what happened in this case previously,

15       switched its position without forthrightly

16       acknowledging it in the record, and then claimed that

17       its hands were tied so that the only thing that it

18       could do was just let the bad guy go, from its

19       perspective.  I don't know whether Saha Thai is a bad

20       guy or not.  The Federal Circuit tells me with regard

21       to adverse inferences, intent doesn't matter, so it's

22       irrelevant.  But if Saha Thai did something wrong,

23       it's got company at the Commerce Department.  And the

24       question is, what am I going to do about this mess

25       that you've presented me, this little fairy tale that

22

1      you wrote, which is belied by the record?  That's

2      what I want to talk about this afternoon.

3              You can feel free, if you've got other

4      information you want me to look at, I'm here to be

5      enlightened.  But I've read the record, and I've read

6      it to you, and I've quoted what you've said about

7      BNK.  What you said about other companies doesn't

8      matter because you, quite sensibly, segregated BNK

9      from the other companies because it was in a slightly

10     different position, as I think everyone acknowledges.

11     The other six were slam dunks for you.  I don't -- my

12     recollection is Mr. Porter didn't even want to talk

13     about the other six, it was so clear.  It's the

14     seventh one that appears to be the big deal.

15             So what am I supposed to do with an agency

16     that has misrepresented what happened below,

17     concocted a fairy tale with regard to what the record

18     showed on the proceedings below, and then tried to

19     say, huh, we have nothing that we can do except, you

20     know, just let this go.  And this is a travesty to

21     the purposes of the statute.  I always love it when

22     people talk about the purpose of the statute as

23     opposed to the text.  Congress doesn't enact

24     purposes; it enacts text.  But anyhow, the purpose of

25     the statute, and this is oh, so horrible.  What's the

23

1          right result in this case?

2                   Mr. Porter, you tell me.

3                   MR. PORTER:  Your Honor, we believe your

4          analysis is a hundred percent correct and therefore,

5          very bluntly, we're not afraid of an appeal.  And so

6          the -- to me, the result should be to affirm the

7          remand results, recognizing that all four parties in

8          the case have stated that they agree the remand

9          results should be affirmed.  Not a single party has

10         formally challenged the remand results even though we

11         had the opportunity to do so.  And I share Your

12         Honor's frustration with, like, not formally

13         challenging, standing up, right, bluntly, having a

14         backbone, saying, I disagree with them, and here's

15         why.  But, you know, saying, I agree that it should

16         be affirmed, but let me add some other color here.

17         And I agree -- I share your frustration in that.

18                  THE COURT:  It's not so much adding color.

19         It would have been one thing had they acknowledged

20         what actually happened before.  Remember, as a Court,

21         I can't order any particular result.

22                  MR. PORTER:  You're correct, Your Honor.

23                  THE COURT:  An option available to them, an

24         honest party, might have been, you know, you've sent

25         it back to us on remand.  You've asked us to

1    reconsider our analysis.  We've done what you told us

2    to do.  And in reconsideration, we realize that, you

3    know, you may disagree with us about question number

4    6 involving debt and equity, but we also asked about

5    question number 5.  Here's what question number 5

6    says.  We think, regardless of what you think, Judge,

7    regarding question number 6, question number 5 is a

8    slam dunk for us.  Here's how we do the analysis.

9    Yada, yada, yada.  Instead, they acted like it had

10    always been question number 5, and they've set this

11    thing up as the whole thing's.  I mean, can you.  Do

12    you think that if this would go up on appeal, that

13    the Federal Circuit would catch this legerdemain?

14            MR. PORTER:  A hundred percent, Your Honor.

15    The Federal Circuit is quite adept at telling the

16    Agency what you're arguing now is not in your

17    original decision.  And we start -- now, my colleague

18    and I were -- I'm going to digress if you allow me

19    for 15 seconds.  You know, they say we start with the

20    Commerce determination.  I actually have made -- over

21    40 years tried to overturn (inaudible) as you start

22    with the Court's decision, but that's another issue,

23    Your Honor.  I didn't win that.  But the point is

24    they start with Commerce's Original Determination,

25    not the remand determination, not the commentary.

1    They start with the Original Determination.  So I do

2    believe they would pick up this sort of switch or

3    they would essentially ignore it.  We're looking at,

4    as you just did, the Original Determination.  What

5    was cited as the justification for the decision.

6    What evidence was cited as the justification for the

7    decision.

8            THE COURT:  So you know, you -- all of you,

9    except for you, Collin, and I want to be clear.

10   You're new to this case.  I don't hold you

11   responsible for the behavior of your client.  You've

12   been with me before.  You know, one of my favorite

13   questions is I have to write an opinion; what would

14   you have me write?

15           MR. PORTER:  Your Honor, with --

16           THE COURT:  It seems weird to affirm

17   something that is so off kilter.

18           MR. PORTER:  But, Your Honor, if I may.

19   You're affirming the result.  You're not affirming

20   the color commentary.  Okay?  And you can make that,

21   obviously, clear in your affirmation, in your

22   affirmance, you can make that clear.  And as a -- I

23   would --

24           THE COURT:  You think I should point out

25   what I just pointed out here and say this is

26

1          inappropriate for the following reasons, but no party

2          objects, and the result is one that a reasonable

3          person could reach, even though I as the Court might

4          not reach it in the first instance if it were my

5          decision in the first instance.  The substantial

6          evidence standard allows for more than one conclusion

7          to be drawn.  And you'd send them up there with the

8          task of if they want to appeal, the first thing

9          they're going to have to do is explain to the Federal

10         Circuit why they pulled this little stunt with the

11         record?

12                  MR. PORTER:  Yes, Your Honor.  I --

13                  THE COURT:  You'd give them that honor at

14         oral argument?

15                  MR. PORTER:  Well, I'm not afraid of that,

16         Your Honor, quite honestly.

17                  THE COURT:  I can imagine why you wouldn't

18         be.

19                  MR. PORTER:  And I said what should be done

20         here.  We're interested.  This case has gone on a

21         long time.

22                  THE COURT:  It has.

23                  MR. PORTER:  It has gone on a long time.

24         This phase, I think, is time to conclude.  And I

25         think you can affirm the result and then you can

27

1      comment on the commentary very bluntly.  You know,

2      you can do that.  But I think that when you say what

3      should be done, I think the remand result should be

4      affirmed.

5              THE COURT:  Okay.  Thank you.  We'll turn

6      next to the Government.  What say you?

7              MR. MATHIAS:  Your Honor, similarly, as Mr.

8      Porter, we believe that you can affirm the result.

9      The way I read your remand opinion, Commerce was

10     instructed to do an affiliation analysis.  They chose

11     not to reopen the record.  And under the affiliation

12     analysis, they --

13             THE COURT:  Would they have to reopen the

14     record to refer to the proper question that they

15     asked or if they wanted to switch questions?  I mean,

16     that's already a part of the record.  We don't need

17     to reopen the record for anything.

18             MR. MATHIAS:  They -- so that that

19     discussion is -- I would refer to it almost as dicta.

20     I believe that is what Saha Thai referred to it in

21     its brief as well.  It is not relevant to the result

22     Commerce actually reached, which was they did an

23     affiliation analysis of the facts they had and found

24     --

25             THE COURT:  You don't think it's relevant

1     that they switched questions on which they claim to

2     rely?  You don't think that's relevant?

3             MR. MATHIAS:  I am not here to defend that

4     dicta and that language.  I don't have a response to

5     you at this time on that.

6             THE COURT:  Did you catch the switch in

7     language?

8             MR. MATHIAS:  We briefly discussed it, Your

9     Honor, but we focused on what the result of the

10    remand redetermination was, which was without AFA,

11    these facts do not support an affiliation analysis.

12            THE COURT:  Well, let's go a little deeper

13    because, I mean, do you -- does the Commerce

14    Department think that an HR manager is someone who

15    normally has a debt or equity position in a company?

16    Would you find that suspicious?  Would you -- if

17    there were -- forget Saha Thai -- if there were

18    Company C, and Company C had a shared manager HR

19    manager with Company D, and you asked the question,

20    tell me about, you know, people who have debt or

21    equity interests in these companies.  Would an HR

22    manager be someone in your -- on your list that you'd

23    be really suspicious of having a debt or equity

24    position in the company?  Is that where we usually

25    find people with that type of stake?

29

1                MR. MATHIAS:  In this hypothetical, I would

2        say no, Your Honor.

3                THE COURT:  It doesn't accord with most

4        people's general common sense, conventional wisdom,

5        whatever the term it is.

6                MR. MATHIAS:  I would agree, Your Honor.

7                THE COURT:  And yet that's the hook the

8        Agency chose.

9                MR. MATHIAS:  I'm not here to defend the

10       Original Determination.

11               THE COURT:  I hope you can do one thing.

12       I've said this before.  You know, I've been an Agency

13       general counsel.  It's not illegal for agencies to

14       call up the Justice Department and have them review

15       things before they issue it as a -- as whether it's a

16       rulemaking proceeding or some type of decision.  I

17       mean, you're going to have to defend it anyhow.  My

18       general feeling is that you want your lawyer

19       comfortable with what you're about to do.  I

20       understand, however, that it's not the Commerce

21       Department's usual practice to call up the Justice

22       Department until they get sued.  I mean, I bet Mr.

23       Porter has some clients like that, too.  But that's

24       not generally what lawyers tell people to do; wait

25       until you find yourself in a bind and then call us.

30

1        You know, sometimes people think that self-

2    serving because the lawyer is going to make more

3    money.  Well, that's not actually true because if the

4    lawyer gets you out of the bind before you get sued,

5    he's actually saving you a lot of money.  But anyhow,

6    I really think this is something that -- it disturbs

7    me greatly.  It looks like we're playing a shell

8    game.  And we're playing a shell game to try to set

9    up a better record for appeal that doesn't reflect

10    what actually happened below.  So in other words, it

11    raises questions about honesty.  And that disturbs me

12    greatly.

13        MR. MATHIAS:  So, Your Honor, I would also

14    like to emphasize that the Department of Commerce

15    does not make the choice of whether we appeal from

16    this Court or not.

17        THE COURT:  Oh, I know.  The Solicitor

18    General does.

19        MR. MATHIAS:  That is --

20        THE COURT:  But also, the Defendant

21    Intervener has a separate right.

22        MR. MATHIAS:  Yes, Your Honor.

23        THE COURT:  Of course, the Defendant

24    Intervener has other concerns than Commerce's

25    honesty.  They have their own bottom line, and that's

1        it.  Honesty is not so much their concern.  What else

2        can you tell me, sir?

3              MR. MATHIAS:  I don't think it's in the

4        interest of any of the parties in this litigation for

5        a further remand.  That is our -- that is what I

6        would like to echo from our friends across the bench.

7              THE COURT:  Okay.  Let's hear from the

8        Defendant Intervener, who has his own interests.

9        First of all, I have yet to hear anyone disagree with

10       the factual foundation that I've laid.

11             MR. CLOUTIER:  Your Honor, that is correct.

12       I will admit that I did not notice the change myself,

13       but --

14             THE COURT:  You got to be reading closely,

15       don't you?

16             MR. CLOUTIER:  Yes, Your Honor.

17             THE COURT:  It helps to have additional

18       people read for you, but yeah, no, I get -- it's a

19       little sleight of hand.  You'd agree with me on that,

20       wouldn't you?

21             MR. CLOUTIER:  It's definitely different,

22       yes.

23             THE COURT:  Different.  That's fair.

24       Sleight of hand is tinged with judgment.  Different,

25       that's a fact.  I'll take facts.  That's fine.  I can

1      deal with people who are with facts with me, so it's

2      different.  Fine.  We're on the -- in that case,

3      we're on the same page.  Pun intended.  So what do

4      you think?  What does your client think?  You're

5      Wheatland Tube, correct?

6             MR. CLOUTIER:  Yes.  I am in the unusual

7      position, for the first time in recent memory, of

8      agreeing with Mr. Porter.  I think Your Honor can

9      take appropriate steps to call out the change in your

10     next decision.  And then the Federal -- the Court of

11     Appeals for the Federal Circuit will be on notice of

12     the difference between the Remand and the Original

13     Determination.

14             THE COURT:  I still have the concern about

15     affirming bad behavior.  This is bad behavior, even

16     if it's just sloppiness, no intent at all behind it.

17     Let's assume the best, as it were.  It's just

18     sloppiness.  This isn't good.  This isn't good.  And

19     when we see that the sloppiness aligns with parties'

20     incentive to want to set up their position for a

21     potential appeal, that's when we start asking

22     questions about intent.  And what's -- again, what

23     makes this positively bizarre from my perspective --

24     again, I'm not the Agency, but that the Agency could

25     have done potentially legitimately what it appears to

1     have tried to do surreptitiously and said, this is on

2     remand.  The judge told us to look again.  Gee, you

3     know, now that we've had a chance to look at it over

4     the passage of time, we spent all this time talking

5     about question 6.  But did you read question 5?  Let

6     me tell you what question 5 says.  And you know what?

7     It seems to me that 5 may be a better question than

8     6.  And if they should have turned it over to us on

9     question 5, we get to the same place that we were

10    before.  And so that's the analysis that we're going

11    to go with.  And why don't you take a look at that,

12    Judge Vaden?  And then you're going to oppose that.

13    And we'll come back here, and we'll see whether or

14    not it's affirmable.

15          There would be nothing wrong with that at

16    all.  It would have been procedurally appropriate.

17    It would have been forthright.  It would have been

18    honest to what happened in the prior proceeding.  And

19    it would have been clean as a whistle, procedurally.

20    And then you would have had your fight over it, and I

21    would have made a decision.  But instead we got a

22    Through the Looking Glass version of that, into which

23    we got, well, I'm going to pretend that it was always

24    question 5, and I'm going to write it that way in a

25    real sneaky way, and then I'm going to jump up and

34

1    down about how I was wronged.  Then I'm going to set

2    myself up for an appeal quite nicely.

3            One of those steps is easier than the

4    other, and it's not the second one.  But everybody

5    here wants me to affirm this, although Mr. Porter

6    says I can comment on the legerdemain.  And he wants

7    me, I assume, to comment on the legerdemain.

8            MR. PORTER:  Yes, Your Honor.

9            THE COURT:  I don't know what the Federal

10   Circuit would want me to do here, because there's a

11   procedural impropriety here.  They're trying to

12   switch their position without acknowledging it, and

13   in switching their position, they're hiding what

14   their first position actually was, unless you bother

15   to go back and read.

16           MR. PORTER:  There's -- Your Honor --

17           THE COURT:  Don't I have to -- I mean, the

18   substantial evidence test requires me to say that

19   there's some explanation, some rationale, some

20   evidentiary support for what they have done.  What

21   would you have me write in that section, Mr. Porter?

22           MR. PORTER:  Again, Your Honor, you can --

23           THE COURT:  And again, you have to remember

24   -- I know you know this, but I can't make things up

25   that they didn't say.

1              MR. PORTER:  No, you can't, Your Honor, but

2         --

3              THE COURT:  Even if I had the perfect

4    answer that would solve everybody's problems, if they

5    didn't write it, I can't write it for them.  I'm not

6    their scribe.

7              MR. PORTER:  But, Your Honor, your original

8    decision pointed out that --

9              THE COURT:  That question didn't jive with

10   their response.

11             MR. PORTER:  Yes, but I go a little bit

12   beyond that, which is what you've been talking about

13   a lot here, okay?  And it's this idea, is an HR

14   manager someone that creates legal affiliation

15   between two companies?  That's the issue.  That's why

16   this case is a hundred percent in line with the

17   Hyundai case.  Okay?  And I went back pursuant to

18   Your Honor's instruction and went very carefully, and

19   I was --

20             THE COURT:  That's looking at it from the

21   Commerce Department perspective, because the Commerce

22   Department has taken a rather aggressive stance on

23   what it can do with the adverse inferences.  And the

24   Federal Circuit, along with this Court, have recently

25   taken a look at some of those things and said, no, at

1           least not that.  That's Hyundai.

2                     MR. PORTER:  Right.

3                     THE COURT:  That's Oman Fasteners.

4                     MR. PORTER:  Exactly, Your Honor.  But to

5           me, what you're affirming is the notion, which was

6           raised in your original decision, and Congress went

7           back and said, okay, I'm going to do in the now, I'm

8           going to put AFA aside.  I'm just going to look, is

9           there substantial evidence that there was affiliation

10          between Saha Thai and BNK?  And just looking at that

11          question, we determined the answer is no, which, of

12          course, Your Honor alluded to or actually quite --

13          talked about.

14                    THE COURT:  Well, you have to remember the

15          steps.  And this is why I do not like the

16          abbreviation AFA.  It is a two-step analysis.  There

17          has to be a gap in the record.  And then if there is

18          a gap in the record, an agency can draw an adverse

19          inference in filling that gap if a party hasn't acted

20          to the best of its ability.  So let's go back and

21          let's perform that two-step analysis.

22                    The Agency originally said it was the debt

23          or equity interest question that you should have

24          turned over BNK about and the HR manager.  So in

25          other words, the gap that they identified, which is a

```
 1        required prerequisite to drawing an adverse
 2        inference, if there's no gap, there's no inference,
 3        there can be no adverse inference, is we think that
 4        an HR manager obviously is someone who people are
 5        going to think has a debt or equity interest, and you
 6        should have told us about that.  And because you
 7        didn't tell us about that in response to this
 8        specific question we have identified, you did not act
 9        to the best of your ability, and so we're going to
10        slap an adverse inference on you.  And we're going to
11        say -- we're going to draw the inference that yes,
12        this person does have such an interest and therefore
13        an affiliation, which would meet the affiliation
14        test, probably, this person has a debt or equity
15        interest, perhaps.  That's part of the analysis.
16        It's at least, you know, whether stockholders, shared
17        stockholders are part of the statutory analysis.
18                And now the question that they have is a
19        different question.  It's a question that they didn't
20        identify.  I don't expect for you to agree with me on
21        this, Mr. Porter, but just hear me out.  The question
22        that they've identified is a more difficult question
23        for your client in terms of whether or not BNK should
24        have been identified in response to that question.
25        And then what they would like to do is say, oh, no,
```

1    it's question number 5, not question number 6, and

2    the gap comes from your failure to answer question

3    number 5.  And it's because of your failure to

4    identify in response to that question that we're

5    going to draw an adverse inference.  That's my issue

6    with signing off on the switch of questions without

7    acknowledging it.

8         Those are two different analyses.  I think

9    -- I mean, you will probably agree with me on this.

10   I think it's much, much harder for the Government if

11   we're being honest, which we should because we're in

12   court.  If we're asking, you obviously should have

13   turned over BNK because everybody knows that HR

14   managers got the stock options as opposed to, you

15   should have turned over BNK because we asked you

16   whether there's any shared employees in any company

17   involved in the production of this material.  That's

18   the shell game move that's trying to be played here.

19        MR. PORTER:  I've actually got quite a bit

20   of commentary on question 5, but I don't want to go

21   down there.  Suffice to say that it is my view, it is

22   my view that they chose question 6 because they could

23   not support an affiliation determination under

24   question 5.

25        THE COURT:  Why do you think they switch

39

1   back?  Well, switch back, that is inappropriate.

2   They never chose question 5.  They didn't mention it.

3   Why'd they switch?

4     MR. PORTER:  I think it's cosmetically, it

5   was more appealing.  But I think when you --

6     THE COURT:  Pun intended there, I guess.

7     MR. PORTER:  Well, I -- it is -- again,

8   we're talking about why the Commerce Department did

9   something.

10    THE COURT:  What I hear you say, Mr.

11   Porter, and I'm not going to try to put words in your

12   mouth, so you revise and extend it.  Well, what I

13   hear you say is, Judge, you've caught the Commerce

14   Department in a problem.  We like the result.  A

15   rational person could choose to go down this path.

16   And as long as you point out that what they did here,

17   if they try to pull this at the Federal Circuit is

18   procedurally inappropriate and they forfeited the

19   argument because it's not one that they made and it's

20   not one they forthrightly acknowledged, we're more

21   than happy to defend on an accurate record.

22    MR. PORTER:  But it's not that I'm happy,

23   Your Honor.  I think that is the appropriate

24   conclusion.  I mean, I -- put it this way.  Very

25   bluntly, you have two options.  You affirm in some

40

1       fashion commentary, no commentary, obviously up to

2       you, or you remand it.  I would vigorously oppose a

3       remand, Your Honor.  We can't give the Agency yet a

4       third time to come up with something and then we're

5       back here and take another six months or whatever, I

6       respectfully submit that option is not fair to Saha

7       Thai at all.  So --

8               THE COURT:  I mean, your point is somewhat

9       taken.  Your point is somewhat taken.  It's an

10      equitable point, not so much a legal point.

11              MR. PORTER:  Yes.  Yes, Your Honor.

12              THE COURT:  But your point is basically,

13      they had a chance to do what you described this time?

14              MR. PORTER:  A hundred percent, Your Honor.

15              THE COURT:  For whatever reason, they chose

16      a less than forthright not approximation of that and

17      so let them be hoisted on their own petard.  Don't

18      punish us for what they did.

19              MR. PORTER:  Well said, Your Honor.  That's

20      actually very good.  Better explanation of my

21      position than I could do myself.  So, yes, that is

22      correct.

23              THE COURT:  I doubt that you're much more

24      experienced counsel, but I take your point.  Anything

25      from government or -- I don't want to mispronounce

```
1        your last name, sir.  Defendant Intervener's counsel.
2                MR. CLOUTIER:  Cloutier, but I have
3        nothing.
4                MR. MATHIAS:  We have nothing further to
5        add, Your Honor.
6                THE COURT:  You see why I'm troubled?
7                MR. MATHIAS:  I understand you're --
8                THE COURT:  People at this court may
9        dispute it, but I've mellowed with time.  But this
10       troubles me.
11               MR. MATHIAS:  Very understandably, Your
12       Honor.
13               THE COURT:  It troubles me.  Judges should
14       read things closely.  Lawyers should read things
15       closely.  It's supposedly what we're paid to do.  But
16       having to read things quite so closely makes me
17       worry.
18               MR. MATHIAS:  Ultimately, we think that
19       that language did not affect the actual remand
20       results here, which is all we're asking you to
21       sustain.
22               THE COURT:  If you got a remand, what would
23       you do with it?
24               MR. MATHIAS:  I -- there are occasions
25       where the Department of Justice has been more
```

42

1       involved in a remand proceeding.  If the -- we could

2       discuss that with Commerce if you.  If you gave us a

3       minute.

4                    THE COURT:  Sure.

5                    MR. MATHIAS:  But ultimately I believe it

6       would --

7                    THE COURT:  Well, this is great for me.  If

8       you want to take five minutes, if you want to take a

9       recess so you can go out in the hall and talk with

10      them, I'm not going to stop you.  I'll never stop a

11      lawyer from consulting with his client.  Tell me what

12      you want.

13                   MR. MATHIAS:  Can we have five-minute

14      recess?

15                   THE COURT:  You can have five minutes.  We

16      stand in recess.

17                   MR. MATHIAS:  Thank you, Your Honor.

18                   (WHEREUPON, A RECESS WAS TAKEN)

19                   THE COURT:  All right.  Back on the record.

20      I want to be clear that even though I said five

21      minutes, if you needed a longer time, I didn't have a

22      stopwatch, so I have no idea how long we were gone.

23      Jason can probably tell us, but I wasn't looking at a

24      clock.  Do you need any additional time?

25                   MR. MATHIAS:  No, Your Honor.

1            THE COURT:  Okay.  So you are prepared to

2      proceed?

3            MR. MATHIAS:  Yes.

4            THE COURT:  Okay.  What do you have to tell

5      me, sir?

6            MR. MATHIAS:  So, Your Honor, I have no

7      authority to bind the Department of Commerce in any

8      remand proceeding.  What I can tell you is that the

9      Department of Justice and Commerce are both here and

10     present.  I can promise --

11           THE COURT:  I can tell that.  I didn't need

12     you to tell me that.

13           MR. MATHIAS:  I can promise that your

14     concerns will be brought back to the Department of

15     Commerce for any remand proceedings, but I cannot buy

16     into whatever actions the Department of Commerce may

17     take.

18           THE COURT:  Okay.  I understand.  You're

19     the lawyer.  You're not the client.  I get it.  Does

20     anybody else want to say anything about this matter?

21     Mr. Porter?

22           MR. PORTER:  Yes, Your Honor --

23           THE COURT:  Did you consult with your

24     client during the five minutes too?

25           MR. PORTER:  I didn't confer with ---

44

```
1                THE COURT:  Whatever it was?
2                MR. PORTER:  -- my client, Your Honor, but
3       I do want to reiterate --
4                THE COURT:  Is this your client behind you?
5                MR. PORTER:  No, Your Honor.
6                THE COURT:  Okay.  I didn't know.
7       Sometimes clients come.  I always like that.
8                MR. PORTER:  Your Honor, I want to
9       reiterate, and even in stronger terms, my objection
10      to any remand.  It's not right, Your honor.  I mean,
11      the.  Looking at the, the Remand Determination, you
12      are affirming pages 1 and 2.  All the -- everything
13      after the -- essentially the summary is commentary.
14      You're affirming the conclusion that when you look at
15      the substantial evidence, you cannot find affiliation
16      under the law between Saha Thai and BNK.  And that is
17      clearly supported by the record.  And they admit that
18      because they admit if we take out this ridiculous AFA
19      business, there's no affiliation.  Now --
20                THE COURT:  It's hard to find AFA if your
21      hook is that an HR manager obviously has got to have
22      a debt or equity interest.
23                MR. PORTER:  But you correctly identified
24      this circular thing here.  Okay?  How do you find
25      that Saha Thai impeded when the question was, do you
```

1    have shared employees with an affiliate?  No, we

2    don't think they're affiliate, so we don't have any

3    obligation to disclose a shared employee.  But the

4    point I want to make, though --

5         THE COURT:  Well -- but that's not the

6    question they said.

7         MR. PORTER:  Your Honor, let me back up.

8    Okay?  The -- what I find very objectionable is the

9    idea that the department can be either sloppy or

10    dishonest and they get a third bite of the apple.

11    That's just not right, Your Honor.

12         THE COURT:  So you're responding to the

13    purposes -- purposivist, if I can say that, argument

14    found in some of the briefing from your friends on

15    the other side, by saying that the purpose of a

16    remand cannot be to reward bad behavior.

17         MR. PORTER:  Exactly, Your Honor.  And so

18    -- and then further to, what you eloquently laid out

19    earlier, if they come back with a brand-new

20    determination that has no foundation in the Original

21    Determination, we're in murky waters there.  I'm not

22    going to say it's impossible, but I'm going to say

23    that's not right.  And so I just don't think a remand

24    is the way to go.  I think the way to go is to say I

25    affirm the result, and I want to call out the bad

46

1       behavior.  And then you're on record.  Everything is

2       clear.  I don't see why we need to go back to the

3       Commerce Department.

4               THE COURT:  Okay.  I really wonder whether

5       somebody would take it to the Federal Circuit if I

6       did that.  It's not exactly a clean record whereas, I

7       think your friends in the Solicitor General's Office

8       like to say, a good vehicle.  Tell Ms. Harris I said

9       hello.  Anything else?

10              MR. PORTER:  No, Your Honor.

11              THE COURT:  Anything from our friends?

12      You, sir, for Defendant Intervener?

13              MR. CLOUTIER:  No, sir.

14              THE COURT:  Okay.  Well, this has been

15      interesting.  I always like to hear what parties have

16      to say.  They tend to discount oral argument in law

17      school, or at least they did when I was in law

18      school.  That was a mistake.  This is the most

19      interesting part of the whole thing, as far as I'm

20      concerned.

21              Thank you guys for being here this

22      afternoon.  I wish you safe travels back to wherever

23      your homes are.  We stand adjourned.

24              THE BAILIFF:  All rise.

25              (Proceeding Concluded)

3/20/2025

47

1

2                        CERTIFICATE

3       I, Mary Ellen Beaulieu, do hereby certify the

4  foregoing transcript of this interview in the matter of

5  Bonney Forge, et al. versus United States was prepared

6  using the required electronic equipment and is a true and

7  accurate record of the proceedings.

8       I further certify that I am not related to any of the

9  parties to this action by blood or marriage, and I have no

10  interest in the outcome of this matter.

11  Signature:     Mary Ellen Beaulieu (Electronically signed)

12  Date:          March 31, 2025   *Mary Ellen Beaulieu*

13  Agency:        Toby Feldman, Inc.

14                 3 Columbus Circle, 15th Floor

15                 New York, New York 10019

16

17

18

19

20

21

22

23

24

25

## A

**abbreviation (1)** 36:16
**ability (5)** 14:19 17:23 19:10 36:20 37:9
**accord (1)** 29:3
**accurate (3)** 7:7 39:21 47:7
**acknowledge (2)** 7:3 21:7
**acknowledged (2)** 23:19 39:20
**acknowledges (1)** 22:10
**acknowledging (6)** 6:24 16:9 20:7 21:16 34:12 38:7
**act (6)** 8:16 14:18 15:25 17:22 19:9 37:8
**acted (2)** 24:9 36:19
**action (1)** 47:9
**actions (1)** 43:16
**actual (2)** 19:11 41:19
**add (3)** 19:17 23:16 41:5
**adding (1)** 23:18
**additional (2)** 31:17 42:24
**address (3)** 11:5 12:19,21
**adds (1)** 14:9
**adept (1)** 24:15
**adjourned (1)** 46:23
**administrative (4)** 6:6 7:1 17:14 20:5
**admit (3)** 31:12 44:17,18
**adverse (12)** 10:25 13:3 16:22,23 21:12,21 35:23

36:18 37:1,3,10 38:5
**advocating (1)** 14:10
**AFA (5)** 28:10 36:8 36:16 44:18,20
**affect (1)** 41:19
**affiliate (3)** 13:2 45:1,2
**affiliated (6)** 8:15 8:23 9:16,17 10:4 11:25
**affiliates (5)** 9:8 11:13 13:9 15:10 17:2
**affiliation (16)** 7:13 10:25 16:18 20:2 21:10 27:10,11,23 28:11 35:14 36:9 37:13,13 38:23 44:15,19
**affirm (7)** 23:6 25:16 26:25 27:8 34:5 39:25 45:25
**affirmable (1)** 33:14
**affirmance (1)** 25:22
**affirmation (1)** 25:21
**affirmed (3)** 23:9 23:16 27:4
**affirming (6)** 25:19 25:19 32:15 36:5 44:12,14
**afraid (2)** 23:5 26:15
**afternoon (3)** 4:20 22:2 46:22
**agencies (2)** 7:2 29:13
**agency (23)** 5:24 6:13,24 7:21 8:8 9:23 10:11 12:2 13:3,19 14:22

19:24 21:13 22:15 24:16 29:8,12 32:24,24 36:18,22 40:3 47:13
**Agency's (1)** 7:18
**aggressive (1)** 35:22
**agree (9)** 14:16,17 23:8,15,17 29:6 31:19 37:20 38:9
**agreeing (1)** 32:8
**al (1)** 47:5
**Alexander (2)** 1:13 4:4
**aligns (1)** 32:19
**allow (1)** 24:18
**allows (1)** 26:6
**alluded (1)** 36:12
**America (1)** 4:6
**analyses (1)** 38:8
**analysis (22)** 9:20 9:22,24 10:14,15 13:19 14:10 16:20 18:19 19:4 23:4 24:1,8 27:10,12 27:23 28:11 33:10 36:16,21 37:15,17
**anchor (2)** 12:17 21:2
**and/or (10)** 8:13 9:5,12 10:9 11:16 13:13 15:7,14 17:5 18:11
**answer (4)** 12:3 35:4 36:11 38:2
**anybody (1)** 43:20
**appeal (10)** 6:23 21:4,5 23:5 24:12 26:8 30:9,15 32:21 34:2
**appealed (2)** 6:4 7:19
**appealing (1)** 39:5
**Appeals (1)** 32:11
**appear (1)** 10:18

**appearing (2)** 4:10 4:13
**appears (5)** 11:5 14:3 21:12 22:14 32:25
**appendix (3)** 7:16 8:7 10:16
**apple (1)** 45:10
**apply (1)** 16:23
**appropriate (4)** 18:4 32:9 33:16 39:23
**approximation (1)** 40:16
**area (1)** 5:8
**arguing (1)** 24:16
**argument (4)** 26:14 39:19 45:13 46:16
**arrival (1)** 5:18
**aside (1)** 36:8
**asked (14)** 8:9,20 8:25 9:7 10:4,6 11:11 15:5 16:25 23:25 24:4 27:15 28:19 38:15
**asking (4)** 10:3 32:21 38:12 41:20
**Associates (2)** 3:3 4:18
**assume (4)** 6:10 11:21 32:17 34:7
**assumed (1)** 6:23
**attempt (1)** 6:20
**attention (2)** 9:1 15:3
**attorney (2)** 6:2,5
**attorneys (5)** 2:4,12 2:20 3:4 4:7
**authority (1)** 43:7
**available (2)** 14:14 23:23
**Avenue (2)** 2:21 3:5

## B

**B (1)** 1:12
**back (22)** 4:22 5:4

**appearing (2)** 4:10
**5:25 13:21 16:11 19:21 20:22 23:25 33:13 34:15 35:17 36:7,20 39:1,1 40:5 42:19 43:14 45:7,19 46:2,22
**backbone (1)** 23:14
**bad (6)** 21:18,19 32:15,15 45:16,25
**BAILIFF (2)** 4:2 46:24
**based (12)** 7:10 13:4,18,19 14:14 16:5,20,22,24 17:20 18:7,15
**basically (3)** 7:11 13:17 40:12
**basis (5)** 19:1,15,16 19:25 21:1
**Beaulieu (3)** 1:24 47:3,11
**beginning (3)** 5:18 12:21 20:7
**begins (1)** 18:24
**behalf (4)** 4:10,13 4:14 14:10
**behavior (5)** 25:11 32:15,15 45:16 46:1
**belied (1)** 22:1
**believe (8)** 12:9,11 12:12 23:3 25:2 27:8,20 42:5
**Ben (1)** 2:14
**bench (1)** 31:6
**best (6)** 14:18 17:23 19:9 32:17 36:20 37:9
**bet (1)** 29:22
**better (5)** 13:20 21:9 30:9 33:7 40:20
**beyond (1)** 35:12
**big (1)** 22:14
**bind (3)** 29:25 30:4

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950

43:7
**bit (2)** 35:11 38:19
**bite (1)** 45:10
**bizarre (1)** 32:23
**blood (1)** 47:9
**bluntly (4)** 23:5,13
27:1 39:25
**BNK (26)** 7:23
10:23 11:6,22,25
12:4,7,19,21 13:1
14:13,25 15:20
16:24 17:9,12,17
18:1 22:7,8 36:10
36:24 37:23 38:13
38:15 44:16
**bolster (1)** 6:22
**Bonney (1)** 47:5
**bonus (1)** 20:20
**bother (1)** 34:14
**bottom (1)** 30:25
**Box (1)** 2:13
**brackets (1)** 10:18
**BRANCH (1)** 2:11
**brand-new (1)**
45:19
**brief (2)** 17:14
27:21
**briefing (1)** 45:14
**briefly (1)** 28:8
**briefs (1)** 7:6
**broad (1)** 10:2
**brought (1)** 43:14
**business (2)** 13:6
44:19
**buy (1)** 43:15

**C**

**C (4)** 2:1 3:1 28:18
28:18
**C-suite (1)** 12:16
**Calculation (1)**
19:24
**call (6)** 6:18 29:14
29:21,25 32:9
45:25
**care (1)** 10:21

**careful (1)** 14:3
**carefully (3)** 16:12
16:17 35:18
**case (22)** 1:2 5:18
5:24 6:3,4,11,17
6:23 7:6,19 10:20
12:19 17:14 20:13
21:14 23:1,8
25:10 26:20 32:2
35:16,17
**catch (2)** 24:13
28:6
**categorized (1)**
13:2
**caught (1)** 39:13
**certain (2)** 9:18
20:11
**certainly (1)** 14:5
**CERTIFICATE ...**
47:2
**certify (2)** 47:3,8
**cetera (1)** 6:14
**CFR (1)** 8:16
**challenged (1)**
23:10
**challenging (1)**
23:13
**chambers (1)** 5:5
**chance (2)** 33:3
40:13
**Chandler (4)** 2:8
4:12,12,24
**change (8)** 7:2,5
16:1 21:3,6,8
31:12 32:9
**changed (1)** 14:5
**changes (3)** 6:25
8:4 13:25
**CHIEF (1)** 2:18
**choice (2)** 20:2
30:15
**choose (1)** 39:15
**chose (6)** 10:24
27:10 29:8 38:22
39:2 40:15

**Chris (2)** 3:8 4:17
**Circle (1)** 47:14
**Circuit (10)** 6:23
21:20 24:13,15
26:10 32:11 34:10
35:24 39:17 46:5
**circular (1)** 44:24
**CIT (3)** 1:2 6:3,4
**cite (1)** 16:3
**cited (3)** 19:14 25:5
25:6
**CIVIL (1)** 2:11
**claim (1)** 28:1
**claimed (1)** 21:16
**clean (2)** 33:19 46:6
**clear (7)** 20:11
22:13 25:9,21,22
42:20 46:2
**clearly (1)** 44:17
**clerked (1)** 4:25
**clerks (3)** 4:22
20:13,18
**clerkships (1)** 5:7
**client (9)** 14:11
25:11 32:4 37:23
42:11 43:19,24
44:2,4
**clients (2)** 29:23
44:7
**clock (1)** 42:24
**close (1)** 15:3
**closely (4)** 31:14
41:14,15,16
**Cloutier (10)** 3:8
4:17,17 31:11,16
31:21 32:6 41:2,2
46:13
**code (1)** 8:22
**colleague (1)** 24:17
**Collin (4)** 2:16 4:14
5:1 25:9
**color (3)** 23:16,18
25:20
**Columbus (1)**
47:14

**come (5)** 19:2 33:13
40:4 44:7 45:19
**comes (1)** 38:2
**comfortable (1)**
29:19
**comment (3)** 27:1
34:6,7
**commentary (7)**
24:25 25:20 27:1
38:20 40:1,1
44:13
**comments (2)** 7:7
14:8
**Commerce (41)**
2:18 4:16 5:17 6:2
6:4,5,20 8:14
10:23 11:8,9
12:25 13:22 14:1
14:12 15:5,8,15
15:22 16:23,25
17:21 18:5,15
21:23 24:20 27:9
27:22 28:13 29:20
30:14 35:21,21
39:8,13 42:2 43:7
43:9,15,16 46:3
**Commerce's (4)**
14:24 15:1 24:24
30:24
**COMMERICAL...**
2:10
**common (1)** 29:4
**companies (8)** 10:2
10:13,22 17:12
22:7,9 28:21
35:15
**company (25)** 1:5
4:5 8:15,19 9:4,11
10:8,22 11:1,15
12:6,14 13:12
15:13,18 16:8
17:4 18:10 21:23
28:15,18,18,19,24
38:16
**complete (1)** 9:2

**completely (1)** 7:21
**completing (1)**
20:19
**COMPLIANCE ...**
2:19
**concern (2)** 31:1
32:14
**concerned (1)**
46:20
**concerns (2)** 30:24
43:14
**conclude (1)** 26:24
**Concluded (1)**
46:25
**conclusion (3)** 26:6
39:24 44:14
**concocted (2)** 21:13
22:17
**confer (1)** 43:25
**Congress (2)** 22:23
36:6
**connection (2)**
15:21 17:9
**consider (2)** 8:15
8:18
**consistent (1)** 14:15
**Constitution (1)**
2:21
**consult (1)** 43:23
**consulting (1)**
42:11
**contends (1)** 15:4
**contest (1)** 14:24
**continuance (1)**
14:20
**continue (4)** 12:24
14:12,13,23
**continuing (1)**
12:22
**conventional (1)**
29:4
**correct (11)** 5:20,21
6:1,9,15 7:14 23:4
23:22 31:11 32:5
40:22

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950

**correctly (1)** 44:23
**cosmetically (1)** 39:4
**counsel (6)** 2:18 5:17 7:8 29:13 40:24 41:1
**course (4)** 7:4 21:5 30:23 36:12
**court (83)** 1:1 4:1,2 4:4,19,22 5:4,7,19 5:22,25 6:7,10,16 7:8 23:18,20,23 25:8,16,24 26:3 26:13,17,22 27:5 27:13,25 28:6,12 29:3,7,11 30:16 30:17,20,23 31:7 31:14,17,23 32:10 32:14 34:9,17,23 35:3,9,20,24 36:3 36:14 38:12,25 39:6,10 40:8,12 40:15,23 41:6,8,8 41:13,22 42:4,7 42:15,19 43:1,4 43:11,18,23 44:1 44:4,6,20 45:5,12 46:4,11,14
**Court's (4)** 7:10 14:15 15:2 24:22
**crafted (2)** 16:17 19:18
**creates (1)** 35:14
**currently (3)** 15:12 15:18 17:3
**customer (1)** 8:22
**customers (4)** 9:16 9:18,19 15:21
**cute (1)** 15:4

**D**
**D (1)** 28:19
**D.C (1)** 3:7
**Daniel (2)** 2:7 4:9
**date (3)** 1:9 5:12 47:12

**day (1)** 4:9
**days (1)** 5:11
**DC (3)** 2:6,15,22
**deal (2)** 22:14 32:1
**debt (18)** 9:10 10:8 11:15 12:5,10,13 13:11,15 16:7 18:21 24:4 28:15 28:20,23 36:22 37:5,14 44:22
**decided (1)** 20:14
**decidingly (1)** 19:19
**decision (21)** 6:13 6:22 7:3,18,19,22 10:24 11:10 15:2 16:20 19:24 24:17 24:22 25:5,7 26:5 29:16 32:10 33:21 35:8 36:6
**Decisions (1)** 18:17
**deeper (1)** 28:12
**defend (4)** 28:3 29:9,17 39:21
**Defendant (8)** 1:8 2:12,20 30:20,23 31:8 41:1 46:12
**Defendant-Inter...** 3:4
**definitely (1)** 31:21
**demonstrating (1)** 17:10
**department (33)** 2:10,18 4:16 6:20 9:10 11:9,9,14 12:25 13:11,22 14:1,12 15:12 17:3 18:6,15 21:23 28:14 29:14 29:22 30:14 35:21 35:22 39:8,14 41:25 43:7,9,14 43:16 45:9 46:3
**Department's (1)** 29:21

**describe (1)** 18:5
**described (1)** 40:13
**description (1)** 21:14
**designating (1)** 8:22
**details (2)** 9:22 10:13
**determination (23)** 8:4,8 10:18 13:21 13:24 14:7 16:3,5 16:19 18:7,15 19:16 24:20,24,25 25:1,4 29:10 32:13 38:23 44:11 45:20,21
**determine (1)** 11:23
**determined (2)** 17:22 36:11
**development (10)** 8:12 9:5,11 10:9 11:16 13:13 15:6 15:14 17:5 18:11
**dicta (2)** 27:19 28:4
**difference (1)** 32:12
**different (8)** 21:3 22:10 31:21,23,24 32:2 37:19 38:8
**difficult (1)** 37:22
**Digitally (1)** 1:23
**digress (1)** 24:18
**direction (1)** 21:10
**director (1)** 10:7
**directors (7)** 8:20 9:9 11:14 13:10 15:11 17:3 18:9
**disagree (3)** 23:14 24:3 31:9
**disagreement (1)** 15:1
**disclose (3)** 11:23 15:20 45:3
**disclosed (1)** 12:4
**discount (1)** 46:16

**discuss (4)** 4:21 10:12,19 42:2
**discussed (2)** 11:10 28:8
**discussion (2)** 19:22 27:19
**dishonest (1)** 45:10
**dispute (1)** 41:9
**distributed (1)** 4:23
**distribution (10)** 8:13 9:6,12 10:10 11:17 13:13 15:7 15:14 17:6 18:12
**distributors (1)** 8:11
**disturbs (2)** 30:6,11
**DIVISION (1)** 2:11
**DOCKET (1)** 1:2
**document (4)** 7:21 8:1,2 10:1
**documents (1)** 7:14
**doing (1)** 16:10
**domain (2)** 10:12 11:3
**doubt (1)** 40:23
**draw (4)** 10:24 36:18 37:11 38:5
**drawing (3)** 16:22 21:11 37:1
**drawn (1)** 26:7
**drew (1)** 13:3
**due (1)** 14:8
**dunk (1)** 24:8
**dunks (1)** 22:11
**duties (1)** 6:11

**E**
**E (6)** 1:12,12 2:1,1 3:1,1
**earlier (1)** 45:19
**easier (1)** 34:3
**echo (1)** 31:6
**either (2)** 20:23 45:9
**electronic (1)** 47:6
**Electronically (1)**

47:11
**Ellen (3)** 1:24 47:3 47:11
**eloquently (1)** 45:18
**email (1)** 11:5
**emphasize (1)** 30:14
**employed (4)** 15:13 15:18 17:4 18:10
**employee (6)** 10:6 11:2,3,6 12:5 45:3
**employee's (1)** 13:7
**employees (10)** 9:8 11:13 13:10 15:6 15:10 16:6 17:2 18:9 38:16 45:1
**enact (1)** 22:23
**enacts (1)** 22:24
**ENFORCEMEN...** 2:19
**English (2)** 16:15 18:22
**enlightened (1)** 22:5
**equipment (1)** 47:6
**equitable (1)** 40:10
**equity (18)** 9:10 10:8 11:15 12:6 12:10,13 13:11,15 16:7 18:21 24:4 28:15,21,23 36:23 37:5,14 44:22
**erroneous (1)** 17:11
**especially (1)** 10:5
**ESQ (5)** 2:7,8,16,23 3:8
**essentially (2)** 25:3 44:13
**et (2)** 6:14 47:5
**everybody (2)** 34:4 38:13
**everybody's (1)** 35:4
**evidence (7)** 9:14

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950

9:20 25:6 26:6 34:18 36:9 44:15
**evidentiary (1)** 34:20
**exactly (4)** 14:23 36:4 45:17 46:6
**example (1)** 8:18
**executive (1)** 12:16
**existence (2)** 12:4 17:24
**expect (1)** 37:20
**expected (1)** 16:6
**experienced (1)** 40:24
**expertly (1)** 19:18
**explain (4)** 7:5 21:2 21:11 26:9
**explained (3)** 15:8 17:13,13
**explanation (5)** 13:1,18 21:9 34:19 40:20
**exporters (1)** 8:11
**expression (1)** 15:1
**extend (1)** 39:12
**extent (1)** 15:23

**F**

**F (1)** 1:12
**fabrication (1)** 19:13
**fact (5)** 7:12 9:16 15:8 17:18 31:25
**factors (1)** 8:17
**facts (4)** 27:23 28:11 31:25 32:1
**factual (2)** 5:15 31:10
**failed (5)** 11:22 12:3 14:18 17:22 19:9
**failure (3)** 15:20 38:2,3
**fair (3)** 5:22 31:23 40:6
**fairy (2)** 21:25

22:17
**false (1)** 18:14
**familiar (1)** 5:23
**families (1)** 9:4
**family (3)** 9:2,18 10:5
**far (1)** 46:19
**fashion (1)** 40:1
**Fasteners (1)** 36:3
**fat (1)** 20:20
**favorite (2)** 11:24 25:12
**fear (1)** 6:19
**Federal (11)** 6:23 21:20 24:13,15 26:9 32:10,11 34:9 35:24 39:17 46:5
**feel (1)** 22:3
**feeling (1)** 29:18
**Feldman (2)** 1:25 47:13
**fight (1)** 33:20
**filling (1)** 36:19
**final (19)** 7:19 9:22 9:24 10:14,15 14:21 15:2 16:19 17:20 18:6,8,19 18:25 19:3,4,8,14 19:23,24
**find (14)** 7:13 10:25 14:13 16:16 20:2 20:15,22 28:16,25 29:25 44:15,20,24 45:8
**finding (1)** 14:24
**fine (2)** 31:25 32:2
**firm (2)** 4:8,10
**first (9)** 4:21 7:1 14:6 26:4,5,8 31:9 32:7 34:14
**five (4)** 42:8,15,20 43:24
**five-minute (1)** 42:13

**Floor (1)** 47:14
**focused (1)** 28:9
**follow (1)** 21:9
**following (2)** 18:24 26:1
**Forbes (7)** 2:23 4:16 5:16,21 6:2,9 6:15
**foregoing (1)** 47:4
**forfeited (1)** 39:18
**Forge (1)** 47:5
**forget (1)** 28:17
**formally (2)** 23:10 23:12
**former (1)** 4:22
**forthright (2)** 33:17 40:16
**forthrightly (5)** 7:3 10:11 21:7,15 39:20
**found (3)** 19:9 27:23 45:14
**foundation (2)** 31:10 45:20
**four (1)** 23:7
**Franklin (1)** 2:14
**free (2)** 7:2 22:3
**friends (4)** 31:6 45:14 46:7,11
**front (2)** 8:23 12:20
**frustration (2)** 23:12,17
**full (1)** 8:6
**further (9)** 9:7,22 11:7 15:22 17:13 31:5 41:4 45:18 47:8
**Furthermore (1)** 8:20

**G**

**game (3)** 30:8,8 38:18
**gap (6)** 36:17,18,19 36:25 37:2 38:2
**Gee (1)** 33:2

**general (4)** 29:4,13 29:18 30:18
**General's (1)** 46:7
**generally (1)** 29:24
**give (4)** 10:13 16:14 26:13 40:3
**glad (1)** 5:6
**Glass (1)** 33:22
**go (22)** 8:24 9:23 11:7 12:18 13:20 18:19,23 21:11,18 22:20 24:12 28:12 33:11 34:15 35:11 36:20 38:20 39:15 42:9 45:24,24 46:2
**going (40)** 5:12 7:16,23,24 8:1,2,3 10:12 13:16,20 14:2,7 16:14,14 16:16 21:6,8,24 24:18 26:9 29:17 30:2 33:10,12,23 33:24,25 34:1 36:7,8,8 37:5,9,10 37:11 38:5 39:11 42:10 45:22,22
**good (6)** 6:17 20:18 32:18,18 40:20 46:8
**government (4)** 7:8 27:6 38:10 40:25
**great (1)** 42:7
**greatly (2)** 30:7,12
**grounds (2)** 6:14,22
**guess (2)** 4:23 39:6
**guy (2)** 21:18,20
**guys (1)** 46:21

**H**

**hall (1)** 42:9
**hand (2)** 31:19,24
**hands (3)** 7:9,12 21:17
**happen (1)** 20:17
**happened (6)** 21:13

21:14 22:16 23:20 30:10 33:18
**happily (2)** 4:23 10:16
**happy (2)** 39:21,22
**hard (1)** 44:20
**harder (1)** 38:10
**harped (1)** 19:20
**Harris (1)** 46:8
**hat (2)** 16:16 18:23
**heads (5)** 9:10 11:14 13:11 15:12 17:3
**hear (7)** 7:7 31:7,9 37:21 39:10,13 46:15
**heart (1)** 7:5
**hello (1)** 46:9
**help (3)** 5:13,16 21:2
**helps (1)** 31:17
**Hi (1)** 4:9
**hiding (1)** 34:13
**history (1)** 6:16
**hoisted (1)** 40:17
**hold (1)** 25:10
**home (3)** 8:21 9:15 15:21
**homes (1)** 46:23
**honest (3)** 23:24 33:18 38:11
**honestly (1)** 26:16
**honesty (3)** 30:11 30:25 31:1
**honor (46)** 5:3 6:15 23:3,22 24:14,23 25:15,18 26:12,13 26:16 27:7 28:9 29:2,6 30:13,22 31:11,16 32:8 34:8,16,22 35:1,7 36:4,12 39:23 40:3,11,14,19 41:5,12 42:17,25 43:6,22 44:2,5,8

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950

44:10 45:7,11,17
46:10
**Honor's (2)** 23:12
35:18
**Honorable (2)** 1:13
4:3
**hook (2)** 29:7 44:21
**hope (1)** 29:11
**horrible (1)** 22:25
**host (1)** 20:4
**hot (1)** 21:4
**HR (12)** 11:3,4
12:15 20:24 28:14
28:18,21 35:13
36:24 37:4 38:13
44:21
**huh (1)** 22:19
**human (4)** 12:12
16:21 17:17,24
**hundred (4)** 23:4
24:14 35:16 40:14
**hypothetical (1)**
29:1
**Hyundai (2)** 35:17
36:1

**I**

**i.e (2)** 11:5,11
**idea (3)** 35:13
42:22 45:9
**identified (9)** 10:1
12:2,8 18:16
36:25 37:8,22,24
44:23
**identify (5)** 8:10
9:3 10:23 37:20
38:4
**ignore (1)** 25:3
**illegal (1)** 29:13
**imagine (1)** 26:17
**impeded (1)** 44:25
**impossible (1)**
45:22
**impression (7)** 14:4
16:15 18:3,4,7,14
19:20

**impropriety (1)**
34:11
**inappropriate (3)**
26:1 39:1,18
**inaudible (1)** 24:21
**incentive (1)** 32:20
**include (2)** 8:18
15:20
**including (1)** 17:24
**incredibly (1)**
16:12
**indicates (1)** 9:15
**inference (12)**
10:25 13:3 16:22
16:23 21:12 36:19
37:2,2,3,10,11
38:5
**inferences (2)** 21:21
35:23
**information (18)**
9:21 11:18 12:9
13:6 14:15,18,20
15:5,24,24 17:10
17:13,14,15,21,23
19:10 22:4
**instance (2)** 26:4,5
**instructed (1)**
27:10
**instruction (1)**
35:18
**instructs (1)** 9:23
**intended (3)** 14:4
32:3 39:6
**intent (4)** 20:9
21:21 32:16,22
**interest (7)** 31:4
36:23 37:5,12,15
44:22 47:10
**interested (1)** 26:20
**interesting (2)**
46:15,19
**interests (2)** 28:21
31:8
**International (3)**
1:1 4:3 5:19

**Intervener (4)**
30:21,24 31:8
46:12
**Intervener's (1)**
41:1
**interview (1)** 47:4
**invested (2)** 20:16
20:18
**involved (16)** 8:12
9:5,11 10:8 11:15
13:12 15:6,13,16
15:19 16:6,8 17:5
18:11 38:17 42:1
**involves (1)** 9:21
**involving (4)** 12:5
18:8,21 24:4
**irrelevant (1)** 21:22
**issue (5)** 16:19
24:22 29:15 35:15
38:5
**issued (1)** 12:19
**issues (5)** 4:24 7:17
11:10 18:16 19:23
**issuing (2)** 14:21
15:22

**J**

**Jason (1)** 42:23
**jive (1)** 35:9
**jog (1)** 5:16
**joined (3)** 4:15 6:3
6:7
**joining (1)** 4:20
**JonZachary (2)**
2:23 4:15
**judge (10)** 4:25 5:1
19:12 20:1,17,23
24:6 33:2,12
39:13
**Judges (1)** 41:13
**judgment (1)** 31:24
**jump (1)** 33:25
**Justice (5)** 2:10
29:14,21 41:25
43:9
**justification (3)**

13:4 25:5,6
**justifies (1)** 13:18

**K**

**kept (1)** 7:10
**kilter (1)** 25:17
**kind (1)** 20:23
**know (26)** 5:12
6:16 18:10,13
20:15,21 21:19
22:20 23:15,24
24:3,19 25:8,12
27:1 28:20 29:12
30:1,17 33:3,6
34:9,24,24 37:16
44:6
**knows (1)** 38:13

**L**

**laid (2)** 31:10 45:18
**language (3)** 28:4,7
41:19
**law (8)** 4:10 5:8 7:1
16:13 20:5 44:16
46:16,17
**lawyer (5)** 29:18
30:2,4 42:11
43:19
**lawyers (2)** 29:24
41:14
**leave (1)** 14:4
**leaves (2)** 18:6
19:19
**left (3)** 7:11 18:3
20:2
**legal (2)** 35:14
40:10
**legerdemain (3)**
24:13 34:6,7
**legitimately (1)**
32:25
**lenders (1)** 8:11
**let's (12)** 7:13 11:7
12:18 13:23 14:11
14:23 16:11 28:12
31:7 32:17 36:20

36:21
**light (1)** 11:18
**limited (3)** 1:5 4:5
11:20
**line (2)** 30:25 35:16
**list (1)** 28:22
**listed (1)** 12:7
**litigation (2)** 2:10
31:4
**little (7)** 11:7 15:4
21:25 26:10 28:12
31:19 35:11
**LLC (1)** 2:3
**long (4)** 26:21,23
39:16 42:22
**longer (1)** 42:21
**look (10)** 12:23
13:23 20:20 22:4
33:2,3,11 35:25
36:8 44:14
**looking (8)** 7:20
10:22 25:3 33:22
35:20 36:10 42:23
44:11
**looks (1)** 30:7
**lot (2)** 30:5 35:13
**lots (1)** 20:25
**love (1)** 22:21

**M**

**majority (1)** 6:5
**manager (17)** 10:7
11:3,4 12:13,15
16:21 17:17,25
20:25 28:14,18,19
28:22 35:14 36:24
37:4 44:21
**managers (10)** 8:20
9:9 11:13 13:10
15:11,16,17 17:2
18:9 38:14
**March (2)** 1:10
47:12
**market (3)** 8:21
9:15 15:21
**marriage (1)** 47:9

**Mary (3)** 1:24 47:3
  47:11
**material (1)** 38:17
**Mathias (27)** 2:16
  4:14,14 5:3 27:7
  27:18 28:3,8 29:1
  29:6,9 30:13,19
  30:22 31:3 41:4,7
  41:11,18,24 42:5
  42:13,17,25 43:3
  43:6,13
**matter (6)** 19:4
  21:21 22:8 43:20
  47:4,10
**mean (10)** 24:11
  27:15 28:13 29:17
  29:22 34:17 38:9
  39:24 40:8 44:10
**meaning (1)** 15:25
**meet (1)** 37:13
**mellowed (1)** 41:9
**member (1)** 9:3
**members (1)** 9:18
**memorandum (13)**
  7:18 9:22,24
  10:14,15 11:10
  13:5 16:20 18:17
  18:19 19:4,24,25
**memory (4)** 4:25
  5:16,17 32:7
**mention (1)** 39:2
**mentioned (1)** 19:3
**merchandise (13)**
  8:14 9:6,13 10:10
  11:17 13:14 15:7
  15:15,17,19 16:8
  17:6 18:12
**mess (1)** 21:24
**middle (1)** 12:23
**minute (2)** 14:2
  42:3
**minutes (4)** 42:8,15
  42:21 43:24
**misleading (3)**
  19:19,22 21:13

**misleadingly (1)**
  19:1
**mispronounce (1)**
  40:25
**misrepresentatio...**
  20:10
**misrepresented (1)**
  22:16
**missed (1)** 20:21
**mistake (1)** 46:18
**money (2)** 30:3,5
**months (1)** 40:5
**motive (1)** 20:8
**mouth (1)** 39:12
**move (4)** 8:1,2 15:4
  38:18
**murky (1)** 45:21
**mystified (1)** 20:23

## N

**N (2)** 2:1 3:1
**name (4)** 4:7 11:2
  13:7 41:1
**necessarily (1)**
  11:24
**necessary (1)** 15:24
**need (6)** 7:4 21:7
  27:16 42:24 43:11
  46:2
**needed (1)** 42:21
**never (2)** 39:2
  42:10
**new (5)** 4:10 6:11
  25:10 47:15,15
**nice (1)** 20:20
**nicely (1)** 34:2
**normally (1)** 28:15
**note (3)** 13:25
  14:12 18:24
**notice (4)** 6:21 16:1
  31:12 32:11
**notion (1)** 36:5
**noun (1)** 18:4
**November (1)**
  12:19
**number (13)** 4:4

  16:4 17:12 18:20
  24:3,5,5,7,7,10
  38:1,1,3
**NW (2)** 2:5,21

## O

**O (1)** 1:12
**objection (1)** 44:9
**objectionable (1)**
  45:8
**objects (1)** 26:2
**obligation (1)** 45:3
**observe (1)** 16:18
**obviously (5)** 25:21
  37:4 38:12 40:1
  44:21
**occasions (1)** 41:24
**occurred (1)** 7:15
**Office (2)** 2:18 46:7
**officers (5)** 9:9
  11:14 13:11 15:11
  17:3
**oh (5)** 7:8 16:12
  22:25 30:17 37:25
**okay (18)** 5:22 6:7
  6:16 13:20 25:20
  27:5 31:7 35:13
  35:17 36:7 43:1,4
  43:18 44:6,24
  45:8 46:4,14
**Oman (1)** 36:3
**omitted (2)** 14:17
  14:20
**once (1)** 6:11
**openly (1)** 10:19
**opinion (9)** 10:20
  12:18,18,20,21,22
  12:24 25:13 27:9
**opportunity (1)**
  23:11
**oppose (2)** 33:12
  40:2
**opposed (2)** 22:23
  38:14
**opposes (1)** 14:25
**option (2)** 23:23

  40:6
**options (3)** 20:25
  38:14 39:25
**oral (2)** 26:14 46:16
**order (3)** 5:13 6:22
  23:21
**original (17)** 7:17
  8:8,9 10:20,24
  16:3,5 18:15
  24:17,24 25:1,4
  29:10 32:12 35:7
  36:6 45:20
**originally (2)** 20:14
  36:22
**ought (1)** 16:13
**outcome (1)** 47:10
**outright (1)** 19:12
**overturn (1)** 24:21
**owners (1)** 9:3

## P

**P (4)** 2:1,1 3:1,1
**P.O (1)** 2:13
**page (9)** 8:7 12:21
  12:22,23 16:13
  18:18 19:21,21
  32:3
**pages (6)** 7:16,20
  10:16 13:16 14:6
  44:12
**paid (1)** 41:15
**paragraph (11)** 8:7
  9:1 13:4 15:3
  16:12,14 18:2,5
  18:23 19:18,19
**part (5)** 6:11 27:16
  37:15,17 46:19
**particular (4)** 9:1
  10:17 16:15 23:21
**particularly (1)**
  21:4
**parties (4)** 23:7
  31:4 46:15 47:9
**parties' (1)** 32:19
**party (4)** 23:9,24
  26:1 36:19

**passage (1)** 33:4
**path (1)** 39:15
**pay (2)** 9:1 15:3
**Pennsylvania (1)**
  3:5
**penultimate (1)**
  19:21
**people (11)** 5:9 7:7
  22:22 28:20,25
  29:24 30:1 31:18
  32:1 37:4 41:8
**people's (1)** 29:4
**percent (4)** 23:4
  24:14 35:16 40:14
**perfect (1)** 35:3
**perform (1)** 36:21
**person (5)** 8:19
  26:3 37:12,14
  39:15
**persons (1)** 8:12
**perspective (3)**
  21:19 32:23 35:21
**pertaining (1)**
  17:25
**petard (1)** 40:17
**phase (1)** 26:24
**phrase (1)** 11:24
**pick (1)** 25:2
**picks (1)** 18:19
**Pillsbury (3)** 2:3
  4:10,13
**Pipe (2)** 1:4 4:5
**PITTMAN (1)** 2:3
**place (1)** 33:9
**placed (1)** 17:15
**Plaintiff (2)** 1:5 4:8
**Plaintiffs (1)** 2:4
**Play (1)** 8:5
**played (1)** 38:18
**playing (2)** 30:7,8
**please (4)** 4:1,7
  5:11 9:21
**point (11)** 19:12
  24:23 25:24 39:16
  40:8,9,10,10,12

40:24 45:4
**pointed (2)** 25:25
    35:8
**Porter (46)** 2:7 4:9
    4:9 22:12 23:2,3
    23:22 24:14 25:15
    25:18 26:12,15,19
    26:23 27:8 29:23
    32:8 34:5,8,16,21
    34:22 35:1,7,11
    36:2,4 37:21
    38:19 39:4,7,11
    39:22 40:11,14,19
    43:21,22,25 44:2
    44:5,8,23 45:7,17
    46:10
**portions (2)** 7:25
    10:17
**position (24)** 6:25
    7:2 9:10 10:8
    11:15 12:6,13
    13:12 16:7 18:21
    20:6 21:3,7,8,15
    22:10 28:15,24
    32:7,20 34:12,13
    34:14 40:21
**positively (1)** 32:23
**possible (1)** 12:14
**possibly (2)** 10:3
    18:25
**potential (2)** 16:24
    32:21
**potentially (3)** 10:1
    15:22 32:25
**practice (2)** 5:8
    29:21
**preliminary (2)**
    16:25 19:5
**prepared (2)** 43:1
    47:5
**prerequisite (1)**
    37:1
**present (1)** 43:10
**presented (1)** 21:25
**presiding (1)** 4:4

**pretend (1)** 33:23
**pretending (1)**
    16:10
**pretty (1)** 21:1
**prevented (1)** 15:22
**previously (4)**
    15:12,18 17:4
    21:14
**principle (1)** 20:5
**prior (1)** 33:18
**probably (3)** 37:14
    38:9 42:23
**probing (1)** 15:23
**problem (4)** 11:8
    20:3 21:5 39:14
**problems (2)** 20:4
    35:4
**procedural (1)**
    34:11
**procedurally (3)**
    33:16,19 39:18
**proceed (1)** 43:2
**proceeding (7)** 1:23
    6:6 29:16 33:18
    42:1 43:8 46:25
**proceedings (4)**
    5:10 22:18 43:15
    47:7
**production (11)**
    8:13 9:5,12 10:9
    11:16 13:13 15:6
    15:14 17:5 18:11
    38:17
**professor (2)** 16:16
    18:22
**promise (2)** 43:10
    43:13
**proper (1)** 27:14
**properly (1)** 13:1
**proprietary (1)**
    9:21
**protected (1)** 13:6
**protest (1)** 14:22
**provide (2)** 9:2
    21:9

**provided (1)** 12:25
**providing (2)** 17:23
    19:10
**public (8)** 1:5 4:5
    7:21,22 10:12
    11:2,19,20
**pull (1)** 39:17
**pulled (1)** 26:10
**Pun (2)** 32:3 39:6
**punish (1)** 40:18
**purpose (3)** 22:22
    22:24 45:15
**purposes (4)** 10:21
    22:21,24 45:13
**purposivist (1)**
    45:13
**pursuant (1)** 35:17
**put (7)** 16:15 17:10
    18:22 19:23 36:8
    39:11,24

———————

**Q**

**question (59)** 5:15
    8:23 10:2,4,5 12:2
    12:3,4,8,10 13:8
    13:14,15 16:4,5
    18:8,18,20 19:2
    19:14,22 20:8,10
    21:3,24 24:3,5,5,7
    24:7,10 27:14
    28:19 33:5,5,6,7,9
    33:24 35:9 36:11
    36:23 37:8,18,19
    37:19,21,22,24
    38:1,1,2,4,20,22
    38:24 39:2 44:25
    45:6
**questionnaire (6)**
    8:9,25 17:7,8,19
    18:21
**questions (13)** 9:25
    12:7 15:23 16:2,9
    18:16,17 25:13
    27:15 28:1 30:11
    32:22 38:6
**quickly (1)** 19:5

**quite (8)** 10:11 22:8
    24:15 26:16 34:2
    36:12 38:19 41:16
**quote (6)** 7:23,24
    8:10 15:9 16:7
    17:1
**quoted (6)** 10:19
    13:8 18:8,18
    19:15 22:6

———————

**R**

**R (3)** 1:12 2:1 3:1
**raised (1)** 36:6
**raises (1)** 30:11
**rational (1)** 39:15
**rationale (2)** 10:23
    34:19
**reach (3)** 7:9 26:3,4
**reached (2)** 6:8
    27:22
**read (22)** 7:6 11:11
    13:5,16,17 14:7
    14:11 16:2,14
    18:2,13,23 20:14
    22:5,5 27:9 31:18
    33:5 34:15 41:14
    41:14,16
**reading (3)** 8:6
    20:12 31:14
**real (2)** 20:8 33:25
**realize (1)** 24:2
**really (3)** 28:23
    30:6 46:4
**reason (1)** 40:15
**reasonable (1)** 26:2
**reasons (1)** 26:1
**receive (2)** 5:13
    6:11
**recess (4)** 42:9,14
    42:16,18
**recognizing (1)**
    23:7
**recollection (1)**
    22:12
**reconsider (1)** 24:1
**reconsideration (1)**

24:2
**record (26)** 4:8
    6:13 9:14,20
    14:14 17:10,16
    20:11 21:16 22:1
    22:5,17 26:11
    27:11,14,16,17
    30:9 36:17,18
    39:21 42:19 44:17
    46:1,6 47:7
**recorded (1)** 1:23
**records (2)** 11:19
    11:20
**redacted (2)** 11:2
    13:7
**redetermination ...**
    14:22 28:10
**refer (4)** 11:4 19:21
    27:14,19
**referred (1)** 27:20
**reflect (1)** 30:9
**reflecting (1)** 17:16
**regard (4)** 11:1
    12:7 21:20 22:17
**regarding (3)** 7:23
    15:5 24:7
**regardless (2)** 6:12
    24:6
**reiterate (2)** 44:3,9
**related (1)** 47:8
**relationship (3)**
    15:23 16:24 17:25
**relationships (1)**
    8:18
**relevant (6)** 7:25
    10:1,17 27:21,25
    28:2
**rely (1)** 28:2
**remand (28)** 5:25
    8:3 13:21,24 14:7
    14:15 23:7,8,10
    23:25 24:25 27:3
    27:9 28:10 31:5
    32:12 33:2 40:2,3
    41:19,22 42:1

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950

43:8,15 44:10,11
45:16,23
**remember (5)** 9:25
12:1 23:20 34:23
36:14
**remind (1)** 5:9
**reopen (3)** 27:11,13
27:17
**report (6)** 8:21 9:17
9:18 15:9 17:1,8
**reported (1)** 17:19
**reporting (1)** 8:21
**reproduced (1)**
13:5
**request (1)** 5:11
**requested (1)** 15:9
**required (5)** 6:24
37:1 47:6
**requires (1)** 34:18
**requote (1)** 19:22
**research (2)** 11:19
11:21
**resellers (1)** 8:11
**resources (4)** 12:12
16:21 17:17,24
**respect (3)** 9:19
14:9 17:11
**respectful (1)** 14:22
**respectfully (1)**
40:6
**responding (1)**
45:12
**response (7)** 17:11
17:20 28:4 35:10
37:7,24 38:4
**responsible (1)**
25:11
**Restani (1)** 5:2
**rested (1)** 6:14
**result (16)** 7:9
11:18,23 13:2
23:1,6,21 25:19
26:2,25 27:3,8,21
28:9 39:14 45:25
**results (16)** 14:21

15:2 16:19,25
17:20 18:6,8,25
19:3,5,9,14 23:7,9
23:10 41:20
**reversed (1)** 19:17
**review (16)** 6:13,13
8:14 9:6,13,14
10:10 11:17 13:14
15:8,15 16:4,9
17:6 18:12 29:14
**revise (1)** 39:12
**reward (1)** 45:16
**ridiculous (1)** 44:18
**right (10)** 4:19
14:23 23:1,13
30:21 36:2 42:19
44:10 45:11,23
**rise (1)** 46:24
**role (2)** 9:4,19
**rulemaking (1)**
29:16
**ruling (1)** 7:10

————————

## S

**S (2)** 2:1 3:1
**S.W (1)** 3:5
**safe (1)** 46:22
**Saha (55)** 1:4 4:5
4:11,13 8:9,20,25
9:2,3,7,7,8,15,16
9:17,21 11:5,6,11
11:12,12,22,22,24
12:2 13:9,9 14:13
14:16,17,24,25
15:4,9,9,10,20
16:23 17:1,1,1,8
17:11,17,19,22,25
21:19,22 27:20
28:17 36:10 40:6
44:16,25
**sale (12)** 8:13 9:5
9:12 10:9 11:16
13:13 15:7,14,16
15:19 17:5 18:11
**sales (1)** 8:21
**sank (1)** 12:17

**saving (1)** 30:5
**saying (4)** 7:8 23:14
23:15 45:15
**says (6)** 10:11 11:9
19:14 24:6 33:6
34:6
**scare (1)** 5:7
**Schagrin (2)** 3:3
4:17
**school (3)** 16:13
46:17,18
**scribe (1)** 35:6
**seated (1)** 4:1
**second (2)** 10:4
34:4
**seconds (1)** 24:19
**section (3)** 8:16
15:25 34:21
**see (11)** 5:6 7:14
8:4 9:21 12:24
13:5,17 32:19
33:13 41:6 46:2
**segregated (1)** 22:8
**self- (1)** 30:1
**send (1)** 26:7
**sense (1)** 29:4
**sensibly (1)** 22:8
**sent (1)** 23:24
**sentence (3)** 18:25
19:11,13
**separate (1)** 30:21
**serves (2)** 5:1,17
**serving (1)** 30:2
**session (1)** 4:3
**set (4)** 24:10 30:8
32:20 34:1
**seven (2)** 5:11 10:2
**seventh (1)** 22:14
**share (2)** 23:11,17
**shared (8)** 11:4,6
17:16 28:18 37:16
38:16 45:1,3
**SHAW (1)** 2:3
**shell (3)** 30:7,8
38:18

**shift (1)** 6:21
**showed (1)** 22:18
**side (2)** 4:24 45:15
**Signature (1)** 47:11
**signed (1)** 47:11
**signing (1)** 38:6
**similarly (1)** 27:7
**single (3)** 16:21
17:16 23:9
**sink (1)** 21:1
**sir (5)** 31:2 41:1
43:5 46:12,13
**six (4)** 10:21 22:11
22:13 40:5
**slam (2)** 22:11 24:8
**slap (1)** 37:10
**sleight (2)** 31:19,24
**slightest (1)** 20:4
**slightly (1)** 22:9
**slip (4)** 12:20,21,22
12:23
**sloppiness (3)**
32:16,18,19
**sloppy (1)** 45:9
**sneaky (1)** 33:25
**Solicitor (2)** 30:17
46:7
**solve (1)** 35:4
**somebody (1)** 46:5
**somewhat (2)** 40:8
40:9
**sort (1)** 25:2
**specific (1)** 37:8
**specifically (4)** 12:8
15:16 16:22 17:15
**spent (1)** 33:4
**stake (1)** 28:25
**stance (1)** 35:22
**Stanceu (1)** 4:25
**stand (2)** 42:16
46:23
**standard (2)** 8:23
26:6
**standing (1)** 23:13
**start (7)** 7:16 24:17

24:19,21,24 25:1
32:21
**starting (1)** 4:8
**state (5)** 4:7 5:23
9:7 11:11 13:8
**stated (1)** 23:8
**statement (1)** 7:14
**States (5)** 1:7 4:2,6
4:15 47:5
**Station (1)** 2:14
**statute (5)** 13:19
21:10 22:21,22,25
**statutory (1)** 37:17
**Steel (2)** 1:4 4:5
**step (1)** 7:1
**Stephen (2)** 1:13
4:4
**steps (3)** 32:9 34:3
36:15
**sticking (1)** 20:1
**stock (2)** 20:25
38:14
**stockholder (1)**
10:7
**stockholders (8)**
9:9 11:13 13:10
15:11 17:2 18:9
37:16,17
**stop (2)** 42:10,10
**stopwatch (1)**
42:22
**strange (2)** 12:15
20:24
**Street (1)** 2:5
**stronger (1)** 44:9
**stunt (1)** 26:10
**subcontractors (1)**
8:10
**subject (2)** 15:17
15:19
**submit (1)** 40:6
**Subsequently (1)**
17:9
**substantial (4)** 26:5
34:18 36:9 44:15

sued (2) 29:22 30:4
Suffice (1) 38:21
suggests (1) 19:1
Suite (2) 2:5 3:6
summary (1) 44:13
supplemental (4)
  8:24 16:4 17:7
  18:20
supplied (1) 17:21
supplier (1) 10:3
suppliers (1) 8:10
support (3) 28:11
  34:20 38:23
supported (1)
  44:17
suppose (1) 12:14
supposed (1) 22:15
supposedly (1)
  41:15
Sure (1) 42:4
surreptitiously (1)
  33:1
suspicious (2)
  28:16,23
sustain (1) 41:21
switch (9) 20:6 25:2
  27:15 28:6 34:12
  38:6,25 39:1,3
switched (4) 16:2,9
  21:15 28:1
switches (1) 19:4
switching (1) 34:13

**T**

take (13) 12:11
  13:23 20:20 31:25
  32:9 33:11 40:5
  40:24 42:8,8
  43:17 44:18 46:5
taken (6) 12:16
  35:22,25 40:9,9
  42:18
tale (2) 21:25 22:17
talk (6) 6:18 14:2
  22:2,12,22 42:9
talked (1) 36:13

talking (5) 18:24
  19:5 33:4 35:12
  39:8
talks (2) 19:6,7
task (1) 26:8
taught (1) 16:13
tell (17) 10:3 11:1
  20:15,21 23:2
  28:20 29:24 31:2
  33:6 37:7 42:11
  42:23 43:4,8,11
  43:12 46:8
telling (1) 24:15
tells (2) 7:22 21:20
tend (1) 46:16
term (1) 29:5
terms (2) 37:23
  44:9
test (2) 34:18 37:14
text (2) 22:23,24
Thai (42) 1:4 4:5
  4:11,13 8:9,21,25
  9:2,7,16,17,22
  11:5,6,11,22,22
  11:24 12:3 14:13
  14:16,17,24,25
  15:4,9 16:24 17:1
  17:1,8,17,19,22
  18:1 21:19,22
  27:20 28:17 36:10
  40:7 44:16,25
Thai's (12) 9:3,8,8
  9:15 11:12,12
  13:9,9 15:9,10,20
  17:11
Thais (1) 17:2
Thank (4) 4:19
  27:5 42:17 46:21
thing (10) 13:8
  14:19 16:11 21:17
  23:19 24:11 26:8
  29:11 44:24 46:19
thing's (1) 24:11
things (8) 4:20 7:25
  29:15 34:24 35:25

41:14,14,16
think (36) 4:25
  12:12 13:24 14:8
  18:3 22:10 24:6,6
  24:12 25:24 26:24
  26:25 27:2,3,25
  28:2,14 30:1,6
  31:3 32:4,4,8 37:3
  37:5 38:8,10,25
  39:4,5,23 41:18
  45:2,23,24 46:7
thinks (1) 20:24
third (4) 4:9 10:5
  40:4 45:10
thought (1) 13:1
three (4) 9:25 12:6
  18:16,17
tied (3) 7:8,12
  21:17
ties (1) 11:22
time (14) 7:24
  13:22 26:21,23,24
  28:5 32:7 33:4,4
  40:4,13 41:9
  42:21,24
tinged (1) 31:24
Toby (2) 1:25 47:13
today (1) 6:19
today's (2) 5:10,11
told (5) 20:22 21:8
  24:1 33:2 37:6
Trade (4) 1:1 2:19
  4:3 5:19
transcribed (1)
  1:23
transcript (3) 5:10
  5:13 47:4
transpired (1) 5:24
travels (1) 46:22
travesty (1) 22:20
tree (2) 9:2 10:5
tried (3) 22:18
  24:21 33:1
troubled (1) 41:6
troubles (2) 41:10

41:13
true (2) 30:3 47:6
try (4) 6:22 30:8
  39:11,17
trying (2) 34:11
  38:18
Tube (2) 4:18 32:5
turn (4) 8:3 14:6
  16:11 27:5
turned (5) 20:12
  33:8 36:24 38:13
  38:15
two (6) 4:22 7:20
  13:15 35:15 38:8
  39:25
two-step (2) 36:16
  36:21
type (2) 28:25
  29:16
typically (1) 12:16

**U**

U.S (3) 1:1 2:10,18
ultimately (3)
  19:17 41:18 42:5
unaffiliated (2)
  14:14,25
understand (4)
  20:3 29:20 41:7
  43:18
understandably (1)
  41:11
United (5) 1:7 4:2,6
  4:15 47:5
unusual (1) 32:6
usual (1) 29:21
usually (1) 28:24

**V**

v (1) 1:6
Vaden (3) 1:13 4:4
  33:12
vehicle (1) 46:8
verb (1) 14:13
version (1) 33:22
versus (2) 4:6 47:5

view (2) 38:21,22
vigorously (1) 40:2
violated (1) 20:5

**W**

wait (1) 29:24
walk (1) 7:13
want (27) 4:21,21
  8:25 9:25 10:11
  12:1 21:3,11 22:2
  22:4,12 25:9 26:8
  29:18 32:20 34:10
  38:20 40:25 42:8
  42:8,12,20 43:20
  44:3,8 45:4,25
wanted (2) 6:18
  27:15
wants (2) 34:5,6
Washington (4) 2:6
  2:15,22 3:7
wasn't (3) 20:11,12
  42:23
waste (1) 7:24
waters (1) 45:21
way (8) 5:12 20:24
  27:9 33:24,25
  39:24 45:24,24
we'll (5) 11:3 14:6
  27:5 33:13,13
we're (30) 5:25 8:1
  10:12,22 13:21
  14:1 16:16 20:1
  20:23 23:5 25:3
  26:20 30:7,8 32:2
  32:3 33:10 37:9
  37:10,11 38:4,11
  38:11,12 39:8,20
  40:4 41:15,20
  45:21
we've (3) 7:11 24:1
  33:3
weak (1) 21:1
weeds (1) 20:16
weird (1) 25:16
welcome (3) 4:22
  5:5,6

went (3) 35:17,18
    36:6
whatsoever (1)
    17:9
Wheatland (9) 4:18
    11:20 14:16,17
    17:10,21 19:6,7
    32:5
Wheatland's (2)
    11:19 14:8
Wheatman (1)
    17:15
whistle (1) 33:19
Why'd (1) 39:3
William (2) 2:8
    4:24
win (1) 24:23
WINTHROP (1)
    2:3
wisdom (1) 29:4
wish (1) 46:22
withheld (1) 12:9
wonder (1) 46:4
wonderful (1) 19:8
word (1) 19:8
worded (1) 16:12
wording (3) 14:1,2
    14:3
words (5) 7:18
    12:10 30:10 36:25
    39:11
worry (1) 41:17
wouldn't (2) 26:17
    31:20
write (6) 25:13,14
    33:24 34:21 35:5
    35:5
wrong (2) 21:22
    33:15
wronged (1) 34:1
wrote (1) 22:1

**X**
X (2) 1:4,9

**Y**

yada (3) 24:9,9,9
yeah (2) 20:25
    31:18
year (1) 20:19
years (1) 24:21
York (2) 47:15,15

**Z**
Zachary (1) 5:16

**0**

**1**
1 (2) 44:12 48:8
1:21-cv-00627 (1)
    1:2
10019 (1) 47:15
1200 (1) 2:5
13 (1) 12:19
1401 (1) 2:21
14295 (2) 7:17 8:7
14296 (1) 7:17
15 (1) 24:19
15th (1) 47:14
17th (1) 2:5
19 (1) 8:16

**2**
2 (1) 44:12
20 (1) 1:10
20003 (1) 3:7
20036 (1) 2:6
20044 (1) 2:15
2023 (1) 12:19
20230 (1) 2:22
2025 (2) 1:10 47:12
21-00627 (1) 4:5

**3**
3 (1) 47:14
31 (1) 47:12
34 (1) 12:21
35 (1) 12:23
351.102(b) (1) 8:16
351.401(f) (1) 8:17
37 (1) 12:22

**4**
4 (2) 16:13 18:18
40 (1) 24:21
480 (1) 2:13

**5**
5 (15) 16:4 24:5,5,7
    24:10 33:5,6,7,9
    33:24 38:1,3,20
    38:24 39:2
500 (1) 3:6

**6**
6 (8) 16:5 18:20
    24:4,7 33:5,8 38:1
    38:22

**7**
7 (1) 14:6
700 (1) 3:5
771(33) (1) 8:16
776(a)(1) (1) 15:25

**8**
8 (2) 14:6 19:21
8-47 (1) 2:5

**9**
99504 (1) 10:16
99506 (1) 10:16

email@tobyfeldman.com
tobyfeldman.com

Toby Feldman, Inc.
NATIONWIDE SERVICES

Certified WOB
(800) 246.4950