Slip Op. No. 25-71

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SAHA THAI STEEL PIPE PUB. CO. LTD., | |
| *Plaintiff,* | |
| *and* | |
| THAI PREMIUM PIPE CO. LTD., | |
| *Plaintiff-Intervenor,* | Before: Stephen Alexander Vaden, Judge |
| v. | |
| UNITED STATES, | Court No. 1:21-cv-00627 (SAV) |
| *Defendant,* | |
| *and* | |
| NUCOR TUBULAR PRODUCTS, INC., and WHEATLAND TUBE CO., | |
| *Defendant-Intervenors.* | |

## <u>OPINION</u>

[Sustaining in part and remanding in part Commerce's Second Remand Determination.]

Dated: June 5, 2025

*Daniel L. Porter*, Pillsbury, Winthrop, Shaw, Pittman LLP, of Washington, DC, for Plaintiff.

*Robert G. Gosselink*, Trade Pacific PLLC, of Washington, DC, for Plaintiff-Intervenor. With him on the brief was *Aqmar Rahman*.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With him

on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Franklin E. White*, Assistant Director, Commercial Litigation Branch, and *JonZachary Forbes*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Christopher T. Cloutier*, Schagrin Associates, of Washington, DC, for Defendant-Intervenor Wheatland Tube Company.  With him on the brief were *Roger B. Schagrin*, and *Saad Y. Chalchal*.

 **Vaden, Judge:**  This case is a tale of two questions.  In its Final Determination, the Department of Commerce (Commerce) found that Saha Thai Steel Pipe Public Company Ltd. (Saha Thai) did not respond to Commerce's queries to the best of its ability.  Commerce based this finding on Saha Thai's response to a specific question in a supplemental questionnaire.  The Court rejected Commerce's reliance on *this* question as unsupported by substantial evidence, and it remanded the decision for further explanation.  Commerce lowered Saha Thai's dumping margin on remand, but it maintained its view that Saha Thai failed to comply to the best of its ability under protest.  Commerce's protest claimed to explain its original reasoning for why Saha Thai failed to comply with the investigation.  Its protest rewrote history, however:  It claimed that Commerce's Final Determination did not rest on the original question but on Saha Thai's failure to respond to a *different* supplemental question — all the while pretending not to have changed its position.  Because the first step for an agency wishing to change its position is to admit that it has done so, the Court will **REMAND** in part and **SUSTAIN** in part Commerce's Second Remand Determination.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinion and now recounts those facts relevant to the review of the Second Remand Determination. *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States* (*Saha Thai I*), 47 CIT __, 663 F. Supp. 3d 1356, 1360–67 (2023).

### I.     The Original Investigation

On March 11, 1986, Commerce issued an antidumping order on circular welded carbon steel pipes and tubes from Thailand. *See Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 Fed. Reg. 8,341, 8,341–42 (Dep't of Com. Mar. 11, 1986). Commerce initiated the 2019–2020 administrative review of this antidumping order on May 6, 2020. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 26,931, 26,931 (Dep't of Com. May 6, 2020). It selected Saha Thai and Blue Pipe Steel Center Company[1] as mandatory respondents for this review. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2019-2020* (Preliminary Results), 86 Fed. Reg. 30,405, 30,405–07 (Dep't of Com. June 8, 2021).

Commerce's administrative review sought to assess a new antidumping duty rate for these companies. Antidumping duties are set at a rate "equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise." 19 U.S.C. § 1673 (flush language). Commerce calculates export

---

[1] Blue Pipe Steel Center Company is not a party to this case.

price by looking at "the price at which the subject merchandise is first sold (or agreed to be sold)" in the United States. 19 U.S.C. § 1677a(a). It calculates normal value in market economies by looking at the price of the subject merchandise when it is sold "in the ordinary course of trade" in the home market, *i.e.*, in Thailand. 19 U.S.C. § 1677b(a)(1)(B)(i). Commerce typically excludes home market sales to "affiliated persons" from its normal value calculation. *See* 19 U.S.C. § 1677(15)(B); 19 U.S.C. § 1677b(f)(2). Sales to affiliates may not reflect the fair market value of the product. 19 U.S.C. § 1677b(f)(2). The statute outlines several situations that give rise to affiliation because of familial or economic ties that exist between the exporter in question and another corporate entity. *See* 19 U.S.C. § 1677(33).

To calculate the normal value of Saha Thai's subject merchandise, Commerce requested information about companies that may be affiliated with Saha Thai. *See, e.g.*, Section A Questionnaire at A-1–13, J.A. at 3,307–19, ECF No. 56. On April 13, 2021, Commerce issued its Third Supplemental Questionnaire seeking information on those potentially affiliated companies. Third Suppl. Questionnaire, J.A. at 96,233, ECF No. 58. Commerce requested Saha Thai to:

> [S]tate whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the complete details of the equity or debt positions held, as well as a complete ownership chart for that company and a list of managers, directors, officers, and department heads.

*Id.* at 96,235. The questionnaire labeled this question as Question Six. This

questionnaire also requested Saha Thai to:

> [S]tate whether Saha Thai's or any of Saha Thai affiliates'
> employees, stockholders, managers, directors, officers, or
> department heads currently are or previously were
> employed by any other company involved in the
> development, production, sale and/or distribution of the
> merchandise under review. If so, please provide the dates
> of current and/or previous employment at Saha Thai and/or
> its affiliates and the third party, and name(s) of the
> positions held.

*Id.* The questionnaire labeled this question as Question Five.

Saha Thai submitted its response to the Third Supplemental Questionnaire affirming that "none of the individuals in the family grouping that owns Saha Thai is involved in the production, development, sale or distribution of merchandise under review other than the reported affiliations in [previous answers]." Third Suppl. Questionnaire Resp. Pt. 2 at 2 (May 6, 2021), J.A. at 96,467, ECF No. 58. Saha Thai also stated that "none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes the merchandise under review other than those affiliations already described in [previous answers] ...." *Id.* at 2–3, J.A. at 96,467–68. Based on Saha Thai's responses, Commerce did not find any undisclosed companies affiliated with Saha Thai in the Preliminary Results. Preliminary Results, 86 Fed. Reg. at 30,406; Prelim. Decision Mem. at 1–22, J.A. at 13,677–98, ECF No. 56.

After the Preliminary Results issued, Defendant-Intervenor Wheatland Tube Company (Wheatland Tube) filed several hundred pages of public documents

rebutting Saha Thai's affiliation claims. Wheatland Tube Rebuttal of Saha Thai at 1–2 (June 1, 2021), J.A. at 97,105–06, ECF No. 58. These documents indicated that Saha Thai was potentially affiliated with seven previously undisclosed Thai companies. *Id.* The public documents revealed that many of Saha Thai's home market customers shared overlapping stockholders and board members with Saha Thai. *Id.* at Exs. 2, 8, 10, 14, J.A. at 97,116–134, 97,301–347, 97,404–477, 97,592–669, ECF No. 58.

Commerce addressed this new information in its Final Determination. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020* (Final Determination), 86 Fed. Reg. 69,620, 69,621 (Dep't of Com. Dec. 8, 2021); Issues and Decision Mem. (IDM) at 4–10, J.A. at 14,291–97, ECF No. 56; Final Calculation Analysis Mem. (Final Analysis Memo) at 1–7, J.A. at 99,504–510, ECF No. 58. It found there was a gap in the record because Saha Thai did not report these potential affiliations. *See* IDM at 8–9, J.A. at 14,295–96, ECF No. 56. Commerce also determined that it lacked "complete details on the ties between Saha Thai and these customers to make affiliation determinations" and that "Saha Thai has not acted to the best of its ability …." *Id.* at 9, J.A. at 14,296. Therefore, it drew an adverse inference using facts otherwise available and determined those seven companies were affiliated with Saha Thai. *Id.* at 10, J.A. at 14,297.

BNK Steel Company Ltd. (BNK) was one of the seven companies Wheatland Tube listed as potentially affiliated with Saha Thai. Unlike the other six companies,

which all shared overlapping stockholders or board members with Saha Thai, BNK and Saha Thai only shared a single employee — a human resources manager. Final Analysis Memo at 2, J.A. 99,505, ECF No. 58. Regardless, Commerce drew an adverse inference and found that BNK was affiliated with Saha Thai. *Id.* Commerce justified its adverse inference by claiming Saha Thai failed to disclose this shared human resources manager in response to Question Six of the Third Supplemental Questionnaire. *Id.*; IDM at 8, J.A. 14,295, ECF No. 56 (quoting Question Six). It claimed a gap in the record existed because the human resources manager was a shared employee who likely had an equity or debt position in the companies. *See* IDM at 8, J.A. at 14,295, ECF No. 56. Commerce then determined that Saha Thai did not act to the best of its ability when it failed to disclose this shared employee. *Id.*

Commerce also found that a cost-based particular market situation existed for circular welded carbon steel pipes and tubes. *Id.* at 23–24, J.A. at 14,310–11. A cost-based particular market situation occurs whenever "the cost of materials and fabrications or other processing … does not accurately reflect the cost of production in the ordinary course of trade[.]" 19 U.S.C. § 1677b(e)(3). Commerce determined that the Thai government's actions and a global overcapacity of subject pipes prevented Commerce from achieving a "fair comparison" between the normal value of Saha Thai's goods and the export price. IDM at 23, J.A. at 14,310, ECF No. 56. It thus used a particular market situation adjustment to capture these distortions in its dumping margin calculations. *Id.* Using both an adverse inference and the particular market situation adjustment, Commerce calculated a final dumping margin of 36.97

percent for Saha Thai.  Final Determination, 86 Fed. Reg. at 69,621; IDM at 9, 23,

J.A. at 14,296, 14,310, ECF No. 56.

## II.    The Original Proceedings and the First Remand

On December 20, 2021, Saha Thai filed a Complaint challenging Commerce's

Final Determination.  Compl. ¶ 1, ECF No. 6.  It then amended its Complaint to claim

that "[dual-stenciled] pipe is not within the scope of the order under review."  Pl.'s

First Am. Compl. ¶ 30, ECF No. 39; *see Saha Thai Steel Pipe Public Co. Ltd. v. United*

*States* (*Saha Thai II*), 46 CIT __, 592 F. Supp. 3d 1299 (2022).[2]  The Government

responded by asking the Court for a voluntary remand to reconsider Commerce's

particular market situation adjustment.  Def.'s Resp. to Mot. for J. on Agency R. at

41, ECF No. 47.

On October 11, 2022, the Court granted the Government's request for a

voluntary remand.  Order at 4, ECF No. 60.  On remand, Commerce found that the

particular market situation adjustment was unnecessary, removed it, and lowered

Saha Thai's dumping margin to 14.74 percent.  First Remand Determination at 4, 7,

ECF No. 61.  Saha Thai and the Government agreed with Commerce's decision to

remove the adjustment.  *See* Saha Thai's Public Comments on Remand Results at 3,

ECF No. 63; Thai Premium Pipe Co. Ltd.'s Public Comments on Remand Results at

1, ECF No. 64; Govt's Reply to Comments on Remand Results at 2, ECF No. 66.

---

[2] In *Saha Thai II*, Commerce issued a remand determination finding that dual-stenciled pipe was not within the scope of the order.  *Saha Thai II*, No. 1:20-cv-00133, Remand Results, ECF No. 58.  The Court sustained Commerce's determination.  *Saha Thai II*, 46 CIT __, 592 F. Supp. 3d at 1313.  Wheatland Tube appealed.  *Saha Thai Steel Pipe Public Company, Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024).  The same scope applies in the present case.

Although Wheatland Tube argued before Commerce that the relevant statute justified Commerce's use of the particular market situation adjustment, it did not file comments following the First Remand Determination objecting to Commerce's removal of the adjustment. *Compare* First Remand Determination at 5–7, ECF No. 61 (noting Wheatland Tube's arguments), *with* Oral Ar. Tr. at 73:16–18, ECF No. 80 (Mr. Porter: "We had [the particular market situation] already done." The Court: "That's gone." Mr. Porter: "That's gone.").

The Court held oral argument on the remaining issues in the case on July 13, 2023. ECF No. 78. The Federal Circuit had begun to schedule Wheatland Tube's appeal of the dual-stenciled pipe scope issue in *Saha Thai II*. *See* Oral Arg. Tr. at 5:23–6:1, ECF No. 80. Because of this, the Government asked the Court at oral argument for another voluntary remand so that it could align the scope of the order in this administrative review with the Federal Circuit's future holding in *Saha Thai II*. *See id.* at 18:12–23 (discussing whether the scope issue is a pure question of law and how the Federal Circuit's decision would affect Commerce's determination).

### III.    The Second Remand Order

On November 13, 2023, the Court filed its opinion remanding Commerce's First Remand Determination. *Saha Thai I*, 47 CIT __, 663 F. Supp. 3d at 1377–78. The Court sustained Commerce's analysis of all the alleged affiliates except for BNK. *Id.* at 1368. The Government argued an adverse inference was proper because Saha Thai failed to disclose the shared human resources manager in response to Question Six of the supplemental questionnaire. *Id.* at 1375–76. Commerce claimed it could not

"assume that there are no other ties between Saha Thai and BNK which Saha Thai failed to disclose[, and as] a result, [Commerce] cannot determine that Saha Thai is necessarily not affiliated with BNK." *Id.* at 1365 (quoting Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58) (first alteration in original).

The Court found that "necessarily not affiliated" was not the correct legal standard for affiliation. *Id.* at 1377. Quoting Commerce's questionnaire, the Court noted that Commerce asked "whether Saha Thai's or any of Saha Thai's affiliates' employees … has an equity or a debt position in any other company involved … [with] the merchandise under review." *Id.* at 1376 (quoting Question Six). Commerce must support its affiliation analysis with substantial evidence and follow the statute. Although the statute defines affiliation to include the sharing of senior corporate executives and board members, a single shared human resources manager is not at the level of seniority that automatically results in an affiliation finding. *See* 19 U.S.C. § 1677(33). Commerce did not provide any evidence of shared ownership interests between BNK and Saha Thai. It had relied on such evidence for the other six corporations it found were affiliated. *Saha Thai I*, 47 CIT __, 663 F. Supp. 3d at 1376. Because the Government "offered no explanation of how a single shared human resources manager meets the statutory definition of affiliation[,]" the Court held that Commerce had failed to support its determination with substantial evidence. *Id.* at 1376–77; *accord Hyundai Heavy Indus. Co., Ltd. v. United States*, 43 CIT __, 393 F. Supp. 3d 1293, 1319 (2019) (finding that a shared human resources manager was not, by itself, evidence of affiliation under 19 U.S.C. § 1677(33)).

The Court also granted the Government's request for a voluntary remand. *Saha Thai I*, 663 F. Supp. 3d at 1368. Thus, two issues were remanded: (1) Whether dual-stenciled pipe was improperly included in the calculation of Saha Thai's dumping margin; and (2) whether substantial evidence supported the agency's finding that BNK is affiliated with Saha Thai. *Id.* at 1368, 1377–78. The Court stressed that "Commerce must … apply the proper statutory test for affiliation and explain how the facts on the record support its determination" when conducting its reanalysis of BNK's status. *Id.* at 1377.

## IV.    The Second Remand

On May 15, 2024, a majority of a Federal Circuit panel held that dual-stenciled pipe was within the scope of the original order. *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 101 F.4th 1310, 1331 (Fed. Cir. 2024), *cert. denied*, 2025 U.S. LEXIS 952 (Mar. 3, 2025). Commerce applied the Federal Circuit's holding on remand and determined that "it was proper for us to include such sales in our margin calculations …. [And] we have not revised the margin calculations for Saha Thai …." Second Remand Results (Second Remand) at 3, ECF No. 87.

Commerce also reanalyzed the issue of Saha Thai's affiliation with BNK. It "agree[ed] with the Court that, by itself, the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK are affiliated within the meaning of [19 U.S.C. § 1677(33)]." *Id.* at 4. Because Commerce did not find that BNK and Saha Thai were

affiliated, Commerce changed Saha Thai's weighted-average dumping margin to 1.65 percent. *Id.* at 9.

Despite the lack of affiliation between the companies, Commerce issued its Second Remand Determination under protest. It claimed that its affiliation determination "was not based on an analysis of the single human resources manager but was instead based on [adverse facts available]." *Id.* at 4. Commerce "requested that Saha Thai report [whether] Saha Thai's or any of Saha Thai affiliate's [*sic*] employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review." *Id.* at 8 (internal quotation marks omitted) (quoting Question Five). Indeed, Commerce reiterated that it asked "for managers currently or previously employed by any other company involved in the sale of subject merchandise, which would include BNK." *Id.* (quoting Question Five). Saha Thai did not report BNK as a potential affiliate in response to Question Five. *Id.* Until Wheatland Tube notified Commerce of the shared human resources manager, Commerce did not know it was missing necessary information from Saha Thai. *Id.* at 4–5. Because of Saha Thai's failure to disclose, "Commerce continues to find that Saha Thai did not act to the best of its ability …. [and Commerce] respectfully [is] issuing these final results of redetermination under protest."[3] *Id.* at 5–6.

---

[3] Commerce's taking a position "under protest" preserves its right to appeal. *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

## V.    The Present Issue

The present issue before the Court is whether to sustain Commerce's Second Remand Determination.  All parties agree that the Court should sustain the Second Remand Determination.  Pl.'s Comments on Second Redetermination of Remand (Saha Thai's Comments), ECF No. 90; Pl.-Intervenor's Comments on Remand Redetermination (Pl.-Intervenor's Comments) at 1, ECF No. 89; Def.'s Resp. to Comments on Remand Redetermination (Def.'s Comments.) at 4, ECF No. 93; Def.-Intervenor's Comments on Remand Redetermination (Wheatland Tube's Comments) at 7, ECF No. 94.  But their reasons wildly differ.

Wheatland Tube and the Government seek an affirmance so that they may appeal to the Federal Circuit.  Wheatland Tube's Comments at 4, ECF No. 94; Def.'s Comments at 7–9, ECF No. 93.  Wheatland Tube states that Commerce's drawing of an adverse inference using facts otherwise available was warranted because Saha Thai's responses "did not satisfy the level of cooperation required under the best of its ability standard."  Wheatland Tube's Comments at 4, ECF No. 94 (internal quotation marks omitted).  Wheatland Tube argues that the Court "unduly limited Commerce's [adverse facts available] authority and the finding on remand does nothing to address Saha Thai's noncompliance with Commerce's requests for information on potential affiliates and shared employees."  *Id.*  It also claims that the "Court erred in concluding that an [adverse facts available] finding of affiliation on this record was not reasonable."  *Id.* at 5.  Wheatland Tube asserts that the Court's Second Remand Order "frustrates the [adverse facts available] statute's goals and

eviscerates the only tool Commerce has at its disposal to incentivize cooperation and obtain the information it needs to fulfill its statutory duties ….” *Id.* at 6. The Government parrots Wheatland Tube’s arguments. Def.’s Comments at 7–9, ECF No. 93.

Saha Thai disagrees. Saha Thai believes it is not “legally possible” to conclude that an adverse inference on affiliation can exist absent statutory affiliation and that Commerce’s protest is meaningless. Saha Thai’s Comments, ECF No. 90. It urges the Court to affirm because it believes the Second Remand Determination is both legally and factually proper. *Id.* Plaintiff-Intervenor Thai Premium Pipe Company agrees that the Court should sustain Commerce’s remand determination because Commerce complied with the Court’s Second Remand Order. Pl.-Intervenor’s Comments at 1, ECF No. 89. The Court held oral argument on March 20, 2025. ECF No. 103. This opinion followed.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiffs’ challenge under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final determinations in antidumping reviews. The Court must sustain Commerce’s “determinations, findings, or conclusions” unless they are “unsupported by substantial evidence on the record, or otherwise not in accordance with the law.” 19 U.S.C. § 1516a(b)(1)(B)(i). “[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce’s conclusion.” *New Am. Keg v.*

*United States*, 45 CIT __, No. 20-00008, 2021 Ct. Intl. Trade LEXIS 34, at *15 (Mar. 23, 2021).  Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)).

Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole.  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").  The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.,* 340 U.S. at 488.  Additionally, "The court reviews remand determinations for compliance with the court's [remand] order." *Bonney Forge Corp. v. United States*, No. 1:20-cv-03837, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *7 (Aug. 21, 2023) (quoting *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (2008)).

## DISCUSSION

The present case raises two issues:  (1) Whether Commerce complied with the Second Remand Order when it applied the Federal Circuit's holding on dual-stenciled pipe; and (2) whether Commerce's affiliation analysis is supported by substantial evidence.  The first issue can be easily resolved.  The Court's Second Remand Order directed Commerce to reconsider whether Saha Thai's dual-stenciled pipe sales were properly within the scope of this administrative proceeding under Federal Circuit precedent.  *Saha Thai I*, 47 CIT __, 663 F. Supp. 3d at 1368.  Commerce did so.  *See* Second Remand at 3, ECF No. 87 ("[T]he Federal Circuit held that dual-stenciled pipe is within the scope of this proceeding.  Accordingly, we determine that it was proper for us to include such sales in our margin calculations.").  No party contests this determination.  Thus, the Court **SUSTAINS** Commerce's determination regarding the scope of the administrative review.

The second issue is more complicated.  Although Commerce performed a statutory affiliation analysis, its protest attempts to rewrite the history of the case.  This behavior is disturbing because it leaves the reader with a false impression of the facts.  Moreover, Commerce based its adverse inference analysis on this procedural error — switching its position while pretending it changed nothing.  Because of the procedural foul, the Court must **REMAND** Commerce's determination on this issue.

Commerce bases its Second Remand Determination on its authority to draw an adverse inference.  When Commerce is missing data necessary to calculate the dumping margin, the antidumping statute provides a two-part process to fill the gap.

*See* 19 U.S.C. § 1677e(a).  The statute enables Commerce to use "facts otherwise

available" in place of the missing information if:

> (1) [N]ecessary information is not available on the record, or
> (2) [A]n interested party or any other person —
>> (A) [W]ithholds information that has been requested by [Commerce],
>> (B) [F]ails to provide such information by the deadlines for submission of the information or in the form and manner requested, …
>> (C) [S]ignificantly impedes a proceeding under this subtitle, or
>> (D) [P]rovides such information but the information cannot be verified[.]

*Id.*

Separately, 19 U.S.C. § 1677e(b) permits those facts otherwise available to be

chosen with an adverse inference if "an interested party has failed to cooperate by not

acting to the best of its ability to comply with a request for information from

[Commerce] .…"  Although § 1677e(a) and § 1677e(b) are often collapsed into "adverse

facts available" or "AFA," the two statutory processes require distinct analyses rather

than the single analysis implied by the term "AFA."  Commerce first must determine

that it is missing necessary information; and, if it wishes to fill the resulting gap with

facts that reflect an adverse inference against an interested party, Commerce must

secondarily determine that the party has failed to cooperate by not acting to the best

of its ability.  *See Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333,

1346 (Fed. Cir. 2011).  The purpose of these statutory provisions is "to provide

respondents with an incentive to cooperate[.]"  *F. Lli de Cecco di Filippo Fara S.

Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

In its Final Determination, Commerce found a gap in the record based on Saha

Thai's failure to disclose a shared human resources manager.  *See* IDM at 8–9, J.A.

14,295–96, ECF No. 56.  Commerce explained Saha Thai should have disclosed this

shared employee in response to Question Six of the Third Supplemental

Questionnaire.  *Id.*  Question Six requests:

> Please state whether Saha Thai's or any of Saha Thai
> affiliates' employees, stockholders, managers, directors,
> officers, or department heads *has an equity or a debt
> position in any other company* involved in the development,
> production, sale and/or distribution of the merchandise
> under review.  If so, please provide the complete details of
> the equity or debt positions held, as well as a complete
> ownership chart for that company and a list of managers,
> directors, officers, and department heads.

Third Suppl. Questionnaire, J.A. at 96,235, ECF No. 58 (emphasis added).  In other

words, Question Six asks if Saha Thai and another company share not just any

employee but one that also "has an equity or a debt position in any other company"

that sells related merchandise.

The Third Supplemental Questionnaire also contained Question Five, which

asked:

> Please state whether Saha Thai's or any of Saha Thai
> affiliates' employees, stockholders, managers, directors,
> officers, or department heads *currently are or previously
> were employed by any other company* involved in the
> development, production, sale and/or distribution of the
> merchandise under review.  If so, please provide the dates
> of current and/or previous employment at Saha Thai and/or
> its affiliates and the third party, and name(s) of the
> positions held.

*Id.* (emphasis added).  Unlike Question Six, Question Five only asks whether Saha

Thai has any employees that are currently working, or have worked, at any other

company involved in the sale of related merchandise.  Question Five, which asks for

current or previously shared employees, is more general than Question Six, which asks for current or previous shared employees who *also* hold a debt or equity position in a company.

This distinction is important because Commerce based its original adverse inference analysis solely on Saha Thai's failure to disclose a shared human resources manager in response to Question Six, not Question Five. Commerce repeatedly cited Saha Thai's failure to respond accurately to Question Six as its only justification to draw an adverse inference regarding BNK in both its Issues and Decision Memorandum and its Final Calculation Analysis Memorandum. *See* IDM at 8–9, J.A. 14,295–296, ECF No. 56 ("[W]e asked Saha Thai to state whether … employees … *ha[d] an equity or debt position* in any other company ….") (emphasis added) (internal quotation marks omitted); Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58 ("[W]e asked Saha Thai to state whether … employees … *ha[d] an equity or debt position* in any other company ….") (emphasis added) (internal quotation marks omitted). This Court's previous opinion emphasized this fact. *See Saha Thai I*, 47 CIT __, 663 F. Supp. 3d at 1376 (quoting Commerce's Final Analysis Memorandum stating that Saha Thai failed to disclose any employees with "an equity or a debt position" in another company).

On remand, Commerce claims not to have changed its position. Second Remand at 4, ECF No. 87. But a comparison of the original Determination and the Second Remand Determination reveals otherwise. Commerce now only points to Question Five to justify its desire to draw an adverse inference. *Id.* (asking whether

"Saha Thai's or any of Saha Thai affiliate's [*sic*] employees … *currently are or previously were employed* by any other company involved in the development … of the merchandise under review.") (emphasis added).  Commerce repeats this language later in the Second Remand Determination, claiming that "Commerce did not ask for managers specifically involved in the sale of subject merchandise, but *instead for managers currently or previously employed by any other company involved in the sale of subject merchandise*, which would include BNK."  *Id.* at 8 (emphasis added). Question Six is never mentioned or quoted in the Second Remand Determination. *Compare* IDM at 8–9, J.A. 14,295–96, ECF No. 56 (quoting Question Six), *and* Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58 (same), *with* Second Remand at 4–8, ECF No. 87 (quoting Question Five).

     A few paragraphs illustrate how Commerce slyly rewrites the record.  On page eight of the Second Remand Determination, Commerce says:

> [A]s explained above [on pages 4–5], Commerce requested that Saha Thai report "Saha Thai's or any of Saha Thai affiliate's [*sic*] employees, stockholders, managers, directors, officers, or department heads *currently are or previously were employed by any other company* involved in the development, production, sale and/or distribution of the merchandise under review."  *Commerce did not ask for managers specifically involved in the sale of subject merchandise, but instead for managers currently or previously employed by any other company* involved in the sale of subject merchandise, which would include BNK.

Second Remand at 8, ECF No. 87 (emphases added).  Examining what was "explained above," pages four and five of the Second Remand Determination claim:

> [T]he affiliation determination in the *Final Results* was not based on an analysis of the single human resources

> manager, but was instead based on [adverse facts available]. Specifically, Commerce did not apply [adverse facts available] to Saha Thai based on its potential relationship with BNK in the *Preliminary Results*, because when Commerce asked Saha Thai to report "Saha Thai's or any of Saha Thai affiliate's [*sic*] employees, stockholders, managers, directors, officers, or department heads *currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review*," … Saha Thai did not report any connection whatsoever with BNK …. Accordingly, in the *Final Results*, based on the information supplied by [Wheatland Tube], Commerce determined that Saha Thai had failed to act to the best of its ability in providing information, including the existence of the human resources manager, pertaining to a relationship between Saha Thai and BNK.

*Id.* at 4–5 (emphasis added). These paragraphs leave the impression that Commerce originally applied an adverse inference because Saha Thai did not disclose only a shared employee – *i.e.*, that Saha Thai failed to disclose an employee in response to Question Five.

That impression is false. Despite the agency's attempt to rewrite history, Commerce originally based its adverse inference on Saha Thai's failure to disclose a shared human resources manager as an employee likely to have a debt or equity position in the company. *See* IDM at 8–9, J.A. 14,295–96, ECF No. 56 (citing Question Six instead of Question Five); Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58 (same). The Government and Wheatland Tube reluctantly acknowledged this switch at oral argument. Oral Ar. Tr. at 28:6–9, ECF No. 105 (The Court: "Did you catch the switch in language?" Mr. Mathias: "We briefly discussed it, Your Honor …."); *id.* at 31:12–22 (Mr. Cloutier: "I will admit that I did not notice the change myself …."

The Court: "[I]t's a little sleight of hand. You'd agree with me on that, wouldn't you?"
Mr. Cloutier: "It's definitely different, yes.").

To understand why this undeclared change of position is relevant, a brief outline of administrative law basics is helpful. It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (citing *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). If those grounds are inadequate, a court may remand the agency's decision. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). On remand, an agency has two options. First, the agency may take new action and "reconsider its previous position" as long as it complies with all procedural requirements. *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *see SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947). An agency may reconsider its position if it "wish[es] to consider further the governing statute, or the procedures that were followed … [or the agency] might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies." *SKF*, 254 F.3d at 1029. If the agency reconsiders its position, then it must state frankly that it changed its reasoning, explain the new position, and clarify why the change occurred. *See Biden v. Texas*, 597 U.S. 785, 808–09 (2022); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Alternatively, an agency may maintain its original position on remand and offer "a fuller explanation of the agency's reasoning *at the time of the agency action*[.]" *Pension Benefit Guar. Corp. v.*

*LTV Corp.*, 496 U.S. 633, 654 (1990) (emphasis added) (citation omitted).  An agency may not, however, maintain its position while offering new reasoning — that would be an "impermissible *post hoc* rationalization."  *Regents*, 591 U.S. at 21 (internal quotation marks omitted).

Commerce knows this basic procedure.  *See SKF*, 254 F.3d at 1029.  But Commerce has often failed to follow it.  *See, e.g.*, *Ellwood City Forge Co. v. United States*, 47 CIT __, 654 F. Supp. 3d 1268, 1278–79 (2023) (remanding to Commerce because Commerce changed its position on remand but did not follow the necessary procedural prerequisites); *Green Farms Seafood Joint Stock Co. v. United States*, 48 CIT __, Nos. 22-00092, 22-00125, 2024 Ct. Intl. Trade LEXIS 45, at *12 (Apr. 17, 2024) (remanding to Commerce because Commerce maintained its original position yet failed to provide an explanation "at the time of the agency action") (quoting *Regents*, 591 U.S. at 20).  This is another example of Commerce's failing to follow the procedural requirements.  Here, Commerce claimed to maintain its original position on remand.  *See* Second Remand at 4, ECF No. 87.  Because it chose to maintain its original position, Commerce was limited to its reasoning at the time of the agency action, *i.e.*, Question Six.  *See Pension Benefit Guar. Corp.*, 496 U.S. at 654.  But Commerce did not limit itself to Question Six to explain its reasoning.  Commerce instead pushed it aside and pointed to new reasons to justify its adverse inference analysis — Question Five.  *See* Second Remand at 4–8, ECF No. 87.  In other words, Commerce maintained its original position but did not use the "same basis [it] articulated" to justify its rationale on remand.  *Burlington Truck Lines v. United*

*States*, 371 U.S. 156, 169 (1962).  That is an "impermissible *post hoc* rationalization."  *Regents*, 591 U.S. at 21 (internal quotation marks omitted).

Commerce is always free to change its position and explain its reasoning for doing so on remand.  *See id.*  This Court's prior opinion emphasized this option.  *Saha Thai I*, 47 CIT __, 663 F. Supp. 3d at 1377 ("Commerce must also reconsider its affiliation analysis regarding BNK, apply the proper statutory test for affiliation, and explain how the facts on the record support its determination.").  Nothing in the Second Remand Order limited Commerce's analysis to a specific question on remand.

Despite this freedom, Commerce claimed to maintain its prior rationale.  *See* Second Remand at 4, ECF No. 87.  Commerce and Wheatland Tube claim to believe that the Court's Second Remand Order forced Commerce's hand.  They argue that the Second Remand Order "restricts Commerce to analyzing affiliation as though Saha Thai had been truthful and cooperated to the best of its ability."  *Id.* at 7 (discussing and agreeing with Wheatland Tube's argument).  Nonsense.  Commerce could have reconsidered its position on remand and concluded that Question Five, instead of Question Six, was a more appropriate basis for an adverse inference.  It could have forthrightly explained that it was changing its position because a human resources manager does not typically have a debt or equity position in a company.  *See Am. Hospital Ass'n v. Azar*, 983 F.3d 528, 539 (D.C. Cir. 2020) ("[A]n agency may change its ... position but must 'display awareness that it *is* changing position' ....") (quoting *Fox Television*, 556 U.S. at 515) (emphasis in original).  All it would take is a simple acknowledgment that the agency erred.  But Commerce did not do this.

Instead, Commerce falsely claimed that it was maintaining its original position while rewriting history *sub silentio*. This is a procedural error that the Court cannot affirm. *See, e.g.*, *Fox Television*, 556 U.S. at 515 ("To be sure, the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position.") (emphasis in original); *Motor Vehicle Mfg. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) ("[A]n agency changing its course must supply a reasoned analysis.") (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)).

Commerce's procedural sleight-of-hand also sinks its adverse inference analysis. When properly limited to Question Six, Commerce's explanation fails for lack of substantial evidence. *See Regents*, 591 U.S. at 21 (holding that an agency "may not provide new" reasons when it claims not to change its position). Commerce must first identify a gap in the record if it wishes to apply an adverse inference. *See* 19 U.S.C. § 1677e(a). For a gap to exist in response to Question Six, Commerce must demonstrate that Saha Thai's shared human resources manager would be an employee who likely has a debt or equity position in a company. Otherwise, BNK and its shared employee would not be responsive to the question. But the Government admits that a human resources manager is *not* an employee who is likely to hold a debt or equity position in any company. Oral Ar. Tr. at 28:13–29:6, ECF No. 105. (The Court: "[D]oes the Commerce Department think that an HR manager is someone who normally has a debt or equity position in a company? …. [I]f there were Company C, and Company C had a shared [Human Resources] manager with

Company D, and you asked the question … about … people who have debt or equity interests in these companies[,] [w]ould an HR manager be … on your list …?" Mr. Mathias: "In this hypothetical, I would say no, Your Honor." The Court: "It doesn't accord with most people's general common sense …." Mr. Mathias: "I would agree, Your Honor."). Nor has Commerce or any other party pointed to any record evidence that would suggest BNK's shared human resources manager is an exception. It therefore remains unreasonable to conclude that Saha Thai should have revealed its shared human resources manager in response to Question Six. Without a gap in the record in response to Question Six, there is no basis on which to draw an adverse inference. *See* 19 U.S.C. §§ 1677e(a)–(b) (requiring a gap in the record exist before Commerce may draw an adverse inference).

      Commerce's Second Remand Determination is therefore not in compliance with the law or supported by substantial evidence and must be remanded. The agency may take one of two paths on remand. Commerce may maintain its original position that Question Six is the question on which it wishes to base its analysis. If Commerce still wishes to apply an adverse inference based on Question Six, then it must explain why it believes that BNK's shared human resources manager is one who would hold a debt or equity interest in a company. Alternatively, Commerce may pick a different question. It would need to forthrightly acknowledge that it is changing the question on which it bases its analysis. If Commerce then wishes to apply an adverse inference, Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai

failed to act to the best of its ability by not disclosing this information.

## CONCLUSION

An agency is free to change its position on remand, but it must follow the procedural prerequisites when it does so. Agencies may not bury their mistakes in the hopes that an uncareful reader — or an appellate court — will be fooled. Here, Commerce falsely claimed to keep its rationale the same while quietly changing its position. Because Commerce's actions run afoul of the most basic of administrative law requirements, the Court has no choice but to **REMAND** Commerce's Second Remand Determination for further action consistent with this opinion. *See Regents,* 591 U.S. at 20–21; *Fox Television*, 556 U.S. at 515. The Third Remand Determination addressing the issue of BNK's affiliation shall be due sixty days from the date of this opinion. It is further:

**ORDERED** that Plaintiff and Plaintiff-Intervenor shall have thirty days from the filing of the Third Remand Determination to submit comments to the Court;

**ORDERED** that Defendant shall have fourteen days from the date of Plaintiff's filing of comments to submit a response; and

**ORDERED** that the Defendant-Intervenors shall have fourteen days from the date of Defendant's filing of comments to submit a response.

**SO ORDERED**.

                                               /s/ Stephen Alexander Vaden
                                               Stephen Alexander Vaden, Judge


Dated: June 5, 2025
          New York, New York