A-549-502
Remand
Slip Op. 25-71
POR: 3/1/2019 – 2/29/2020
**Public Document**
E&C/OI: TES

***Saha Thai Steel Pipe Public Company Limited v. United States*,**
**Consolidated Court No. 21-00627, Slip Op. 25-71 (CIT June 5, 2025)**
**Circular Welded Carbon Steel Pipes and Tubes from Thailand**

# FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *Saha Thai Steel Pipe Public Company Limited v. United States*, Court No. 21-00627, Slip Op. 25-71 (CIT June 5, 2025) (*Remand Order*). These final results of redetermination concern the final results of the 2019-2020 administrative review of the antidumping duty order on circular welded carbon steel pipes and tubes from Thailand.[1]

In the *Remand Order*, the Court remanded the *Final Results* as modified by the *First Redetermination* and *Second Redetermination* to revise its affiliation analysis regarding the relationship between Saha Thai Steel Pipe Public Co., Ltd., also known as Saha Thai Steel Pipe (Public) Co., Ltd. (collectively, Saha Thai), and BNK Steel Co. Ltd. (BNK).[2] As a result of

[1] *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 86 FR 69620 (December 8, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM), as modified by *Final Results of Redetermination* Pursuant to Court Remand Order in *Saha Thai Steel Pipe Public Company Limited v. United States*, Consolidated Court No. 21-00627 (CIT October 11, 2022), dated November 28, 2022 (*First Redetermination*), and *Final Results of Redetermination* Pursuant to Court Remand in *Saha Thai Steel Pipe Public Company Limited v. United States*, Consolidated Court No. 21-00627, Slip Op. 23-158, 663 F. Supp 3d. 1356 (CIT November 13, 2023) (*Saha Thai*), dated October 9, 2024 (*Second Redetermination*). The *First Redetermination* and the *Second Redetermination* are available at https://access.trade.gov/public/FinalRemandRedetermination.aspx.
[2] *See Remand Order* at 27.

these final results of redetermination, we have determined that Saha Thai and BNK are affiliated as a result of our application of facts otherwise available with an adverse inference, consistent with section 776 of the Tariff Act of 1930, as amended (the Act). Saha Thai's weighted-average dumping margins changed as a result of these final results of redetermination.

## II.    BACKGROUND

In the *Final Results*, as modified by the *First Redetermination* and *Second Redetermination*, Commerce used Saha Thai's home market and U.S. sales data which included sales of "dual-stenciled" pipe, *i.e.*, pipe certified to meet the industry standards for both standard pipe and line pipe.[3] Additionally, Commerce determined that necessary information regarding Saha Thai's links to certain of its home market customers, including BNK, was missing from the record within the meaning of section 776(a)(1) of the Act, and that Saha Thai had withheld requested information, not provided such information by the deadline and in the manner requested, and significantly impeded the proceeding within the meaning of sections 776(a)(2)(A)-(C) of the Act. Further, Commerce determined that Saha Thai had failed to cooperate by not acting to the best of its ability within the meaning of section 776(b) of the Act, such that the application of adverse facts available (AFA) was warranted. Based on AFA, Commerce determined that certain of Saha Thai's customers, including BNK, were affiliated with Saha Thai.[4]

Pursuant to the Court's decision that Commerce's finding that Saha Thai and BNK were affiliated "is both factually unsupported and legally improper," and the Court's remand order requiring that Commerce "perform a proper affiliation analysis regarding the relationship

---

[3] *See* Saha Thai's Letter, "Saha Thai's Supplemental Questionnaire Response," dated February 24, 2021, at 2-3.
[4] *See Final Results* IDM at Comment 1. We observe that we had afforded proprietary treatment with respect to BNK's identity in that document; at oral argument before the Court, BNK's identity was publicly disclosed. *See Remand Order* at 11, n.3.

between Plaintiff and BNK,"[5] Commerce found, under respectful protest in the *Second Redetermination*, that the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK were affiliated within the meaning of section 771(33) of the Act. Therefore, Commerce treated Saha Thai and BNK as unaffiliated entities and recalculated the weighted-average dumping margin for Saha Thai accordingly.[6]

In the *Remand Order*, the Court found that Commerce's explanation in the *Second Redetermination* was deficient because its explanation for the original use of AFA did not correspond with its explanation in the *Final Results*. Based on this deficiency, the Court remanded the *Second Redetermination* to Commerce in order to resolve this deficiency.

Commerce released its draft results of redetermination on July 7, 2025.[7] Wheatland Tube (Wheatland) and Saha Thai submitted timely comments on the Draft Redetermination on July 21, 2025.[8]

## III. ANALYSIS

As a preliminary matter, Commerce acknowledges that it inadvertently cited Question Six from the Third Supplemental Questionnaire in the Issues and Decision Memorandum[9] and the Final Analysis Memorandum.[10] In fact, Commerce intended to cite Question Five from the

---

[5] *See Saha Thai*, Slip Op. 23-158 at 37-8, 663 F. Supp. 3d at 1377.

[6] *See Second Redetermination* at 3-6. The *First Redetermination* addressed particular market situation issues, which are not relevant to the *Second Redetermination* and this remand redetermination.

[7] *See* Draft Results of Redetermination Pursuant to Court Remand, *Saha Thai Steel Pipe Public Company Limited v. United States*, Court No. 21-00627, Slip Op. 25-71 (CIT November 13, 2023), dated July 7, 2025 (Draft Redetermination).

[8] See Wheatland's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated July 21, 2025 (Wheatland's Draft Redetermination Comments); and Saha Thai's Letter, "Saha Thai's Comments On Draft Remand Re-determination," dated July 21, 2025 (Saha Thai's Draft Redetermination Comments).

[9] *See Final Results* IDM at Comment 1.

[10] *See* Memorandum, "Final Analysis Memorandum for Saha Thai Steel Pipe Public Co., Ltd.," dated December 2, 2021 (Final Analysis Memorandum), at 2 (citing Commerce's Letter to Saha Thai, dated April 13, 2021 (Third Supplemental Questionnaire), at 1).

Third Supplemental Questionnaire which, as the Court observed, read "whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the dates of current and/or previous employment at Saha Thai and/or its affiliates and the third party, and name(s) of the positions held."[11]

That Commerce intended to cite Question Five and not Question Six can be ascertained from the fact that it did not cite to any debt or equity positions with respect to BNK in its analysis in the Final Analysis Memorandum.[12] Rather, the evidence on the record that Commerce referenced in its analysis indicated that this individual was the human resources manager for both Saha Thai and BNK.[13] Accordingly, we find that there is a gap in the record with respect to Question Five wherein Saha Thai withheld requested information from Commerce, specifically information on certain of Saha Thai's managers being employed by BNK.

In the *Remand Order*, the Court stated that "Commerce is always free to change its position and explain its reasoning for doing so on remand."[14] Based on this, we are changing our position on remand and applying partial AFA to Saha Thai with respect to its home market sales to BNK consistent with Commerce's original intention in the *Final Results*, including correcting Commerce's citation to supporting documentation to accurately reflect Commerce's analysis.

---

[11] *See* Third Supplemental Questionnaire at 1.
[12] *Id*.
[13] *Id*. (citing Saha Thai's Letter, "Saha Thai's Supplemental Questionnaire Response Circular Welded Carbon Steel Pipe and Tubes from Thailand (AR 19-20)" dated May 6, 2021, at electronic spreadsheet entitled "Exhibit 2 pt. 1" and Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Rebuttal Factual Information to Blue Pipe's Supplemental Questionnaire Response," dated June 1, 2021, at Exhibit 3).
[14] *See Remand Order* at 24 (citing *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 21 (2020) (*Regents*)).

This redetermination is a new agency action wherein we are changing the question on which our analysis is based consistent with the Court's *Remand Order*. We explain our rationale below.

*Legal Standard for Application of Facts Available and Use of an Adverse Inference*

Sections 776(a)(1) and (2) of the Act provide that Commerce shall, subject to section 782(d) of the Act, apply facts otherwise available if necessary information is not on the record or an interested party or any other person: (A) withholds information that has been requested; (B) fails to provide information within the established deadlines or in the form and manner requested by Commerce, subject to subsections (c)(1) and (e) of section 782 of the Act; (C) significantly impedes a proceeding; or (D) provides information that cannot be verified, as provided by section 782(i) of the Act.

Section 776(b) of the Act provides that Commerce may use an adverse inference in selecting from among the facts otherwise available when a party fails to cooperate by not acting to the best of its ability to comply with a request for information.[15] In doing so, Commerce is not required to determine, or make any adjustments to, a weighted-average dumping margin based on any assumptions about information an interested party would have provided if the interested party had cooperated and complied with the request for information.[16] Further, section 776(b)(2) of the Act states that use of an adverse inference when selecting from the facts otherwise available may include reliance on information derived from the petition, the final determination from the less-than-fair-value investigation, a previous administrative review, or other information placed on the record.[17] In addition, the SAA explains that Commerce may employ an adverse inference "to ensure that the party does not obtain a more favorable result by failing

[15] *See* 19 CFR 351.308(a).
[16] *See* section 776(b)(1)(B) of the Act.
[17] *See* 19 CFR 351.308(c).

to cooperate than if it had cooperated fully."[18] Affirmative evidence of bad faith on the part of a respondent is not required before Commerce may make an adverse inference in selecting from the facts available.[19] It is Commerce's practice to consider, in employing AFA, the extent to which a party may benefit from its own lack of cooperation.[20]

*Application of AFA: Saha Thai's Sales to BNK*

In the underlying review, Commerce asked Saha Thai to identify "all suppliers, (sub)contractors, lenders, exporters, distributors, resellers, and other persons involved in the development, production, sale and/or distribution of the merchandise under review which Commerce may also consider affiliated with your company, in accordance with section 771(33) of the Act and sections 351.102(b) and 351.401(f) of the regulations. Some factors which you should consider include, for example, whether you acquire a significant amount of a major input from only a single supplier, the length of time your company has had a relationship with a supplier, (sub)contractor, distributor, exporter or reseller, the exclusivity of the relationship, all business relationships your company has or had with these persons, and other relationships between your company and the other person (*e.g.*, director/manager relationships)."[21] Saha Thai responded "{s}ee the response to Question 2.d above."[22] However, Saha Thai's response to

---

[18] *See* Statement of Administrative Action Accompanying the Uruguay Rounds Agreement Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 870; and *Certain Polyester Staple Fiber from Korea: Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 FR 69663, 69664 (December 10, 2007).

[19] *See, e.g.*, *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003); *Notice of Final Determination of Sales at Less Than Fair Value: Circular Seamless Stainless Steel Hollow Products from Japan*, 65 FR 42985 (July 12, 2000); and *Antidumping Duties; Countervailing Duties*, 62 FR 27296, 27340 (May 19, 1997).

[20] *See* SAA at 870; and *Steel Threaded Rod from Thailand: Preliminary Determination of Sales at Less Than Fair Value and Affirmative Preliminary Determination of Critical Circumstances*, 78 FR 79670 (December 31, 2013), and accompanying Preliminary Decision Memorandum (PDM) at 4, unchanged in *Steel Threaded Rod from Thailand: Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances*, 79 FR 14476, 14477 (March 14, 2014).

[21] *See* Commerce's Letter to Saha Thai, dated October 13, 2020 (Initial Questionnaire), at A-6.

[22] *See* Saha Thai's Letter, "Saha Thai's Section A Questionnaire Response," dated November 10, 2020 (Section A Response), at 16.

Question 2.d did not mention BNK, nor did it mention six other home market customers with which Saha Thai shared various connections.[23]

In the Third Supplemental Questionnaire on April 13, 2021, Commerce asked "whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the dates of current and/or previous employment at Saha Thai and/or its affiliates and the third party, and name(s) of the positions held."[24] In response, on May 6, 2021, Saha Thai reported that it "confirms that to the best of its knowledge, none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes merchandise under review other than those affiliations already described in Saha Thai's Section A response."[25]

Subsequently one month later, on June 1, 2021, Wheatland Tube Company (Wheatland), a domestic interested party, placed rebuttal factual information on the record.[26] This information showed that Saha Thai and BNK had a shared a human resources manager.[27] Thus, this information demonstrated that Saha Thai did not disclose this shared manager in its response to Question Five.

Saha Thai was given multiple opportunities to disclose this shared human resources manager in its responses to Commerce's requests for information but did not do so. As

---

[23] *Id*. at 9-14.
[24] *See* Third Supplemental Questionnaire at 1.
[25] *See* Saha Thai's Letter, "Saha Thai's Supplemental Questionnaire Response," dated May 6, 2021 (Third Supplemental Response), at 2-3.
[26] *See* Wheatland's Letter, "Rebuttal Factual Information to Blue Pipe's Supplemental Questionnaire Response," dated June 1, 2021.
[27] *Id*. at Exhibit 3.

Commerce explained in the *Final Results*, because Saha Thai did not report the fact that this individual with a managerial position with Saha Thai also had a managerial role with BNK, Commerce determined that necessary information is missing from the record in accordance with section 776(a)(1) of the Act. Specifically, Commerce did not have complete details on the ties between Saha Thai and BNK to make an affiliation determination under section 771(33) of the Act; rather, Commerce only had the information that Wheatland was able to find in the public record.[28] Because Saha Thai failed to report the shared human resources manager for both Saha Thai and BNK, Commerce was only made aware of this single shared manager due to Wheatland's identification of this individual in its rebuttal new factual information at a later stage of the underlying administrative review.[29] Commerce did not know what other ties may exist between Saha Thai and BNK. Accordingly, Commerce was prevented the opportunity to further inquire about and make a determination on: (1) the circumstance in which both Saha Thai and BNK hired the same individual as a human resources manager at the same time, *e.g.*, who was behind hiring this person for both companies; (2) whether this human resources manager was just an administrative employee maintaining personnel files and records or a someone with more elevated managerial authority involved in and influencing and handling appointments, promotions, demotions, and firing of high-ranking managers within both companies; (3) whether there are additional unreported managers working for both Saha Thai and BNK with a similar level of managerial authority and influence in both companies and, if so, who was behind hiring these managers in both companies; (4) whether the circumstances behind

---

[28] *See Final Results* IDM at 9.
[29] Wheatland submitted its rebuttal new factual information on the date of the signature of the preliminary results of the underlying administrative review. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2019-2020*, 86 FR 30405, 30408 (June 8, 2021).

his appointment as the human resources manager in both companies and his role as the human resources manager lead to additional evidence for us to find Saha Thai and BNK affiliated or not; and (5), most importantly, what other links may exist between Saha Thai and BNK which Saha Thai failed to report in its questionnaire response. Because Saha Thai failed to alert Commerce to any connection between Saha Thai and BNK, Commerce was deprived of an opportunity to further probe the relationship between Saha Thai and BNK and thus unable to make an affiliation determination under section 771(33) of the Act due to Saha Thai's failure to cooperate by not acting to the best of its ability. Accordingly, Commerce was further unable to determine whether Saha Thai's home market sales to BNK are sales to an affiliate that requires additional analysis, *e.g.*, an arm's-length test, and perhaps additional information, *e.g.*, data for downstream sales.[30]

[30] *See*, *e.g.*, *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 86 FR 62508 (November 10, 2021), and accompanying IDM at Comment 3 ("Company A accounts for a substantial quantity and value of Kumar's home market sales and Company B accounts for a substantial quantity and value of Kumar's purchases of major inputs. Due to Kumar's failure to cooperate with our request for its affiliation status with these two companies, we are unable to rely on information on the record of this administrative review to determine whether Kumar and these two companies are affiliated or not. Consequently, we continue to be unable to determine whether: (1) Kumar's home market sales to Company A are sales to an affiliate that requires data for downstream sales; and (2) Kumar's purchases of major inputs from Company B are purchases from an affiliated supplier that warrant the application of the major input rule and a potential cost adjustment. (Internal citations omitted.)"), *affirmed in Kumar Industries v. United States*, 665 F. Supp. 3d 1355 (CIT 2023); *see also Glycine from India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 77552 (November 13, 2023), and accompanying IDM at Comment 2 ("Given the foregoing, Kumar withheld requested information, failed to provide responsive information, and significantly impeded this proceeding. Indeed, the administrative record lacks information concerning whether: (1) Kumar is affiliated with Companies A and B; (2) Companies A and B made sales of glycine in the comparison market (*i.e.*, home market or third country market) and, consequently, whether they have viable comparison markets; and (3) Kumar and Companies A and B should be collapsed and treated as a single entity for purposes of the dumping margin calculation. (Internal citation omitted.) These determinations are fundamental to our consideration of the appropriate basis for NV and the dumping margin calculation. Additionally, in light of Kumar's failure to provide responsive documents to our requests for information and our inability to verify the responses Kumar did provide, we find Kumar's databases unreliable for purposes of calculating an accurate dumping margin pursuant to section 776(a)(2)(D). Consequently, we determine that the use of facts available is warranted in determining Kumar's margin pursuant to sections 776(a)(1) and (2)(A)-(D) of the Act. Additionally, we find that an adverse inference is warranted in selecting from among the facts otherwise available, as detailed below."), *affirmed in Kumar Industries v. United States*, Court No. 23-00263, Slip Op. 25-52, 2025 WL 1177268 (CIT Apr. 23, 2025) ("However, without information about Kumar's affiliation with Companies A and B, Commerce was unable to determine whether Companies A and B sold glycine in the home market and, consequently, whether they had viable home markets for purposes of calculating normal value. Additionally, without information regarding affiliation, Commerce was not able to determine whether Kumar and Companies A and B should be treated as a single entity to calculate the dumping margin. Therefore, Commerce's conclusion that necessary information was missing from the record is supported by substantial evidence and in accordance with law. (Internal citations omitted.)").

Although Saha Thai argued in the *Second Redetermination* that Commerce only asked for information regarding employees involved in the development, production, sale and/or distribution of the merchandise under review,[31] neither the Initial Questionnaire nor the Third Supplemental Questionnaire indicated such a condition, *i.e.*, *employees* involved in the development, production, sale and/or distribution of the merchandise under review (emphasis added). As explained above, in the Initial Questionnaire, we specifically asked Saha Thai to report *affiliated companies* involved in the development, production, sale and/or distribution of the merchandise under review[32] and, in the Third Supplemental Questionnaire, we specifically asked Saha Thai to report its "employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by *any other company* involved in the development, production, sale and/or distribution of the merchandise under review (emphases added)."[33] In addition, if Saha Thai had any questions concerning the scope of these questionnaires or difficulties in reporting, both the Initial Questionnaire and the Third Supplemental Questionnaire instructed Saha Thai to contact the analyst if it had any questions with respect to these requests for information. Saha Thai did not do so, but, instead, it unilaterally decided that it did not have to report that it shared a manager with BNK, nor the six other home market customers with which it had reportable relevant connections. Because of how Saha Thai responded to these questions, Commerce was unaware of the potential issue that BNK could be affiliated with Saha Thai and, as explained above, was precluded from further inquiry to determine whether there might be other indicia of affiliation between Saha Thai and BNK. Saha Thai should have reported any and all of its connections with BNK, including the

[31] *See* Saha Thai's Letter, "Saha Thai's Comments On Draft Remand Re-determination," dated September 5, 2024, at 2-3.
[32] *See* Initial Questionnaire at A-6.
[33] *See* Third Supplemental Questionnaire at 1.

shared human resources manager to Commerce, as it should have reported all of its connections with the other six home market customers that we also found to be affiliated based on partial AFA.[34] The CIT sustained our application of partial AFA with respect to those six other home market customers.[35]

As we explained in the *Final Results*, we determine that Saha Thai, by not reporting this link with BNK, withheld information that was requested by Commerce, failed to provide such information in a timely manner or in the form or manner requested, and significantly impeded this review in accordance with sections 776(a)(2)(A) through (C) of the Act. Thus, reliance on facts otherwise available is warranted. Furthermore, Commerce determined that, by withholding this information, Saha Thai had not acted to the best of its ability, and an adverse inference was therefore warranted in accordance with section 776(b) of the Act.[36]

As AFA, consistent with the *Final Results*, Commerce determined the net home market sales prices for Saha Thai's sales to BNK using the second highest Saha Thai net home market sale price to unaffiliated customers for common product control numbers (CONNUMs) (*i.e.*, those CONNUMS sold to both unaffiliated customers and the home market customers in question).[37] That said, the only difference between the weighted-average dumping margin that Commerce calculated for the *First Redetermination* and the *Second Redetermination* was to remove the application of AFA with respect to Saha Thai's home market sales to BNK, which was calculated for the *First Redetermination* as described in the *Final Results*.[38] Accordingly, for these final results of redetermination, we are using the weighted-average dumping margin

---

[34] *See Final Results* IDM at Comment 1; *see also* Final Analysis Memorandum; and *Saha Thai*, 663 F. Supp 3d. at 1364-68.
[35] *See Saha Thai*, 663 F. Supp 3d. at 1364-68.
[36] *See Final Results* IDM at 9.
[37] *Id*. at 10.
[38] *See* Memorandum, "Draft Remand Results Calculation Memorandum for Saha Thai Steel Pipe Public Company, Ltd.," dated August 29, 2024, at 2.

that Commerce calculated for Saha Thai as a result of the *First Redetermination*, which was 14.74 percent.

Rate for Non-Examined Companies

Because we based the rate for the one non-examined company on the rate for Saha Thai,[39] we have used the recalculated weighted-average dumping margin for Saha Thai as the weighted-average dumping margin for the only non-examined respondent that is party to this litigation, Thai Premium Pipe Co., Ltd., for these final results of redetermination.

## IV. INTERESTED PARTY COMMENTS

**Comment 1: Legality of Affiliation Finding Based on Partial AFA**

Wheatland did not provide an executive summary of its comments. For further details, *see* Wheatland's Draft Redetermination Comments at 1-2.

The following is a verbatim summary of argument submitted by Saha Thai.[40] For further details, *see* Saha Thai's Draft Redetermination Comments at 6-11.

*Saha Thai's Comments*:

> {Commerce}'s claim in its Redetermination that its original Final Determination was premised on Saha Thai's alleged failure to respond to Question 5 rather than Question 6 — after years of litigation centered exclusively around the latter — is not just implausible but legally impermissible. As the Supreme Court made clear in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, an agency must "deal with the problem afresh" without taking a new agency action and satisfying applicable procedural requirements. Likewise, in *Sec. & Exch. Comm''n v. Chenery Corp.*, the Supreme Court made clear that courts can only uphold agency action based on the reasoning the agency actually invoked at the time.
>
> In its Redetermination {Commerce} attempts to retroactively reframe its reasoning under the guise of a "typo," without reopening the record, issuing any supplemental questionnaires, or conducting any further analysis. This is not an allowable elaboration — it is an impermissible post hoc rationalization. The record is replete with evidence that {Commerce} repeatedly and affirmatively cited Question 6 as the basis for AFA — without mentioning Question 5 — through multiple remands,

[39] *See Final Results*, 86 FR at 69621.
[40] *See* Saha Thai's Draft Redetermination Comments (internal citations omitted).

> briefs, and oral arguments. Frankly, it is extremely difficult to rationalize an agency and petitioners litigating a question for nearly half a decade only to "realize" that this litigation was based on a typo. This belated switch violates bedrock administrative law doctrines of contemporaneous rationale and prejudices Saha Thai's ability to respond. And therefore, {Commerce}'s Redetermination is unlawful.

**Commerce's Position**: We continue to find that Saha Thai and BNK are affiliated based on AFA. Citing *Regents*, Saha Thai contends that the Draft Redetermination violates administrative law principles because it changed Commerce's original justification for AFA.[41] However, the Courts have previously determined that a remand constitutes a new administrative segment and that Commerce's explanations and clarifications in the context of a redetermination pursuant to a remand order are not *post hoc* rationalizations by the agency.[42] Moreover, the *Remand Order* explicitly provided that Commerce may continue to find affiliation between Saha Thai and BNK based on AFA, as long as it "explain{s} (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information."[43] Saha Thai does not challenge the Court's authority to provide for Commerce to have chosen the position it takes here on remand or otherwise address this point. Additionally, Commerce's position that failure to provide requested

[41] *Id.* at 6 through 11 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1896 (2020) (*Regents*)).

[42] *See*, *e.g.*, *Fengchi Import & Export Co., Ltd. of Haicheng City v. United States*, 98 F. Supp. 3d 1309, 1315 (CIT 2015) ("Furthermore, Plaintiffs mistakenly characterize Commerce's comments in its redetermination as being a 'post hoc rationalization.' Commerce developed its comments in the redetermination over the course of the remand proceedings as the court directed in *Fengchi I*. The remand proceeding is an administrative proceeding, meaning that Commerce's comments are not the post hoc rationalization of its counsel. *See Mitsubishi Heavy Indus. v. United States*, 24 CIT 275, 287 n.9, 97 F.Supp.2d 1203, 1209 n.9 (2000).").

[43] *See Remand Order* at 26 ("The agency may take one of two paths on remand. Commerce may maintain its original position that Question Six is the question on which it wishes to base its analysis. If Commerce still wishes to apply an adverse inference based on Question Six, then it must explain why it believes that BNK's shared human resources manager is one who would hold a debt or equity interest in a company. Alternatively, Commerce may pick a different question. It would need to forthrightly acknowledge that it is changing the question on which it bases its analysis. If Commerce then wishes to apply an adverse inference, Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information.").

information in response to Question 5 was the appropriate basis for the application of AFA was one announced in the previous remand redetermination.[44] Thus, these final results of redetermination comply with administrative law principles and the Court's *Remand Order*.

**Comment 2: Whether the Record Supports the Use of AFA**

Wheatland did not provide an executive summary of its comments. For further details, *see* Wheatland's Draft Redetermination Comments at 1-2.

The following is a verbatim summary of argument submitted by Saha Thai.[45] For further details, *see* Saha Thai's Draft Redetermination Comments at 12-16.

*Saha Thai's Comments*:

> Assuming *arguendo* that Question 5 is the operative question, there is still no valid basis for applying AFA.
>
> The answer was complete and truthful based on any reasonable reading of the question. Saha Thai read the plain text of the question, calling for a list of all shared employees who were "involved in the development, production, sale and/or distribution." The shared HR employee, who held no executive, ownership, or operational authority, did not fall into this category under either the statute or {Commerce}'s own past practice. At most, this was a good-faith interpretive error, not a failure to cooperate to "the best of its ability." {Commerce}'s own silence at the time confirms that it did not consider the response deficient.
>
> When the HR information entered the record via Petitioner's rebuttal filing, {Commerce} made no effort to notify Saha Thai of a deficiency, much less allow time to remedy it. This is fatal. The statute is clear that adverse inferences cannot be drawn unless parties are first given a meaningful chance to correct alleged deficiencies. This failure is made glaring by {Commerce}'s own apparent obliviousness to the deficiency for the half-decade following the submission of the questionnaire response it now alleges to be deficient.

**Commerce's Position**: We disagree with Saha Thai's arguments and continue to find that necessary information was not available on the record and that Saha Thai withheld information that we requested, failed to provide such information in the form or manner requested, and

---

[44] *See Second Redetermination* at 4.
[45] *See* Saha Thai's Draft Redetermination (internal citations omitted).

significantly impeded the review consistent with sections 776(a)(1) and (2) of the Act. Further, we continue to find that Saha Thai failed to cooperate by not acting to best of its ability, thus justifying the application of partial AFA consistent with section 776(b) of the Act. As explained above in the "Application of AFA: Saha Thai's Sales to BNK" section, Saha Thai submitted no information indicating any connection with its home market customer, BNK, either in its original response or its response to Question Five of the Third Supplemental Questionnaire dated April 13, 2021.[46] Saha Thai's failure to identify the shared HR manager with BNK in either its original response or in response to Question Five of the Third Supplemental Questionnaire is consistent with its failure to identify six other home market customers with which Saha Thai shared various connections. Saha Thai's failure to disclose requested relevant information when given multiple opportunities to do so is an omission demonstrating a failure to cooperate with Commerce's request for information. The fact that Wheatland discovered relevant undisclosed ties between Saha Thai and its home market customers highlighting Saha Thai's failure to cooperate *does not* absolve Saha Thai of its failure to cooperate or allow it additional opportunities to remedy its previous responses.[47] This type of framework would encourage respondents to regularly withhold or omit requested information which they could then remedy without negative consequence if found out later by Commerce through other sources of information. The Court has already ruled that Commerce's application of AFA with respect to those customers was in accordance with law;[48] likewise, our application of AFA with respect to BNK is similarly in accordance with law.

---

[46] *See* Section A Response at 9-14, 16, and Third Supplemental Response at 2-3.
[47] *See e.g.*, *Shandong Rongxin Import & Export Co., Ltd. v. United States*, 35 F. Supp. 3d 1365, 1374 (CIT 2019) ("Commerce is not obligated to issue a supplemental questionnaire to the effect of, 'Are you sure?'") (citing *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1222 (CIT 2018)).
[48] *See Saha Thai*, 663 F. Supp. 3d at 1375 ("Saha Thai's failure to provide the requested information to Commerce justified the agency's drawing of an adverse inference from the facts otherwise available.").

With respect to Saha Thai's contention that the HR manager held a "role that, by its very nature, does not entail involvement in production processes, sales activity, product distribution, or any commercial operations relevant to the merchandise under review,"[49] as we have previously explained,[50] we did not ask for managers specifically involved in the sale of foreign like product, but instead for any ties between Saha Thai and BNK, including managers currently or previously employed by any other *company involved in the sale of foreign like product*, which would include BNK as BNK is a company involved in the home market sales of foreign like product. Accordingly, as the shared HR manager was a manager currently employed at one of Saha Thai's home market customers, this requested information should have been provided to Commerce in the multiple instances that Commerce requested it.

Saha Thai's argument that Commerce failed to comply with section 782(d) of the Act[51] is likewise without merit. We did provide Saha Thai with an opportunity to remedy or explain its failure to provide the originally requested information in the Third Supplemental Questionnaire Response dated April 13, 2021.[52] As described above, we reiterated our request for information regarding whether Saha Thai's employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review. Saha Thai complains that Commerce did not issue a supplemental questionnaire regarding the alleged ties between Saha Thai and BNK and gave Saha Thai no opportunity to do so before making a final determination.[53] However, Saha Thai's omission of information did not provide any basis

[49] *See* Saha Thai's Draft Redetermination Comments at 14.
[50] *See Second Redetermination* at 8.
[51] *See* Saha Thai's Draft Redetermination Comments at 15-16.
[52] *See* Third Supplemental Questionnaire at 1.
[53] *See* Saha Thai's Draft Redetermination Comments at 15-16.

for Commerce to know to ask further about a relationship that Saha Thai had failed to inform Commerce about in its original response. There was no record information demonstrating potential ties between Saha Thai and BNK until after Wheatland submitted information on the record rebutting Saha Thai's response to the Third Supplemental Questionnaire; this lack of knowledge on Commerce's part was a direct result of Saha Thai's failure, twice-over, to provide complete and accurate responses to Commerce's requests for information. Moreover, to reiterate, the facts with respect to Saha Thai's failure to identify any ties between itself and BNK in its responses are identical to those with respect to its failure to identify its ties with the other six home market customers, which the Court has already held was in accordance with law.

Saha Thai's failure to provide requested information of relevant ties with its home market customers meant that necessary information was missing from the record, *i.e.*, information necessary to decide if Commerce needed to further inquire about ties between Saha Thai and BNK. Further, Saha Thai withheld this requested information, failed to provide it in the form or manner requested, and significantly impeded the proceeding by depriving Commerce of relevant information about potential ties between Saha Thai and its home market customers. Saha Thai's failure to disclose this information in response to multiple questionnaires demonstrates a failure to cooperate by not acting to the best of its ability, warranting the application of partial AFA, especially in consideration that for multiple home market customers it failed to disclose requested relevant ties.

**Comment 3: Finding of Affiliation Based on AFA to Induce Cooperation**

Wheatland did not provide an executive summary of its comments. For further details, *see* Wheatland's Draft Redetermination Comments at 1-2.

The following is a verbatim summary of argument submitted by Saha Thai.[54] For further details, see Saha Thai's Draft Redetermination Comments at 17-18.

> {Commerce}'s Redetermination contains the exact same unlawful error as the original determination; namely, {Commerce} unlawfully used the application of AFA to manufacture affiliation where none existed. As the court has noted in two separate cases – Saha Thai and Hyundai Steel – {Commerce}'s conclusion of affiliation (used to justify allegedly mission necessary information) itself must be supported by substantial evidence. *Saha Thai Steel Pipe Pub. Co. v. United States*, which drew from the precedent established in *Hyundai Heavy Indus. Co. v. United States*. Application of AFA cannot be used to justify a conclusion of affiliation. In this case, as a matter of law, an HR employee cannot serve as the basis of affiliation.

**Commerce's Position**: Finally, Saha Thai argues that Commerce's conclusion of affiliation between Saha Thai and BNK has no support in the evidentiary record.[55] With respect to the information on the record, we have already stated that, "by itself, the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK are affiliated within the meaning of section 771(33) of the Act."[56] However, as described above, our determination that Saha Thai and BNK are affiliated is based on an adverse inference due to the fact that the record is incomplete as a result of Saha Thai's failure to provide complete responses to our requests for information. As explained above, Saha Thai significantly impeded the underlying administrative review because its failure to cooperate to the best of its ability deprived Commerce of an opportunity to further probe the relationship as described above and make an affiliation determination under section 771(33) of the Act. Accordingly, Commerce was further unable to determine whether Saha Thai's home market sales to BNK are sales to an affiliate that requires additional analysis, *e.g.*, an arm's-length test, and perhaps additional information, *e.g.*, data for downstream sales. Therefore, we

[54] *Id.* (internal citations omitted).
[55] *Id.* at 17-18.
[56] *See Second Redetermination* at 4.

find it appropriate to find an affiliation between Saha Thai and BNK based on AFA to induce cooperation from Saha Thai.[57] Saha Thai's argument that Commerce is precluded from making an adverse inference under section 776(b) of the Act unless the record already establishes the adverse inference would undermine the entire purpose of the statute.

Accordingly, for these final results of redetermination, we have continued to determine Saha Thai and BNK are affiliated based on partial AFA and have continued to apply AFA to Saha Thai's home market sales to BNK as well as the other six customers for which Saha Thai failed to report its ties and which we also found to be affiliated with Saha Thai based on AFA as previously sustained by the Court.

## V. FINAL RESULTS OF REDETERMINATION

In compliance with the Court's *Remand Order*, Commerce has reconsidered Saha Thai and BNK's affiliation status, and on remand has determined that Saha Thai and BNK are affiliated based on the application of AFA. As a result, Commerce determines that the following weighted-average dumping margins exist for the period of March 1, 2019, through February 29, 2020:

| Exporter or Producer | Final Results of Redetermination Weighted-Average Dumping Margin (percent) |
|---|---|
| Saha Thai Steel Pipe Public Company, Ltd. | 14.74 |
| Thai Premium Pipe Co., Ltd. | 14.74 |

[57] *See* footnote 30, *supra.*

Should the Court affirm the final results of redetermination, Commerce intends to publish a notice of amended final results in the *Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

8/11/2025

X

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance