## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: The Honorable Gary S. Katzmann, Judge

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| THAI PREMIUM PIPE COMPANY LTD., | ) ) |
| Plaintiff-Intervenor, | ) **Court No. 21-00627** |
| v. | ) **NONCONFIDENTIAL VERSION** |
| UNITED STATES, | ) *Confidential information has been removed from brackets on pages 16 and 18.* |
| Defendant, | ) |
| and | ) |
| WHEATLAND TUBE COMPANY, NUCOR TUBULAR PRODUCTS INC., | ) ) |
| Defendant-Intervenor. | ) |

## PLAINTIFF SAHA THAI'S COMMENTS ON COMMERCE'S THIRD REMAND REDETERMINATION

Daniel L. Porter
Gina M. Colarusso

**Pillsbury Winthrop Shaw Pittman LLP**
1200 17th Street N.W.
Washington, D.C. 20036
202-663-8140

September 17, 2025

*Counsel for Saha Thai Steel Pipe Public Co. Ltd.*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

STATEMENT OF FACTS .................................................................................................... 4

I.    COMMERCE'S THIRD REMAND RESULTS CANNOT BE SUSTAINED .............. 11

    A.    Commerce's Third Remand Results Defy the Court's Order, which Instructed the Agency to Comply with Basic Principles of Administrative Law........................ 11

    B.    Commerce's Conclusion that Saha Thai Sufficiently Impeded the AD Review to Justify Application of Adverse Facts Available (AFA) Has No Support in the Evidentiary Record ............................................................................................... 15

    C.    Commerce Unlawfully Failed to Comply With 19 U.S.C. § 1677m(d) ............... 19

    D.    Commerce's Conclusion of Affiliation Between Saha Thai and BNK Has No Support in the Evidentiary Record ...................................................................... 21

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Hospital Ass'n v. Azar*,
  983 F.3d 528 (D.C. Cir. 2020) ................................................................................ 14

*Biden v. Texas*,
  597 U.S. 785 (2022) ............................................................................................... 12

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  591 U.S. 1 (2020) .......................................................................................... 8, 11, 12

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
  308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ............................................................ 20

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .......................................................................................... 12, 14

*Hoogovens Staal Bv v. United States*,
  24 CIT 44 (2000) .................................................................................................... 20

*Hyundai Heavy Indus. Co. v. United States*,
  393 F. Supp. 3d 1293 (Ct. In'l Trade 2019) ........................................................ 6, 22

*Pension Benefit Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) ............................................................................................... 11

*Saha Thai Steel Pipe Public Co., Ltd., v. United States*,
  Court No. 21-00627, Slip Op. 23-158 (Ct. Int'l Trade Nov. 13, 2023) ........................... passim

*Saha Thai Steel Pipe Public Co., Ltd., v. United States*,
  Court No. 21-00627, Slip Op. 25-71 (Ct. Int'l Trade June 5, 2025) ................................ passim

*SKF USA, Inc. v. United States*,
  254 F.3d 1022 (Fed. Cir. 2001) .............................................................................. 11

**Statutes**

19 U.S.C. § 1677 ........................................................................................... 16, 21, 22

19 U.S.C. § 1677e ...................................................................................................... 8

19 U.S.C. § 1677m ............................................................................................. 11, 19

**Regulations**

19 C.F.R. § 351.301(c)(1)(v) .......................................................................................... 19

**Administrative Determinations**

Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping
    Duty Administrative Review and Final Determination of No Shipments; 2019–2020,
    86 Fed. Reg. 69,620 (Dec. 8, 2021) ..................................................................... 4, 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to the U.S. Court of International Trade's (the "Court") opinion and remand order,[1] Saha Thai Steel Pipe Public Company ("Plaintiff" or "Saha Thai") hereby submits comments on the Commerce Department's ("Commerce" or "the Department") Final Results of Redetermination Pursuant to Court Remand (ECF No. 112) ("Third Remand Results") in the 2019-2020 administrative review of the antidumping duty ("AD") order on circular welded carbon steel pipes and tubes from Thailand.

This Court previously held that Commerce's finding that Saha Thai and customer BNK were affiliated "is both factually unsupported and legally improper," and ordered Commerce to "perform a proper affiliation analysis regarding the relationship between Plaintiff and BNK." *Saha Thai Steel Pipe Public Co., Ltd., v. United States*, Court No. 21-00627, Slip Op. 23-158 at 37-38 (Ct. Int'l Trade Nov. 13, 2023) ("*Second Remand Order*").  In its second remand redetermination, Commerce found that the sharing of a single human resources manager without further record evidence showing affiliation (as the record reflects here) would be insufficient to determine that Saha Thai and BNK were affiliated within the meaning of section 771(33) of the Tariff Act of 1930, as amended (the Act).  Therefore, Commerce treated Saha Thai and BNK as unaffiliated entities and recalculated the weighted-average dumping margin for Saha Thai as 1.65.  Final Results of Redetermination Pursuant to Court Remand (Oct. 10, 2024), ECF No. 87 ("Second Remand Results").  Despite all parties agreeing that the Court should affirm the Second Remand Results, Judge Vaden ordered a third remand because Commerce failed to comply with basic principles of administrative law when it effectively changed its position on

---

[1]  *Saha Thai Steel Pipe Public Co., Ltd., v. United States*, Court No. 21-00627, Slip Op. 25-71 (Ct. Int'l Trade June 5, 2025) ("*Third Remand Order*"); Court's July 30, 2025, Order (ECF No. 111).

remand without acknowledging it or providing a reasoned explanation for making such a change. *Third Remand Order* at 16-27.

Rather than address the Court's concern and instruction, Commerce has decided to revert to its initial affiliation finding, based on the application of adverse facts available ("AFA"). Third Remand Results at 2-11. In doing so, Commerce again fails to adhere to the basic principles of administrative law and the Court's *Third Remand Order*. Moreover, notwithstanding that the Court had *already* concluded that such determination is unsupported by substantial evidence and not in accordance with law, Commerce's Third Remand Results provide no further reasoned analysis regarding affiliation, points to no additional record evidence, nor did it reopen the record to solicit allegedly missing necessary information. Instead, Commerce claims that, after nearly five years of litigation, that it just discovered a typographical error in its original Final Issues and Decision Memorandum and implies that correction of the alleged error equates to a reasoned basis for using AFA to determine that Saha Thai is affiliated with BNK. *Id*. at 3-5.

Plaintiff is incredulous with Commerce's approach and conclusion. As addressed in detail below and summarized here, Commerce's Third Remand Results cannot be sustained.

First, Commerce's conclusion regarding affiliation is the exact same one that this Court already found to be unlawful and unsupported by substantial evidence. In reverting back to its unlawful determination that Saha Thai is affiliated with BNK, Commerce failed to perform the necessary affiliation analysis (consistent with the *Second Remand Order*). Instead, it finds affiliation through the application of AFA. Rather than forthrightly acknowledge that it has changed its position upon which the application of AFA is warranted, explain the basis for changing its position, and address both (1) why Saha Thai should have disclosed its shared

employee in response to Question Five of the Third Supplemental Questionnaire *and* (2) why Saha Thai (allegedly) failed to act to the best of its ability by not disclosing this information – as the Court ordered and as the principles of administrative law require – Commerce claims that the basis for its analysis was always anchored in Question Five but it "inadvertently cited Question Six." *Id*. at 3. Such attempted rationale does not even pass the smile test.

Second, Commerce's conclusion that Saha Thai sufficiently impeded Commerce's AD review to justify application of AFA has no support in the evidentiary record. Saha Thai fully and timely responded to each of Commerce's questions and requests for information. Its responses were complete and truthful based on any reasonable reading of Commerce's question. If Commerce believed that a response was somehow deficient or necessary information was missing from the record, it was required by statute to notify Saha Thai of any deficiencies and provide a meaningful opportunity for Saha Thai to correct the alleged deficiency(ies). Commerce failed to do so.

Third, as the Court has previously held, the record does not contain substantial evidence of Saha Thai's affiliation with customer BNK. Commerce's Third Remand Results do not point to any new or additional evidence for support. Instead, Commerce's redetermination contains the exact same unlawful error as the original determination: unlawfully using the application of AFA to manufacture affiliation where none existed. As this court has noted in two separate cases – *Saha Thai* and *Hyundai Steel* – Commerce's conclusion of affiliation itself must be supported by substantial evidence. Application of AFA cannot be used to justify a conclusion of affiliation. In this case, as a matter of law, an HR employee cannot serve as the basis of affiliation.

Thus, Commerce's Third Remand Order is unsupported by substantial evidence, not in accordance with law, and inconsistent with the Court's *Third Remand Order*, which instructed Commerce to adhere to the basic principles of administrative law. Saha Thai respectfully submits that the Court should remand Commerce's Remand Results once more, this time with specific instruction to throw out the unlawful affiliation finding and re-calculate Saha Thai's dumping margin accordingly. Commerce has wasted enough of the Court and the Parties' time and limited resources.

**STATEMENT OF FACTS**

Commerce's Third Remand Results and the current posture of this proceeding warrant the Court ordering a *fourth* remand with instruction to correct Commerce's repeated errors. To fully understand just how egregious Commerce's Third Remand Results are, Plaintiff respectfully submits that context is key. Thus, below we provide a brief history of the Court's prior rulings in this proceeding and Commerce's subsequent remand results.

*Original Determination*

In its original final results for the underlying administrative review, Commerce found affiliation between Saha Thai and customer BNK Steel Co. Ltd. (BNK) by applying AFA based on a single shared human resources manager. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020* ("Final Results"), 86 Fed. Reg. 69,620, 69,621 (Dec. 8, 2021); Issues and Decision Mem. ("IDM") at 4–10, J.A. at 14,291–97, ECF No. 56; Final Calculation Analysis Mem. ("Final Analysis Memo") at 1–7, J.A. at 99,504–510, ECF No. 58. Commerce acknowledged Saha Thai's response that this single shared employee did not "{amount} to a traditional leadership position" and that "Wheatland Tube . . . has not proven that it entails a legal or operational position allowing for the exercise of control." Final Analysis

4

Memo at 2.  However, Commerce stated that Saha Thai should have identified BNK when it was asked "to 'state whether Saha Thai's or any of Saha Thai's affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale, and/or distribution of the merchandise under review.'"  *Id*.  Commerce claimed that this amounted to a gap in the record, which Commerce filled by assuming Saha Thai and BNK were affiliated because it "{could} not determine that Saha Thai is necessarily not affiliated with BNK."  *Id.*

**Second Remand Order** (first remand order relevant to this issue)

The Court found this to be unlawful and unsupported by substantial record evidence.  *Second Remand Order*, Slip Op. 23-158 at 19-20.  The Court reasoned "{b}ecause the sharing of a single human resources manager is insufficient for a reasonable mind to conclude that Saha Thai and BNK are affiliated, the Court cannot sustain Commerce's adverse inference on this point."  *Id*. at 34 (internal citations omitted).  The Court also explained that its decision in *Hyundai Heavy Industries*, where it held that Commerce's bare citation to a shared employee with a shared email was insufficient to uphold Commerce's finding of affiliation through the application of an adverse inference is instructive here:

> Here, too, the agency has offered no explanation of how a single shared human resources manager meets the statutory definition of affiliation.  Assumptions and speculations are not evidence.  Even if they were, Commerce misuses its "fact." The agency is required to find whether two entities are affiliated.  Rather than attempt to explain how one shared human resources employee meets the statutory test, Commerce instead declares it "cannot determine that Saha Thai is necessarily not affiliated with BNK."  "Necessarily not affiliated" is not the statutory standard; it is instead Commerce's attempt to dodge the standard.  Commerce's finding therefore not only fails to provide substantial evidentiary support, it also fails to apply the proper legal standard found in the statute. . . . Because Commerce's finding is both factually unsupported and legally improper, it may not stand.

*Id*. at 36-37 (internal citations omitted); *see also Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293, 1319 (Ct. In'l Trade 2019). The Court remanded this issue to Commerce, ordering it to perform a proper affiliation analysis regarding the relationship between Saha Thai and BNK.

### Second Remand Results

In its Second Remand Results, Commerce correctly determined that Saha Thai and BNK are not affiliated under the statute. Second Remand Results at 1-2. Commerce explained:

> On remand, we agree with the Court that, by itself, the sharing of a single human resources manager without further record evidence showing affiliation would be insufficient to determine that Saha Thai and BNK are affiliated within the meaning of section 771(33) of the Act. Accordingly, for these final results of redetermination, we have treated Saha Thai and BNK as unaffiliated entities, and we have recalculated the weighted-average dumping margin for Saha Thai accordingly.

*Id*. at 4. Despite acknowledging that its original affiliation finding lacked sufficient supporting evidence, Commerce maintained that its application of AFA was warranted because "Saha Thai failed to report that its human resources manager was also employed by BNK" thus "Commerce did not know that a potential relationship existed between the two companies and that it should inquire further on this issue." *Id*. at 5. That is, Commerce maintained its position that necessary information was missing from the record, so its original application of AFA to find affiliation was warranted. Rather than reopen the record to solicit the allegedly missing necessary information, Commerce continued to claim that Saha Thai did not act to the best of its ability but conceded that a shared human resources manager is insufficient to conclude that Saha Thai and BNK are affiliated under the terms of the statute. *Id*. at 5-6, 7-8. "Under protest" Commerce agreed to recalculate Saha Thai's dumping margin accordingly. *Id*. at 5-6.

As the Court acknowledged during Oral Argument and in its Third Remand Order, in its original determination, Commerce concluded that Saha Thai did not act to the best of its ability

(and therefore application of AFA was warranted) based on Saha Thai's allegedly deficient response to Question Six of the Third Supplemental Questionnaire; in its Second Remand Results, Commerce's reasoning for the continued application of AFA rests on Saha Thai's allegedly deficient response to Question Five of the Third Supplemental Questionnaire. *See Third Remand Order* at 2; Oral Arg. Tr. at 15-21 (Mar. 20, 2025), ECF No. 105 ("Instead, what appears to have happened is the Agency concocted a misleading description of what happened in this case previously, switched its position without forthrightly acknowledging it in the record, and then claimed that its hands were tied").

While Plaintiff's counsel shared in the Court's frustration with Commerce's unacknowledged change in position for the use of AFA, Plaintiff did not challenge Commerce's Second Remand Results. *See* Pl.'s Comments on Second Redetermination of Remand, ECF No. 90; Oral Arg. Tr. at 23:3-15 ("Not a single party has formally challenged the remand results even though we had the opportunity to do so."); *see also* Pl.-Intervenor's Comments on Remand Redetermination at 1, ECF No. 89. Defendant also agreed that the Court should affirm the Second Remand Results. *See* Oral Arg. Tr. at 27:7-12 ("{W}e believe that you can affirm the result."); *id*. at 27:18-23; *id*. at 28:3-5 ("I am not here to defend that dicta and that language."); *id*. at 28:8-11 ("{W}e focused on what the result of the remand redetermination was, which was without AFA, these facts do not support an affiliation analysis."); *id.* at 41:17-20 ("Ultimately, we think that that language did not affect the actual remand results here, which is all we're asking you to sustain."); Def.'s Resp. to Comments on Remand Redetermination at 4, ECF No. 93. Defendant-Intervenor agreed as well. Def.-Intervenor's Comments on Remand Redetermination (Wheatland Tube's Comments) at 7, ECF No. 94; Oral Arg. Tr. at 32:6-13.

***Third Remand Order***

Although <u>none of the parties opposed</u> Commerce's Second Remand Results, Judge

Vaden ordered a third remand for Commerce to address the "procedural impropriety here."  Oral

Arg. Tr. at 34:9-15.  The Court reasoned that Commerce failed to follow basic administrative

procedure when it claimed in its Second Remand Results that it had maintained its original

position but did not use the "same basis it articulated" to justify its rationale on remand.  *Third*

*Remand Order*, Slip Op. 25-71 at 23 (quoting *Burlington Truck Lines v. United States*, 371 U.S.

156, 169 (1962)).  The Court concluded that this amounted to an "impermissible *post hoc*

rationalization."  *Id.* at 24 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*,

591 U.S. 1, 21 (2020)).  The Court explained that Commerce could have changed its position on

remand so long as it explained its reasoning for doing so.  Specifically, the Court stated:

> Commerce could have reconsidered its position on remand and concluded that
> Question Five, instead of Question Six, was a more appropriate basis for an
> adverse inference. It could have forthrightly explained that it was changing its
> position because a human resources manager does not typically have a debt or
> equity position in a company. All it would take is a simple acknowledgment that
> the agency erred. But Commerce did not do this. Instead, Commerce falsely
> claimed that it was maintaining its original position while rewriting history *sub*
> *silentio*. This is a procedural error that the Court cannot affirm.

Slip Op. 25-71 at 24-25 (internal citations omitted).  The Court also found that it "remains

unreasonable to conclude that Saha Thai should have revealed its shared human resources

manager in response to Question Six.  Without a gap in the record in response to Question Six,

there is no basis on which to draw an adverse inference."  *Id.* at 26 (citing 19 U.S.C. § 1677e(a)–

(b)).

In ordering a third remand, the Court offered Commerce two options:

> Commerce may maintain its original position that Question Six is the question on
> which it wishes to base its analysis. If Commerce still wishes to apply an adverse
> inference based on Question Six, then it must explain why it believes that BNK's
> shared human resources manager is one who would hold a debt or equity interest

in a company. Alternatively, Commerce may pick a different question. It would need to forthrightly acknowledge that it is changing the question on which it bases its analysis. If Commerce then wishes to apply an adverse inference, Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information.

*Id*. at 26-27.

### Third Remand Results

In its Third Remand Results, Commerce once again ignored basic administrative procedure and this Court's order (instructing the agency to adhere to administrative law requirements).  Rather than "forthrightly acknowledge that it is changing the question on which it bases its analysis," Commerce claims that its original analysis was sound and has not changed.  Commerce states that the remand results simply correct that Commerce "inadvertently cited Question Six from the Third Supplemental Questionnaire in the Issues and Decision Memorandum and the Final Analysis Memorandum" when it "intended to cite Question Five from the Third Supplemental Questionnaire".  Third Remand Results at 3-4.

Specifically, Commerce states:

As a preliminary matter, Commerce acknowledges that it inadvertently cited Question Six from the Third Supplemental Questionnaire in the Issues and Decision Memorandum and the Final Analysis Memorandum.  In fact, Commerce intended to cite Question Five from the Third Supplemental Questionnaire which, as the Court observed, read "whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the dates of current and/or previous employment at Saha Thai and/or its affiliates and the third party, and name(s) of the positions held."

That Commerce intended to cite Question Five and not Question Six can be ascertained from the fact that it did not cite to any debt or equity positions with respect to BNK in its analysis in the Final Analysis Memorandum. Rather, the evidence on the record that Commerce referenced in its analysis indicated that this individual was the human resources manager for both Saha Thai and BNK. Accordingly, we find that there is a gap in the record with respect to Question

> Five wherein Saha Thai withheld requested information from Commerce, specifically information on certain of Saha Thai's managers being employed by BNK.

Third Remand Results at 3-4 (citing Commerce's Third Suppl. Questionnaire at 1). Commerce's muddled explanation fails to acknowledge that Commerce's original determination, in fact, *quoted the language from Question Six* of the Third Supplemental Questionnaire and not Question Five. Thus, Commerce's claim that it "inadvertently cited Question Six" is perplexing and makes little sense when viewed alongside the original determination.

Commerce goes on to state: "we are changing our position on remand and applying partial AFA to Saha Thai with respect to its home market sales to BNK consistent with Commerce's original intention in the *Final Results*, including correcting Commerce's citation to supporting documentation to accurately reflect Commerce's analysis." *Id*. at 4. Commerce asserts that its application of AFA was warranted because Saha Thai did not disclose a shared employee with a company involved in the sale of subject merchandise (*i.e.*, Question Five). As demonstrated above, Commerce's original determination to rely on AFA was based on Saha Thai's response to Question Six of the Third Supplemental Questionnaire.

Under the guise of an inadvertent error, Commerce has changed its position for why the application of AFA was warranted. Pursuant to the basic principles of administrative law and this Court's Order, Commerce was required to acknowledge the change in its position and provide a reasonable explanation for why it is changing its position. Commerce's Third Remand Results fail to do so. Instead, Commerce tries to argue that its decision to rely on AFA for its affiliation finding was always anchored in Saha Thai's response to Question Five and, Commerce claims, its remand results now reflect Commerce's original intention and analysis in that it corrects an "inadvertent citation" to Question Six. This sleight of hand must again be rejected by the Court.

I.      **COMMERCE'S THIRD REMAND RESULTS CANNOT BE SUSTAINED**

As we detail below, there are four separate reasons why Commerce's Third Remand

Results cannot be sustained.

> o   Commerce's Third Remand Results defy the Court's Order, which instructed the
>     agency to comply with basic principles of administrative law.
>
> o   Commerce's conclusion that Saha Thai sufficiently impeded the AD review to
>     justify application of adverse facts available (AFA) has no support in the
>     evidentiary record.
>
> o   Commerce unlawfully failed to comply with 19 U.S.C. § 1677m(d); and
>
> o   Commerce's conclusion of affiliation between Saha Thai and BNK has no support
>     in the evidentiary record.

A.      **Commerce's Third Remand Results Defy the Court's Order, which
        Instructed the Agency to Comply with Basic Principles of Administrative
        Law**

In failing to acknowledge that it has changed its position nor explaining the reason for the

change, Commerce has defied the Court's *Third Remand Order* and basic principles of

administrative law.  As the Court explained in its *Third Remand Order*, "it is a 'foundational

principle of administrative law' that judicial review of agency action is limited to 'the grounds

that the agency invoked when it took the action.'" *Id.* at 22 (citing *Dep't of Homeland Sec. v.

Regents of the Univ. of California*, 591 U.S. 1, 20 (2020)).  "If those grounds are inadequate, a

court may remand for the agency to do one of two things: First, the agency can offer 'a fuller

explanation of the agency's reasoning *at the time of the agency action*.'"  *Regents*, 591 U.S. at

20-21.  *See also Third Remand Order* at 22-23 (citing *Pension Benefit Guar. Corp. v. LTV Corp.*,

496 U.S. 633, 654 (1990).  Alternatively, "the agency can 'deal with the problem afresh' by

taking *new* agency action."  *Regents*, 591 U.S. at 21.  It can take new action and "reconsider its

previous position" as long as it complies with all procedural requirements.  *Third Remand Order*

at 22 (citing *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *Regents*, 591

U.S. at 21.  As this Court confirmed, "an agency may not, however, maintain its position while offering new reasoning — that would be an 'impermissible *post hoc* rationalization.'"  *Third Remand Order* at 23 (citing *Regents*, 592 U.S. at 21).

The principles of administrative law require that "{i}f the agency reconsiders its position, then it must state frankly that it changed its reasoning, explain the new position, and clarify why the change occurred."  *Id*. at 22 (citing *Biden v. Texas*, 597 U.S. 785, 808–09 (2022) and *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).  In ordering yet another remand, the Court instructed Commerce to comply with these principles.  Commerce failed to do so.

Similar to its Second Remand Results, which this Court remanded for failure to adhere to the necessary procedural prerequisites, in its Third Remand Results, Commerce maintained its original position but pointed to a new reason to justify its adverse inference analysis (while claiming that this was its intended justification all along).  *See* Third Remand Results at 3-4.  Commerce once again ignored the basic principles of administrative law and this Court's Order.  Rather than "forthrightly acknowledge that it is changing the question on which it bases its analysis," Commerce claims that its original analysis and current analysis are consistent, but it "inadvertently cited Question Six from the Third Supplemental Questionnaire in the Issues and Decision Memorandum and the Final Analysis Memorandum" when it "intended to cite Question Five from the Third Supplemental Questionnaire".  Third Remand Results at 3-4.  Commerce apparently cannot help itself and remains unable or unwilling to directly acknowledge that it is changing its position.  Since it fails to do so, it also does not provide a reasonable explanation for changing its position.  Because this explicitly contradicts both the Court's *Third Remand Order* and basic principles of administrative procedure, Commerce's redetermination cannot be sustained.

As it did in its Second Remand Results, Commerce again dodges its responsibility to acknowledge its changed position and instead uses dishonesty or else gross negligence to assert that its position has not changed, rather, its original determination contained a typo (or "inadvertently cited Question Six").  The record prevents any careful reader from believing this to be true.  As also illustrated above, in its original Final Results, Commerce explained that:

> We asked Saha Thai to 'state whether Saha Thai's or any of Saha Thai's affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale and/or distribution of the merchandise under review.'

Final IDM at 8, J.A. 14,295, ECF. No. 56 (citing "Commerce's Letter to Saha Thai, dated April 13, 2021 at 1").  The quoted language is Question Six of the Third Supplemental Questionnaire.  In its Final Analysis Memorandum, Commerce elaborates on this issue and again quotes Question Six as the basis for concluding that Saha Thai withheld information:

> Although Saha Thai dismisses this as not amounting to a traditional leadership position such as Chairman or Chief Executive Officer and Wheatland Tube Company (Wheatland) has not proven that it entails a legal or operational position allowing for the exercise of control, as discussed in the Issues and Decision Memorandum, we asked Saha Thai to "state whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale and/or distribution of the merchandise under review."

Final Analysis Memo. at 2., J.A. 99,505, ECF No. 58.  Again, Commerce's citation is to page 1 of the supplemental questionnaire issued on April 13, 2021 (*i.e.*, the Third Supplemental Questionnaire), rather than a specific question number.  However, the quoted language is directly from Question Six.  The Court very deliberately recognized – in fact, reading into the record at Oral Argument – that the basis for Commerce's original conclusion that there was a gap in the record and AFA was warranted was anchored in Saha Thai's response to Question Six of the Third Supplemental Questionnaire.  *See* Oral Arg. Tr. at 7-12; *id*. at 12:7-17 ("You very

specifically identified the question that you believe they withheld information on, and that was one question, debt or equity. So in other words, what you must believe, what I have to take it you must believe is that you think a human resources manager likely has a debt or equity position in the company. I suppose it's possible. That would be rather strange for an HR manager, not someone typically taken as a C-suite executive or what have you. But that's what you sank your anchor into.").

In its remand redetermination, Commerce could have acknowledged that Saha Thai's response to Question Six was not an appropriate or reasonable basis for determining that AFA was warranted. Just as the Court found with respect to the Second Remand Results, Commerce "could have reconsidered its position on remand and concluded that Question Five, instead of Question Six, was a more appropriate basis for an adverse inference. It could have forthrightly explained that it was changing its position because a human resources manager does not typically have a debt or equity position in a company." *Third Remand Order* at 24 (citing *Am. Hospital Ass'n v. Azar*, 983 F.3d 528, 539 (D.C. Cir. 2020)); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But Commerce, again, did not do this. Instead, for the first time in this litigation, Commerce claimed that it actually intended to cite Question Five and its original analysis was based on Saha Thai's response to Question Five. Third Remand Results at 4.

Commerce cannot reasonably claim that the issue is a typo in a legal citation when its original determination quoted the actual language from Question Six of the Third Supplemental Questionnaire. That Commerce "did not cite to any debt or equity position with respect to BNK in its analysis in the Final Analysis Memorandum" is frankly nonsensical and does not demonstrate an intent to cite Question Five. As has been repeatedly argued, there is no record

evidence of any shared employee with a debt or equity position.  That is precisely why the Court remanded this issue to Commerce in the first place – it was unreasonable for Commerce to base its application of AFA on Saha Thai's response to Question Six, when a human resources employee does not typically hold a debt or equity position and there is no evidence on this record that the shared human resources employee in question held such a position.

Commerce goes on to state: "we are changing our position on remand and applying partial AFA to Saha Thai with respect to its home market sales to BNK consistent with Commerce's original intention in the *Final Results*, including correcting Commerce's citation to supporting documentation to accurately reflect Commerce's analysis."  *Id*.  Commerce goes on to argue that its application of AFA was warranted because Saha Thai did not disclose a shared employee with a company involved in the sale of subject merchandise (*i.e.*, Question Five), *id.* at 7, but nowhere in Commerce's Third Remand Results does it clearly explain why it is changing its position, as it was required to do.  Instead, Commerce effectively takes the position that its basis for finding a gap in the record and applying AFA has always been because of Saha Thai's response to Question Five.  As demonstrated above (and by the Court in its *Third Remand Order*), this explanation is not supported by the record.  Because Commerce is seemingly unable to comply with administrative procedure or take seriously this Court's orders, Plaintiff respectfully submits that this situation warrants a clear directive from the Court for Commerce to recalculate Saha Thai's dumping margin without a finding of affiliation between Saha Thai and BNK.

**B.    Commerce's Conclusion that Saha Thai Sufficiently Impeded the AD Review to Justify Application of Adverse Facts Available (AFA) Has No Support in the Evidentiary Record**

Even setting aside the ample legal and procedural infirmities discussed above, Commerce's dogged effort to rely on AFA to find affiliation between Saha Thai and BNK is

unsupported by the record evidence.  The evidentiary record demonstrates that Saha Thai fully
cooperated to the best of its ability.

Saha Thai provided complete responses to Commerce's affiliation inquiries in the
original questionnaires.  In its Section A questionnaire response, Saha Thai disclosed all entities
that met the statutory definition of "affiliated" persons (*e.g.*, based on equity ownership or shared
control) – and indeed reported no affiliates beyond those already known, because no other
entities (including BNK) met the criteria of 19 U.S.C. § 1677(33).  Saha Thai Section A
Questionnaire Resp. at 3-4 (Nov. 10, 2020), J.A. 82,819–82,820, ECF No. 57.

Commerce's Section B questionnaire likewise had Saha Thai identify each customer as
affiliated or unaffiliated; Saha Thai coded all home market customers accordingly.  Saha Thai
Section B Questionnaire Resp. at 19 (Dec. 10, 2020), J.A. 89,660, ECF No. 58.  Commerce then
issued supplemental questionnaires specifically probing certain customer relationships.
Commerce's First Suppl. Questionnaire for Saha Thai (Feb. 3, 2021)*,* J.A. 90,946–90,947, ECF
No. 58; Commerce's Second Suppl. Questionnaire for Saha Thai (Mar. 11, 2021), J.A. 96,064,
ECF No. 58; Commerce's Third Suppl. Questionnaire for Saha Thai (Apr. 13, 2021), J.A.
96,235, ECF No. 58.  Saha Thai answered every question.  *See* Saha Thai's First Suppl.
Questionnaire Resp. (Feb. 24, 2021), J.A. 92,361–92,367, ECF No. 58; Saha Thai's Second
Suppl. Questionnaire Resp. (Mar. 18, 2021), J.A. 96,073–96,079, ECF No. 58; Saha Thai's Third
Suppl. Questionnaire Resp., Pt. 2 (May 6, 2021), J.A. 96,465–96,472, ECF No. 58.

For example, Commerce's first supplemental questionnaire asked about relationships
with several named customers such as (Blue Pipe, [                              ].
Commerce's First Suppl. Questionnaire*,* J.A. 90,946–90,947, ECF No. 58.  Saha Thai responded
with detailed information and documentation showing ordinary supplier-customer dealings and

no affiliating control.  Saha Thai's First Suppl. Questionnaire Resp. (Feb. 24, 2021), J.A. 92,361–92,367, ECF No. 58.

Commerce's second supplemental questionnaire asked for a revised list of customers with an added column indicating affiliation status; Saha Thai complied, again indicating all those customers were unaffiliated (which Commerce did not dispute).  Saha Thai's Second Suppl. Questionnaire Resp. (Mar. 18, 2021), J.A. 96,073–96,079, ECF No. 58.

Finally, in the Third Supplemental Questionnaire, Commerce included the two questions (Questions Five and Six) about overlapping personnel that have been the focus of this remand. Question Five essentially asked if any of Saha Thai's (or its affiliates') personnel are or were employed by another company involved in the "production or sale" of subject merchandise, and Question Six asked the same but specifically where the personnel also have a "debt/equity interest" in the other company.  Saha Thai's Third Suppl. Questionnaire Resp., Pt. 2, at 2-3, J.A. 96,467–68, ECF No. 58.  Saha Thai answered these questions honestly and consistent with its understanding of their scope.  In response to Question Six (the debt/equity question), Saha Thai stated truthfully that none of its relevant personnel held any ownership stake in any other such company – a response that even the Department now effectively concedes was truthful (since the HR manager at issue did not have an equity or debt position in BNK).  *Id*. at 3, J.A. 96,468.

Saha Thai's response to Question Five — which asked whether any of its or its affiliates' personnel were currently or previously employed by another company involved in the development, production, sale, or distribution of the subject merchandise — was also accurate and truthful.  Saha Thai's Third Suppl. Questionnaire Resp., Pt. 2, at 2-3, J.A. 96,467–68.  The individual later identified by Petitioner/Defendant-Intervenor as having worked for both Saha Thai and BNK was a low-level human resources manager — a role that, by its very nature, does

not entail involvement in production processes, sales activity, product distribution, or any commercial operations relevant to the merchandise under review. As such, this employee did not fall within the scope of Commerce's question as written. The suggestion that a human resources staff member — whose duties relate to internal personnel management — must be disclosed in response to a question targeting operational or commercial overlap goes beyond both the plain language of the question and the statutory framework for analyzing affiliation.

There is no evidence this was an intentional omission, nor was it unreasonable for Saha Thai to interpret Question Five as inapplicable to this individual. BNK had not been identified as a potential affiliate, and nothing in the record indicates that this employee held any position that could plausibly influence pricing, production, or the distribution of pipe. Simply put, human resources personnel are not involved in "the development, production, sale and/or distribution of the merchandise under review" — and Commerce has never argued otherwise.

Importantly, Commerce never identified Saha Thai's answer to Question Five as deficient at the time it was submitted. No supplemental questionnaire followed; no clarification was sought. In fact, Commerce proceeded through the Preliminary Results without raising any issue regarding this response or applying AFA on this basis. The record reflects that Saha Thai timely and fully answered all questions as asked and had no reason to believe further disclosure was required.

Moreover, the first time the human resources manager's name was introduced was when Petitioner/Defendant-Intervenor placed additional factual information on the record very late in the proceeding *in response to another respondent's questionnaire response*. Wheatland Tube Rebuttal Factual Info. to Blue Pipe's Suppl. Resp. at 1 (June 1, 2021), J.A. 97,687, ECF No. 58 (stating that Exhibit 3 provides "[                    ]"). *Cf.* Wheatland Tube Rebuttal Factual

Info. to Saha Thai's Suppl. Resp. at 1–2 (June 1, 2021), J.A. 97,109–10, ECF No. 58; *see also* Final Analysis Memo at 2, n.11, J.A. 99,505, ECF No. 58. Under 19 C.F.R. § 351.301(c)(1)(v), only the "original submitter" of the supplemental questionnaire response is permitted one opportunity to submit factual information. *See* Pl. Reply Br. in Support of Mot. for Judgment on the Agency Record at 23-24 (Aug. 26, 2022), ECF No. 53. Therefore, only Blue Pipe was authorized to rebut Petitioner's submission of new factual information. No other interested party could have rebutted the information—including Saha Thai. Further, Petitioner/Defendant-Intervenor submitted information regarding BNK under the administrative protective order, preventing counsel for Plaintiff from discussing the information with Saha Thai. Commerce did not "promptly" or otherwise inform Saha Thai of any deficiency in its response or provide an opportunity to remedy, explain, or respond to the information raised in Petitioner's submission.

Under these circumstances, there is no basis to conclude that Saha Thai failed to act to the best of its ability.

### C.    Commerce Unlawfully Failed to Comply With 19 U.S.C. § 1677m(d)

The statute, at 19 U.S.C. § 1677m(d), provides:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) **shall promptly inform the person submitting the response of the nature of the deficiency** and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

(emphasis added). The above statutory language is clear. When conducting its AD proceedings, should Commerce believe that the data submitted by the respondent is not sufficient in some respect for Commerce's purposes, **Commerce has an affirmative obligation** to notify the respondent of the nature of the perceived deficiency and provide an opportunity for the respondent to remedy the perceived deficiency. The Court has repeatedly held that it is unlawful

for Commerce to discard a respondent's reported data without first meeting this obligation. *See e.g., Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018) ("Commerce erred in failing to inform {respondent} that its supplemental submission was deficient or make findings with regard to the practicability of providing {respondent} with an opportunity to remedy or explain the deficiencies."); *Hoogovens Staal Bv v. United States*, 24 CIT 44, 58-61 (2000).

In this case, when Petitioner/Defendant-Intervenor placed information on the record (behind brackets and in response to another respondent's questionnaire response) about the shared human resources manager after Saha Thai's questionnaires were submitted, Commerce did not issue any supplemental questionnaire or deficiency letter to Saha Thai addressing this issue. Commerce easily could have done so – *e.g*., a simple question asking Saha Thai to explain the circumstances of the HR employee's employment at BNK and whether any control or affiliation existed. Instead, Commerce remained silent, waited until it was drafting its final determination and then jumped straight to an adverse inference in the Final Results. Saha Thai had no way of knowing there was an alleged issue and no opportunity to provide an explanation or factual information to clarify the information included in Petitioner's submission responding to another respondent's questionnaire response.

This is a clear violation of the statute. Commerce issued no such supplemental questionnaire regarding the alleged ties between Saha Thai and BNK and gave Saha Thai no opportunity to address whether any control or affiliation existed before making a final determination. Commerce's inaction is particularly egregious here where it has had three remand proceedings during which it could have reopened the record and sought the allegedly

missing necessary information.  Commerce's failure to follow the procedures mandated by § 1677m(d) renders the resort to AFA unlawful.

### D.     Commerce's Conclusion of Affiliation Between Saha Thai and BNK Has No Support in the Evidentiary Record

Like its original determination, Commerce's Third Remand Results make clear that Commerce's conclusion that there was necessary missing information was directly premised upon Commerce's subsidiary conclusion that Saha Thai and BNK were affiliated.  However, such conclusion has no support in the evidentiary record.

The undisputed facts are that Saha Thai and BNK share no common ownership interests, no common corporate control, and no family relationship.  BNK is (as Commerce described) simply one of Saha Thai's home market customers – specifically, a reseller of Saha Thai's pipe products.  The only connection identified was that a human resources employee at Saha Thai was contemporaneously employed in some capacity at BNK.

Such lone fact, by itself, does not come close to meeting the definition of "affiliated" parties under 19 U.S.C. § 1677(33).  The statute enumerates the types of relationships that constitute affiliation, and a mid-level HR manager simply does not wield the type of control that the statute contemplates.  It is undisputed that this employee is not a director, nor an executive with policymaking authority over the company's business decisions.  In short, the HR manager was not a conduit of control between the companies – she was at most a shared resource or employee.  As the Court held, "the sharing of a single human resources manager is insufficient for a reasonable mind to conclude that Saha Thai and BNK are affiliated."  Slip Op. 23-158 at 38.

The logic expounded by the Court earlier in this proceeding in the *Second Remand Order* (Slip Op. 23-158 at 38), which drew from the precedent established in *Hyundai Heavy Indus. Co.*

*NON-CONFIDENTIAL VERSION*

*v. United States*, applies with equal force here. *Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293, 1319 (Ct. Int'l Trade 2019). As the Court put it: "'Necessarily not affiliated' is not the statutory standard; it is instead the Department's attempt to dodge the standard. The Department's finding therefore not only fails to provide substantial evidentiary support, it also fails to apply the proper legal standard found in the statute." *Second Remand Order*, Slip Op. 23-158 at 37 (citing 19 U.S.C. § 1677(33)). The Court should reach the same conclusion here.

*NON-CONFIDENTIAL VERSION*

**CONCLUSION**

For the foregoing reasons, Commerce's Third Remand Results are unsupported by substantial evidence, nor in accordance with law, and inconsistent with the court's *Third Remand Order*. Thus, Plaintiff requests that the Court remand Commerce's Third Remand Results with specific instruction to re-calculate Saha Thai's dumping margin without the unlawful finding of affiliation between Saha Thai and BNK.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
Gina M. Colarusso

**Pillsbury Winthrop Shaw Pittman LLP**
1200 17th Street N.W.
Washington, D.C. 20036
202-663-8140

*Counsel to Saha Thai Steel Pipe Public Co., Ltd.*

**Dated:  September 17, 2025**

**CERTIFICATION OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

The undersigned hereby certifies that the attached Comments on Commerce's Remand Determination, filed on September 17, 2025, contains 6,927 words, exclusive of the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare this brief.  The comments therefore comply with the word limitation set forth in the Court's Chambers Procedures.

/s/ Daniel L. Porter
Daniel L. Porter

**Dated: September 17, 2025**