**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE**
_____

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, )<br><br>Plaintiff, )<br><br>and )<br><br>THAI PREMIUM PIPE COMPANY LTD., )<br><br>Plaintiff-Intervenor, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC., )<br><br>Defendant-Intervenors. ) | Court No. 21-00627 |

_____

<u>**ORDER**</u>

Upon consideration of plaintiff's and plaintiff-intervenor's comments regarding the Department of Commerce's Final Results of Redetermination Pursuant to Court Remand (Aug. 11, 2025) (ECF No. 112) (Third Remand Results), defendant's response thereto, and all other pertinent papers, it is hereby

**ORDERED** that Commerce's Remand Redetermination is sustained in all respects; and it is further

**ORDERED** that judgment will enter in favor of the United States.

Dated: _____

New York, New York

_____

JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE**

_____

|  |  |  |
|---|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THAI PREMIUM PIPE COMPANY LTD., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 21-00627 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

**DEFENDANT'S RESPONSE TO
SAHA THAI'S COMMENT ON COMMERCE'S REMAND REDETERMINATION**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:                                COLLIN T. MATHIAS
JONZACHARY FORBES                Trial Attorney
Senior Attorney                            U.S. Department of Justice
Office of the Chief Counsel          Civil Division

for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-307-0315
E-mail: Collin.T.Mathias@usdoj.gov

**TABLE OF CONTENTS**

**PAGE**

DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS..............................1

BACKGROUND...........................................................................................................2

    I.    Commerce's Original Administrative Review And Final Results.........................2

    II.    The Court's October 11, 2022 Order...................................................................3

    III.    The Court's November 13, 2023 Order ..............................................................4

    IV.    Commerce's October 10, 2024 Remand Results.................................................5

    V.    The Court's June 5, 2025 Order..........................................................................5

    VI.    Commerce's August 11, 2025 Remand Redetermination.....................................6

ARGUMENT...............................................................................................................7

    I.    Standard Of Review.............................................................................................7

    II.    Commerce's Third Remand Results Comply With The Remand Order And Are Supported By Substantial Evidence And In Accordance With Law......................7

        A.   Commerce Followed The Court's Instructions And Permissibly Changed Its Reason For Apply An Adverse Inference To Saha Thai...............................8

        B.   Commerce Correctly Applied Partial Facts Available With An Adverse Inference To Find Saha Thai And BNK Affiliated.....................................10

           1.   Necessary Information Regarding Ties Between Saha Thai and BNK Was Not Available..........................................................................12

           2.   Saha Thai Failed To Cooperate, Warranting An Adverse Inference Finding Affiliation.........................................................................14

    III.    Any Remand Order, If Necessary, Should Allow Commerce To Continue Investigating .................................................................................................18

    CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Inc. v. United States,*
  355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018)..........................................................................15

*Biden v. Texas,*
  597 U.S. 785 (2022)................................................................................................................9

*Hitachi Energy USA Inc. v. United States,*
  34 F.4th 1375 (Fed. Cir. 2022)............................................................................................10

*Hyundai Heavy Indus. Co. v. United States,*
  393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019).................................................................17, 18

*Hyundai Steel Co., Ltd. v. United States,*
  19 F.4th 1346 (Fed. Cir. 2021)..............................................................................................3

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States,*
  435 F. Supp. 3d 1278 (Ct. Int'l Trade 2020)..........................................................................9

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)..........................................................................7

*Mid Continent Steel & Wire, Inc. v. United States,*
  941 F.3d 530 (Fed. Cir. 2019)..............................................................................................17

*Nat'l Nail Corp. v. United States,*
  390 F. Supp. 3d 1356 (Ct. Int'l Trade 2019)........................................................................10

*Nippon Steel Corp. v. United States,*
  337 F.3d 1373 (Fed. Cir. 2003)............................................................................................14

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States (Saha Thai I),*
  663 F. Supp. 3d 1356 (Ct. Int'l Trade 2023)................................................................ passim

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States (Saha Thai II),*
  789 F. Supp. 3d 1293 (Ct. Int'l Trade 2025)................................................................ passim

*Tung Mung Dev. Co. v. United States,*
  354 F.3d 1371 (Fed. Cir. 2004)..............................................................................................9

*Zhaoqing New Zhongya Aluminum Co. v. United States,*
  70 F. Supp. 3d 1298 (Ct. Int'l Trade 2015)..........................................................................10

**Statutes**

19 U.S.C. § 1516a(b)(2)(a)............................................................................................ 19

19 U.S.C. § 1677(33)............................................................................................. passim

19 U.S.C. § 1677e............................................................................................... passim

19 U.S.C. § 3512(d)..................................................................................................... 17

19 U.S.C.} § 1677m(d)......................................................................................... passim

28 U.S.C. § 2643(a)(5)................................................................................................. 19

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE**
_____

|  |  |  |
|---|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THAI PREMIUM PIPE COMPANY LTD., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 21-00627 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

**DEFENDANT'S RESPONSE TO
SAHA THAI'S COMMENT ON COMMERCE'S REMAND REDETERMINATION**

Defendant, the United States, respectfully responds to the comments of plaintiff, Saha Thai Steel Pipe Public Company Limited (Saha Thai), and plaintiff-intervenor Thai Premium Pipe Company Ltd. concerning the Department of Commerce's remand results in this matter. Final Results of Redetermination Pursuant to Court Remand (Aug. 11, 2025) (ECF No. 112) (Third Remand Results).  We respectfully request that the Court sustain the remand results because they comply with the Court's remand order and because they are supported by substantial evidence and otherwise in accordance with law.

1

## BACKGROUND

I.     <u>Commerce's Original Administrative Review And Final Results</u>

This case concerns Commerce's final results in the 2019-2020 antidumping duty administrative review of circular welded carbon steel pipes and tubes from Thailand, for the period of review from March 1, 2019, to February 29, 2020.  *See Circular Welded Carbon Steel Pipes and Tubes From Thailand:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 86 Fed. Reg. 69,620 (Dep't of Commerce Dec. 8, 2021*) (*Final Results), Appx14281-14286,[1] and accompanying Issues and Decision Memorandum (IDM), Appx14287-14319.

As part of Commerce's review, Commerce issued questionnaires seeking information on potentially affiliated companies.  *See* Section A Questionnaire at A-1-13 (Oct. 13, 2020), Appx3307-19; Third Suppl. Questionnaire (Apr. 13, 2021), Appx96233.  In the supplemental questionnaire, Commerce asked a series of questions, including whether any "employees, stockholders, managers, directors, officers, or department heads has an equity or debt position in any other company involved" with subject merchandise (Question Six).  Third Suppl. Questionnaire, Appx96235.  Commerce also asked Saha Thai whether any "employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved" with subject merchandise (Question Five).  *Id*.  Saha Thai reported none in response to both questions.  Saha Thai Third Suppl. Questionnaire Resp. at 2-3 (May 6, 2021), Appx96467-68.

---

[1]  Citations to the underlying administrative review reference the joint appendix filed with this Court on September 9, 2022 (ECF Nos. 56, 57, 58).

On June 2, 2021, Wheatland Tube Company (Wheatland) submitted a rebuttal to Saha Thai's and Blue Pipe's supplemental questionnaire responses, identifying discrepancies in affiliation reporting.  *See* Wheatland Rebuttal Factual Information to Saha Thai Supplemental Questionnaire Response (June 2, 2021), Appx13630-13666, Appx97105-97684; Wheatland Rebuttal Factual Information to Blue Pipe Supplemental Questionnaire Response (June 2, 2021), Appx13704-13721, Appx97685-98071.  Specifically, Wheatland provided information that indicated that BNK's human resources manager was the same as Saha Thai's.  *See* Final Analysis Memo at 2, Appx99505 (citing Wheatland Rebuttal to Blue Pipe at Exhibit 3, Appx97868-97995); Saha Thai's Supplemental Questionnaire Response at Ex. 2, Appx96484.

In Commerce's final results, Commerce applied partial facts available with an adverse inference to find that Saha Thai was affiliated with seven home market customers that Saha Thai failed to identify as potentially affiliated, preventing Commerce from any opportunity to further inquire into the relationship between the various companies and Saha Thai regarding whether any of the factors under 19 U.S.C. § 1677(33) were met.  IDM at 9, Appex14296.  *Commerce expressly cited Question Six in its analysis but did not refer to Question Five.*  IDM at 8-9, Appx14295-96; *see also* Final Analysis Memo at 2, Appx99505.

## II.    The Court's October 11, 2022 Order

On October 11, 2022, the Court granted Commerce's voluntary remand request and partially remanded the Final Results to "recalculate the weighted average dumping margin without making a cost-based particular market situation adjustment" in light of the Federal Circuit's intervening decision in *Hyundai Steel Co., Ltd. v. United States*, 19 F.4th 1346, 1352 (Fed. Cir. 2021) (ECF No. 60).

III.    **The Court's November 13, 2023 Order**

In its November 13, 2023 order, the Court sustained in part and remanded in part the Final Results with respect to Commerce's affiliation findings based on the application of partial facts available with an adverse inference.  *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States* (*Saha Thai I*), 663 F. Supp. 3d 1356, 1377-78 (Ct. Int'l Trade 2023) (ECF No. 81). Specifically, the Court sustained Commerce's finding with respect to six of Saha Thai's home market customers, finding that Saha Thai's failure to identify the six potential affiliates in response to Commerce's questionnaires "left a gap in the record that rendered Commerce unable to complete its affiliation analysis, warranting the use of facts otherwise available with an adverse inference." *Id.* at 1368.  The Court noted that plaintiff's counsel had *conceded* in oral argument that Saha Thai should have reported these potential affiliates to Commerce.  *Id.*  The Court further held "that Commerce complied with {19 U.S.C.} § 1677m(d) by virtue of its series of questionnaires in which the agency repeatedly asked for information about Saha Thai's potential affiliates" and that "Saha Thai's own answers demonstrate that it understood the questions to include not only companies that, in Saha Thai's view, clearly were affiliates but also companies for which the question of affiliation might be disputed."  *Id.* at 1373-74.

The Court remanded Commerce's application of partial facts available with an adverse inference with respect to Saha Thai's relationship with the seventh home market customer, BNK Steel Co., Ltd. (BNK).  *Id.* at 1376.  Specifically, the Court held that "{b}ecause the sharing of a single human resources manager {between Saha Thai and BNK} is insufficient for a reasonable mind to conclude that Saha Thai and BNK are affiliated, the Court cannot sustain Commerce's adverse inference on this point."  *Id.*  Further, the Court ordered Commerce on

remand "to apply a proper affiliation analysis regarding the relationship between {Saha Thai} and BNK." *Id.*

## IV.    Commerce's October 10, 2024 Remand Redetermination

On remand, Commerce in its draft remand redetermination concluded that Saha Thai and BNK were not affiliated under a strict application of 19 U.S.C. § 1677(33) rather than 19 U.S.C. § 1677e based on the sharing of a human resources manager consistent with the Court's order to conduct a proper affiliation analysis on remand applying 19 U.S.C. § 1677(33). Final Results of Redetermination Pursuant to Court Remand (Oct. 10, 2024) (ECF No. 87) ("Second Remand Results"). However, Commerce noted that it respectfully disagreed with the Court's conclusion that partial adverse facts available were unwarranted, specifically pointing Saha Thai's failure to report a connection to BNK to response to Question Five. *Id.* at 4. Neither Saha Thai nor any other party submitted comments on the draft remand redetermination identifying that question as inconsistent with Commerce's statements in the underlying final results. *Id.* For purposes of the Second Remand Results, Commerce, under protest, continued to find Saha Thai and BNK unaffiliated again pointing to the fact that Saha Thai had failed to disclose its connection with BNK in response to Question Five of the supplemental questionnaire. *Id.* at 7-9. Again, no party identified the inconsistency between Question Five and Six in their comments on the remand redetermination before the Court. *Id.*

## V.    The Court's June 5, 2025 Order

On June 5, 2025, the Court again remanded the analysis with respect to BNK back to Commerce. *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States* (*Saha Thai II*), 789 F. Supp. 3d 1293 (Ct. Int'l Trade 2025). The Court explained that although Commerce did not apply an adverse inference in its Second Remand Results, remand was required because of a procedural

error related to Commerce's explanation for qualifying the Second Remand Results as issued "under protest." *Id.* at 1303. Specifically, the Court stated that Commerce's original decision relied on Question Six for an adverse inference, while the Second Remand Results specifically identified Saha Thai's failure to disclose its relationship with BNK in response to Question Five as the appropriate basis to apply an adverse inference. *Id.* at 1304. The Court held that this change in basis for applying an adverse inference from the original final results was inconsistent with procedural requirements. *Id.* at 1307. The Court then provided two specific options for Commerce on remand, specifically:

> Commerce may maintain its original position that Question Six is the question on which it wishes to base its analysis. If Commerce still wishes to apply an adverse inference based on Question Six, then it must explain why it believes that BNK's shared human resources manager is one who would hold a debt or equity interest in a company. Alternatively, Commerce may pick a different question. It would need to forthrightly acknowledge that it is changing the question on which it bases its analysis. If Commerce then wishes to apply an adverse inference, Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information.

*Id.* at 1308.

## VI.    <u>Commerce's August 11, 2025 Remand Redetermination</u>

In Commerce's Third Remand Results, Commerce chose the second path as laid out by the Court. Third Remand Results at 3-4. Specifically, Commerce announced that "there is a gap in the record with respect to Question Five wherein Saha Thai withheld requested information from Commerce, specifically information on certain of Saha Thai's managers being employed by BNK" and forthrightly acknowledged that it is changing its position on remand. Third Remand Redetermination at 4. Commerce acknowledged that it had, in the Final Results, inadvertently referenced Question Six rather than Question Five but that for purposes of the remand

proceeding it was changing the basis of its analysis consistent with the Court's remand order. *Id.* Commerce explained that Saha Thai should have disclosed the shared human resources manager between Saha Thai and BNK because Commerce's questionnaires directly asking if any of Saha Thai's managers were also employed by its customers. *Id.* at 7. Commerce then listed a series of specific example follow-up questions that it was deprived of asking to further probe whether the parties were affiliated under 19 U.S.C. § 1677(33). *Id.* at 8-9. Commerce further explained why Saha Thai failed to act to the best of its ability within the meaning of 19 U.S.C. 1677e(b) by failing to disclose this relationship in response to other inquiries as well, importantly contextualizing this failure within the context of multiple undisclosed connections that this Court has already held properly form the basis of an application of partial facts available with an adverse inference. Third Remand Redetermination at 16-17.

## ARGUMENT

### I.    Standard Of Review

This Court's review of remand determinations is the same as its review of original determinations. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Thus, in remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and is "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.    Commerce's Third Remand Results Comply With The Remand Order And Is Supported By Substantial Evidence And In Accordance With Law

Commerce's Third Remand Results comply with the Court's remand order and Commerce's determination to apply partial facts available with an adverse inference to find Saha Thai and BNK affiliated is supported by substantial evidence and in accordance with law.

### A.    Commerce Followed The Court's Instructions And Permissibly Changed Its Reason For Applying An Adverse Inference To Saha Thai

In its remand order, the Court expressly held that Commerce may forthrightly acknowledge that it was changing the basis to apply an adverse inference to Saha Thai. *Saha Thai II*, 789 F. Supp. 3d at 1308. Commerce did exactly that by expressly acknowledging that it was relying on Saha Thai's failure to respond fully to *Question Five*, providing analysis of why Saha Thai should have disclosed that it shared a human resources manager with BNK. Third Remand Results at 4-6. Commerce specifically explained that it is no longer relying on Saha Thai's response to *Question Six* and that it was Saha Thai's failure to provide a full response to *Question Five* that supported a finding that Saha Thai failed to cooperate by not acting to the best of its ability within the meaning of 19 U.S.C. § 1677e(b). *Id.* at 4-11.

Saha Thai argues that Commerce has defied the Court's latest remand order because Commerce noted that its original citation to Question Six in the Final Results was an inadvertent mistake and that Commerce does not directly acknowledge that it is changing its position. Saha Thai Comments on Third Remand Results (Saha Thai Br.) at 11-12, ECF No. 118). Commerce's Third Remand Results demonstrate that Saha Thai's assertion is wrong.

Commerce directly acknowledged that it cited Question Six in the original decision, and, as part of a new agency decisionmaking action, it was now relying on Saha Thai's failure to adequately answer Question Five for the affiliation analysis. Third Remand Results at 5 ("This redetermination is a new agency action wherein we are changing the question on which our analysis is based consistent with the Court's *Remand Order*."). Commerce's statement that it had made an inadvertent error was simply an explanation of why, in the original Final Results, Commerce had cited Question Six rather than Question Five. Commerce directly acknowledges that it cited Question Six originally and that for purposes of the Third Remand Results it is now

8

relying on Question Five. Saha Thai's contention that Commerce does not directly acknowledge its change is false.

Saha Thai also asserts that Commerce failed to comply with the remand order and basic principles of administrative law. Saha Thai Br. at 12. Not so. As the Court instructed, Commerce clearly "state{d} frankly that it changed its reasoning, explain{ed} the new position, and clarif{ied} why the change occurred." *Saha Thai II*, 789 F. Supp. 3d. at 1306 (citing *Biden v. Texas*, 597 U.S. 785, 808-09 (2022)). To be clear, the Court remanded Commerce's previous decision because "Commerce falsely claimed it was maintaining its original position while rewriting history *sub silentio*." *Id.* at 1307. That is not remotely the situation here where Commerce has expressly stated that this "is a new agency action" and provided new reasoning for the affiliation analysis based on a gap in the record caused by Saha Thai's inadequate response to Question Five. Third Remand Results at 5-6. Importantly, "Commerce's redetermination decisions represent new" and "independent agency" decisions. *Tung Mung Dev. Co. v. United States*, 354 F.3d 1371, 1379 (Fed. Cir. 2004); *accord Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 435 F. Supp. 3d 1278, 1286 (Ct. Int'l Trade 2020) (holding that a "Remand Redetermination is a new agency decision, distinct from the Final Results, and the parties are free to challenge it according to the standard of review").

Further, Saha Thai contends that Commerce's clarification for the new agency action is insufficient in providing a rationale for changing the basis. Saha Thai Br. at 14-15. Saha Thai misreads Commerce's actions on remand. Commerce explained that its reliance on Question Six, even if inadvertent, was insufficient for its affiliation analysis in the original determination. *See* Third Remand Results at 3-4. However, after analyzing "the evidence on the record,"

9

Commerce determined that Saha Thai's failure to address Question Five more directly led to the missing information later revealed by the shared human resources manager. *See id.* at 4.

For these reasons, Commerce expressly stated that it is "changing our position on remand{.}" *Id.* Commerce's discussion about inadvertently citing Question Six is minor clarifying comments about the background of Commerce's evaluation of the record and the Court's opinions when taking new action now. Saha Thai's accusation that Commerce does not "take seriously this Court's orders" is meritless. Saha Thai Br. at 19. Indeed, the Court expressly noted, "All it would take is a simple acknowledgment that the agency erred." *Saha Thai II*, 789 F. Supp. 3d at 1307. Commerce has made the simple acknowledgment that it erred, and Saha Thai's rhetoric does not demonstrate that Commerce failed to comply with the Court's order.

### B. Commerce Correctly Applied Partial Facts Available With An Adverse Inference To Find Saha Thai And BNK Affiliated

When necessary information is not available on the evidentiary record, Commerce is authorized to consider whatever other facts are available and to "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" when the party has "'failed to cooperate by not acting to the best of its ability to comply with a request for information.'" *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) (quoting 19 U.S.C. § 1677e(b)(1)); *see also Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1373 (Ct. Int'l Trade 2019) ("{T}he use of facts otherwise available, to fill in gaps, applies when necessary information is lacking, regardless of the reason for its absence.") (cleaned up). This Court's precedent demonstrates that Commerce must possess certain information to analyze affiliation relationships between respondents and customers under 19 U.S.C § 1677(33). *See Zhaoqing New Zhongya Aluminum Co. v. United States*, 70 F. Supp. 3d 1298, 1308 (Ct. Int'l

Trade 2015) (holding that information supporting Commerce's affiliation finding was necessary to determine that a singular family grouping maintained control over three companies).

Here, Commerce's determination that Saha Thai's failure to report its shared manager with its home market customer, BNK, in response to repeated questionnaires warranted the application of partial facts available with an adverse inference. Importantly, this Court has already held that Commerce properly applied a partial adverse inference with respect to six other home market customers with connections to Saha Thai that Saha Thai failed to disclose. *See Saha Thai I*, 663 F. Supp. 3d at 1375. In its most recent decision, the Court made clear that, to apply an adverse inference, "Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this question, and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information." *Saha Thai II*, 789 F. Supp. 3d at 1308. Commerce did both, and Saha Thai does not demonstrate error in Commerce's finding here.

In the Third Remand Results, Commerce explained that, under 19 U.S.C. § 1677e(a)(1), necessary information was not available on the record due to Saha Thai's failure to disclose the requested information on any reportable ties preventing Commerce from asking any potential follow-up questions that would inform an analysis under 19 U.S.C. § 1677(33). Third Remand Results at 7-9. Commerce provided numerous examples of the types of missing information that it was deprived of further requesting, such as "the circumstance in which both Saha Thai and BNK hired the same individual as a human resources manager at the same time, *e.g.*, who was behind hiring this person for both companies"; "whether this human resources manager was just an administrative employee maintaining personnel files and records or a someone with more elevated managerial authority involved in and influencing and handling appointments, promotions, demotions, and firing of high-ranking managers within both companies;" and "what

11

other links may exist between Saha Thai and BNK which Saha Thai failed to report in its questionnaire response." *Id.* at 8-9.  Commerce also found that Saha Thai had withheld requested information, failed to provide such information in a timely manner or in the form or manner requested, and significantly impeded this review consistent with 19 U.S.C. § 1677e(a)(2)(A)-(C).  *Id.* at 11.  Accordingly, Commerce's determination to use facts otherwise available under 19 U.S.C. § 1677e(a) is supported by substantial evidence.

### 1. Necessary Information Regarding Ties Between Saha Tahi And BNK Was Not Available

Saha Thai argues Commerce improperly applied partial adverse facts available because Saha Thai disclosed all relevant information and disclosed all entities that could be considered affiliates.  Saha Thai Br. at 16.  Not only is this statement erroneous, but it mischaracterizes the standard.

First, this Court has *already* held and Saha Thai has *already* conceded that there were at least six home market customers that Saha Thai failed to properly disclose in response to Commerce's questionnaires.  *Saha Thai I*, 663 F. Supp. 3d at 1374-75.  Second, this Court has correctly stated that "Saha Thai never named the six companies as potential affiliates even though it had notice that Commerce was requesting information about companies that *may* have been affiliated." *Id.* at 1368 (citing Saha Thai Section A Questionnaire Resp. at 3, Appx82819). As this Court has already held in this same proceeding, Saha Thai did omit information directly responsive to Commerce's requests for information about potential affiliates.  *See id.* at 1370. Likewise, Commerce asked Saha Thai to identify "distributors, resellers, and other persons involved in the  . . . sale and/or distribution of the merchandise" in its initial questionnaire, and Saha Thai did not identify BNK.  Saha Thai Section A Questionnaire Resp. at 3-4, Appx82,819– 82,820; Third Remand Results at 7.  And when Commerce asked Question Five, regarding

whether any of Saha Thai's "managers . . . currently are or previously were employed by any other company involved in the . . . sale and/or distribution of merchandise," Saha Thai again did not identify BNK or their shared human resource manager. *See* Third Suppl. Questionnaire Resp. at 2-3, Appx96467-68; Third Remand Results at 7. This is the same gap in the record that this Court found for the other six companies, and warrants the same treatment from this Court now. *See Saha Thai I*, 663 F. Supp. 3d at 1375.

Saha Thai also contends that it was unreasonable for it to disclose a shared human resources manager in response to Question Five because "human resources personnel are not involved in "the development, production, sale and/or distribution of the merchandise under review." Saha Thai Br. at 18. Not only does Saha Thai continue to mischaracterize Question Five, it fails to engage at all with Commerce's repeated explanations that Question Five does not ask for "managers specifically involved in the sale of foreign like product, but instead for any ties between Saha Thai and BNK, including managers currently or previously employed by any other *company involved in the sale of foreign like product*, which would include BNK as BNK is a company involved in the home market sales of foreign like product." Third Remand Results at 16. Saha Thai's repeated claim that Question Five asks only for individuals directly involved in the sales or distribution ignores the actual language of the question asking for individuals employed at *companies* involved in the sale or distribution of the product. Accordingly, Saha Thai should have, but did not, disclose this relationship in response to Commerce's repeated questioning. As a result, there is a gap in the record warranting the use of facts available, in compliance with the first step in this Court's previous remand order. *See Saha Thai II*, 789 F. Supp. 3d at 1308 ("Commerce must explain (1) why Saha Thai should have disclosed its shared employee in response to this new question").

13

**2. Saha Thai Failed To Cooperate, Warranting An Adverse Inference Finding Affiliation**

Commerce's determination under 19 U.S.C. § 1677e(b) that Saha Thai failed to cooperate by not acting to the best of its ability because it failed to disclose requested information in response to multiple questionnaires is likewise supported by substantial evidence, especially in consideration that this Court has already sustained that Saha Thai failed to disclose requested relevant ties for multiple home market customers. Third Remand Results at 17. Further, Commerce complied with the notice requirements of 19 U.S.C. § 1677m(d). Thus, Commerce properly applied an adverse inference to find Saha Thai affiliated with BNK.

Saha Thai asserts that it could not have known to report its shared manager with BNK and that "{t}here is no evidence this was an intentional omission." Saha Thai Br. at 17-18. However, as this Court explained earlier in this litigation, "intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element." *Saha Thai I*, 663 F. Supp. 3d at 1375 (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003)). Instead, Saha Thai failed to cooperate because it "understood it had a duty to report potential affiliates" and "refrained from doing so." *Id.* Thus, Commerce's determination that Saha Thai failed to cooperate is supported by substantial evidence.

Saha Thai also contends that this information was unnecessary because "{t}he individual later identified . . . as having worked for both Saha Thai and BNK was a low-level human resources manager{.}" Saha Thai Br. at 17. However, this argument demonstrates exactly how Saha Thai's failure to report impeded the proceeding and failed to cooperate. This late factual assertion about the shared manager cannot be verified, commented upon, or otherwise investigated by Commerce. The lack of additional record information "was a direct result of

Saha Thai's failure, twice-over, to provide complete and accurate responses to Commerce's requests for information." Third Remand Results at 17. Instead, as Commerce explained, if Saha Thai had accurately reported this shared connection with its customer, Commerce could have further inquired about the manager, their job description, involvement and authority, and other potential evidence of affiliation between the companies. *See id.* at 8-9. But Saha Thai did not report and Commerce was forced to rely on limited information found by another interested party, demonstrating the purpose and intent of applying an adverse inference.

Further, Saha Thai asserts that Commerce failed to issue a deficiency notice or otherwise comply with 19 U.S.C. § 1677m(d). Saha Thai Br. at 18-20. However, again, this Court has already held in this proceeding that Commerce's application of partial adverse facts available with respect to six other undisclosed home market customers "complied with {19 U.S.C.} § 1677m(d){.}" *Saha Thai I*, 663 F. Supp. 3d at 1373. Specifically, this Court explained that Commerce complied "by virtue of its series of questionnaires in which the agency repeatedly asked for information about Saha Thai's potential affiliates" and that "Saha Thai's own answers demonstrate that it understood the questions to include not only companies that, in Saha Thai's view, clearly were affiliates but also companies for which the question of affiliation might be disputed." *Id.* at 1373-74. Those facts, and even the specific questionnaires, are identical to the facts present here with BNK, and Saha Thai has not attempted to distinguish them.

Specifically, in this very proceeding, this Court stated, "Commerce was not required to "issue a{n} {additional} supplemental questionnaire to the effect of, 'Are you sure?'" *Id.* at 1374 (citing *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1222 (Ct. Int'l Trade 2018)). Indeed, Commerce explained that Saha Thai's omissions and affirmative response that there was no further responsive information meant that Commerce had no basis to ask further about Saha

Thai and BNK's relationship or that Saha Thai's response was deficient. Third Remand Results at 16-17. If Saha Thai's argument were to be adopted, it would greatly incentivize parties to narrowly respond to Commerce's questions or entirely omit relevant information – safe in the knowledge that, even if Commerce were to discover later that such information had been withheld, a party would have an opportunity to provide such information without repercussion. This Court should deny such weaponization of 19 U.S.C. § 1677m(d). Accordingly, consistent with Commerce's determinations to apply partial adverse facts available to Saha Thai with respect to the six other home market customers, Commerce's determination here with respect to BNK is likewise in accordance with law and in accordance with this Court's remand order. *See Saha Thai II*, 789 F. Supp. 3d at 1308 ("Commerce must explain . . . why Saha Thai failed to act to the best of its ability by not disclosing this information.").

Saha Thai also argues that, because the shared human resources manager was revealed in rebuttal comments by Wheatland, Saha Thai did not have the opportunity to respond to the information. *See* Saha Thai Br. at 18-19. But Saha Thai's ability to respond to information does not undermine its own affirmative obligation to present Commerce full and complete answers, including responsive answers to Commerce's investigation of any potentially affiliated home-market customers. As Commerce explained, "{t}he fact that Wheatland discovered relevant undisclosed ties between Saha Thai and its home market customs . . . *does not* absolve Saha Thai of its failure to cooperate or allow it additional opportunities to remedy its previous responses." Third Remand Results at 15. Saha Thai's argument is a red herring because the record demonstrates that Saha Thai had not cooperated to the best of its ability in the review long before Wheatland's filing.

Further, Saha Thai contends that a shared human resources manager alone is not sufficient to make an affiliation determination under 19 U.S.C. § 1677(33). Saha Thai Br. at 21-22. However, Commerce specifically addressed this point by clarifying that its finding of affiliation was based on a partial adverse inference, made pursuant to 19 U.S.C. § 1677e, due to Saha Thai's failure to cooperate, not an affiliation determination based on record information under 19 U.S.C. § 1677(33). Third Remand Results at 18. Taken to its conclusion, Saha Thai appears to be arguing that Commerce's application of adverse inferences is not supported by substantial evidence unless available record information already supports the determination. Commerce correctly noted that such an interpretation would wholly nullify the purpose of 19 U.S.C. § 1677e by allowing a party to obtain a more favorable result by failing to cooperate. Third Remand Results at 19; *see also* Statement of Administrative Action (SAA), 1994 U.S.C.C.A.N. at 4199.[2] Regardless, Commerce carefully explained how this missing information could have been directly linked to an affiliation finding if Commerce had been timely informed and could further investigate the shared manager. *See* Third Remand Results at 8-9.

Saha Thai also points to *Hyundai Heavy Indus. Co.* to support its argument, but that case involved a relevantly different posture than here. Saha Thai Br. at 21-22 (citing *Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293, 1319 (Ct. Int'l Trade 2019)). In *Hyundai Heavy Indus. Co.*, Commerce applied total facts available with an adverse inference to

---

[2] Congress has stated that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the URAA] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d); *see also Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 539 (Fed. Cir. 2019) (recognizing status of SAA as an authoritative expression).

respondent Hyundai Heavy Industries Co. (HHI) based on three separate substantial evidence findings: that HHI failed to correctly report prices and costs for "accessories," understated the gross unit price for certain home market sales, and failed to disclose an affiliated sales agent. *Id.* at 1299. Relevant here, "Commerce determined that HHI and the 'sales agent' were affiliated pursuant to 19 U.S.C. §§ 1677(33)(D) and (E)." *Id.* at 1319. However, the Court remanded after finding that Commerce failed to provide adequate support or evidence for the affiliation finding. *See id.* Separately, the Court held that that affiliation finding could not support the overall total adverse facts available determination made by Commerce and remanded for Commerce to reconsider the use of an adverse inference. *Id.* at 1319-20.

Here, the facts are far different. Commerce did not use an affiliation determination under 19 U.S.C. § 1677(33) to support an overarching application of total adverse facts available to Saha Thai and ignore Saha Thai's submissions. Rather, Commerce is applying partial adverse facts available to narrowly find that Saha Thai is affiliated with BNK under 19 U.S.C. § 1677e. *See* Third Remand Results at 7-8. *Hyundai Heavy Indus. Co.* is not analogous to the posture of this case and does not support the changing the standard for applying adverse inferences under 19 U.S.C. § 1677e. Accordingly, Commerce's determination to apply partial adverse facts available is supported by substantial evidence.

## III.    Any Remand Order, If Necessary, Should Allow Commerce To Continue Investigating

Finally, Saha Thai contends that, if this Court finds that the Third Remand Results are legally erroneous, the Court should remand "with specific instruction to re-calculate Saha Thai's dumping margin without the unlawful finding of affiliation between Saha Thai and BNK." Saha Thai Br. at 23; *see also id.* at 15. Even were the Court to find that Commerce's remand results were unlawful (and it should not), this Court should not entertain Saha Tahi's extreme request.

18

This Court's standard of review in antidumping cases is defined by 19 U.S.C. § 1516a(b)(2)(a), requiring that the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(2)(a). Further, 28 U.S.C. § 2643(a)(5) limits the Court by prohibiting it from ordering declaratory relief. Thus, this Court does not have the power to order specific relief, and, when it finds that Commerce lacks substantial evidence, the Court may only remand for reconsideration of the evidence or to open the record. Saha Thai points to no authority for this Court to issue a remand order prohibiting Commerce from continuing to investigate and comply with its statutory requirements. Accordingly, this Court should not entertain Saha Thai's request.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ Collin T. Mathias
Collin T. Mathias
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480

OF COUNSEL:
JONZACHARY FORBES
Senior Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce

Washington, D.C.                           Ben Franklin Station
                                           Washington, D.C. 20044
                                           Telephone: 202-307-0315
                                           E-mail: Collin.T.Mathias@usdoj.gov

November 24, 2025                          *Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation in Court of International Trade Standard Chambers Procedures § 2(B)(1), and contains approximately 5,545 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Collin T. Mathias</u>