UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,<br><br>*Plaintiff,*<br><br>and<br><br>THAI PREMIUM PIPE COMPANY, LTD.<br><br>*Plaintiff-Intervenor,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC.,<br><br>*Defendant-Intervenors.* | Court No. 21-00627 |

**DEFENDANT-INTERVENOR WHEATLAND TUBE COMPANY'S
REPLY TO COMMENTS ON THE THIRD REMAND REDETERMINATION**

Roger B. Schagrin
Christopher T. Cloutier
Saad Y. Chalchal*
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

* Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies

Dated: December 8, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

I. INTRODUCTION ..................................................................................................... 1

II. PROCEDURAL HISTORY....................................................................................... 2

III. ARGUMENT ............................................................................................................. 5

IV. CONCLUSION ........................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
   515 F.3d 1372 (Fed. Cir. 2008)..................................................................................10

*Am. Silicon Techs. v. United States*,
   334 F.3d 1033 (Fed. Cir. 2003)..................................................................................10

*Changzhou Wujin Fine Chemical Factory Co. v. United States*,
   701 F.3d 1367 (Fed. Cir. 2012)..................................................................................10

*Hyundai Heavy Indus. Co. v. United States*,
   393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019) ...............................................................9

*Maverick Tube Corp. v. United States*,
   857 F.3d 1353 (Fed. Cir. 2017)....................................................................................8

*Nan Ya Plastics Corp. v. United States*,
   810 F.3d 1333 (Fed. Cir. 2016)....................................................................................8

*New Mexico Garlic Growers Coalition v. United States*,
   352 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ...............................................................8

*NEXTEEL Co. v. United States*,
   28 F.4th 1226 (Fed. Cir. 2008) ..................................................................................10

*Papierfabrik August Koehler SE v. United States*,
   843 F.3d 1373 (Fed. Cir. 2016)....................................................................................7

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*,
   789 F. Supp. 3d 1293 (Ct. Int'l Trade 2025) ..........................................................4–6

*Saha Thai Steel Pipe Pub. Co. v. United States*,
   663 F. Supp. 3d 1356 (Ct. Int'l Trade 2023) ....................................................3–5, 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006)....................................................................................8

*Tri Union Frozen Products, Inc. v. United States*,
   163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ...............................................................8

**Statutes**

19 U.S.C. § 1677m(d)..................................................................................................3–4

I.     **INTRODUCTION**

Defendant-Intervenor Wheatland Tube Company ("Wheatland") respectfully submits this reply to the comments filed by plaintiff Saha Thai Steel Pipe Public Co., Ltd. ("Saha Thai") regarding the final results of redetermination filed by the U.S. Department of Commerce ("Commerce") in this appeal.[1] *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 112-1 (Aug. 11, 2025) ("*Third Remand Results*"). After nearly four years of litigation and three remands, there remains only one live issue in this case, *i.e.*, whether Commerce lawfully applied partial adverse facts available ("AFA") in finding that Saha Thai and home market customer BNK Steel Co. Ltd. ("BNK") are affiliated.

On remand, in accordance with this Court's instructions, Commerce took new agency action by changing the factual basis for the application of partial AFA and by revising the rationale for its AFA finding of affiliation between Saha Thai and BNK. Wheatland fully supports the *Third Remand Results*, which comply with the remand order, are supported by substantial evidence, and are in accordance with law. The Government's reply demonstrates that Saha Thai's arguments to the contrary are meritless and should be rejected.[2] Wheatland hereby incorporates by reference and endorses the arguments made by the Government in its reply. In this submission, we briefly cover the procedural history of this case and supplement the Government's arguments in further support of the *Third Remand Results*.

---

[1] Saha Thai's remand comments are hereinafter referred to as "Saha Thai's Comments" (ECF Nos. 118 and 119). Plaintiff-intervenor Thai Premium Pipe Co., Ltd. concurs with and incorporates by reference the remand comments filed by Saha Thai (ECF No. 117).

[2] The Government's reply is hereinafter referred to as "Gov't Reply" (ECF No. 131).

II.     **PROCEDURAL HISTORY**

Wheatland agrees with and adopts the comprehensive account of the facts as set forth within the "Background" section of the Government's reply comments. *See* Gov't Reply at 2–7. We briefly recount the procedural history of this case to highlight that this matter was remanded for procedural reasons and that Commerce's AFA analysis and finding of affiliation between Saha Thai and BNK is materially the same as the court-approved AFA finding of affiliation between Saha Thai and the six other companies that it failed to disclose as potential affiliates in its questionnaire responses.

*Final Results*

In the underlying administrative review, Saha Thai was not forthcoming in response to multiple requests for information on Saha Thai's ties with other companies and deprived Commerce of the opportunity to collect the information it needed to conduct a full affiliation analysis. Saha Thai failed to disclose its relationship (*e.g.*, shared ownership, board members, or employees) with *seven* companies, including BNK. *See* Saha Thai Section A Response at 9–16 (Appx82825–82832).[3] Saha Thai again withheld the identities of these potential affiliates in response to a supplemental questionnaire, which created a factual gap in the record, and Saha Thai's efforts fell far short of the maximum it could have done. This went unnoticed until Wheatland placed information on the record that showed Saha Thai was not truthful in its questionnaire responses because it omitted pertinent information regarding potential affiliates, including the fact that Saha Thai and BNK shared a human resources manager. *See* Wheatland Rebuttal at Exhibit 3 (Appx97868–97995); *see also* Saha Thai Third Suppl. Questionnaire Resp. at Exhibit 2 (Appx96484).

---

[3] Citations to the underlying administrative record reference the public joint appendix (ECF No. 56) and confidential joint appendix (ECF Nos. 57 and 58) filed on September 9, 2022.

Commerce pointed to a gap in the record with respect to Question Six of the third supplemental questionnaire, which asked Saha Thai whether any company officials held a stake in such other companies. *See* Saha Thai Third Suppl. Questionnaire Resp. at 2–3 (Appx96467–96468). Commerce therefore applied partial AFA and found that Saha Thai is affiliated with BNK, along with the six other companies that Saha Thai failed to disclose in its questionnaire responses. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 86 Fed. Reg. 69,620 (Dep't Commerce Dec. 8, 2021) ("*Final Results*") (Appx14281–14286), and accompanying Issues and Decision Memorandum at Comment 1 (Appx14294–14297); *see also* Saha Thai Final Analysis Memorandum at 1–3 (Appx14320–14322).

*Second Remand Order*

The Court sustained Commerce's AFA finding of affiliation with respect to six of the seven companies that Saha Thai failed to disclose. *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 663 F. Supp. 3d 1356, 1370–75 (Ct. Int'l Trade 2023) ("*Second Remand Order*"). In doing so, the Court recognized that "it is … vital that parties identify to Commerce all potentially affiliated companies so that Commerce will only use arm's length transactions when calculating normal value." *Id.* at 1370. However, the Court remanded Commerce's AFA finding of affiliation between Saha Thai and BNK because of a subtle yet important factual difference regarding BNK that did not allow Commerce to rely on the identical AFA analysis as the other six companies. *Id.* at 1375–77. Specifically, the Court held that the AFA finding of affiliation could not be sustained because, unlike the six other companies that Saha Thai failed to disclose, the evidence of a shared human resources manager who typically would not have an equity or debt position in a company, without more, does not support the conclusion that Saha Thai's

3

response to Question Six was deficient with respect to BNK. *Id.* The Court therefore remanded the matter for reconsideration.

### Second Remand Results

On remand, Commerce recalculated Saha Thai's dumping margin without applying partial AFA and treating BNK as an affiliated company, doing so under protest. *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 87-1 (Oct. 10, 2024) ("*Second Remand Results*"). The agency maintained that its original position was lawful based on Saha Thai's less-than-forthcoming response to Question Five of the third supplemental questionnaire, which asked Saha Thai whether it shared employees with any other companies involved in the production, sale, or distribution of the merchandise under consideration. As a result of this decision, Saha Thai's weighted-average dumping margin was reduced from 14.74 percent to 1.65 percent. *Id.* at 9.

### Third Remand Order

The Court remanded on this issue a second time because of a procedural error Commerce committed when it reversed course under respectful protest. *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 789 F. Supp. 3d 1293, 1302–08 (Ct. Int'l Trade 2025) ("*Third Remand Order*"). Specifically, the Court explained that the *Second Remand Results* could not be sustained because Commerce's protest claimed the agency maintained its position in the *Final Results*, but offered new reasoning by stating that its original AFA finding was based on Saha Thai's failure to provide information requested in Question Five, not Question Six, of the third supplemental questionnaire. *Id.* In other words, Commerce could not claim to maintain its original position while simultaneously changing the factual predicate for the decision to resort to AFA. The Court ordered Commerce to cure the procedural defect. Notably, the Court stated that

4

Commerce may "chang{e} the question on which it bases its analysis" so long as it "explain{s} (1) why Saha Thai should have disclosed its shared employee in response to this new question and (2) why Saha Thai failed to act to the best of its ability by not disclosing this information." *Id.* at 1308.

### *Third Remand Results*

In the *Third Remand Results*, in accordance with the remand order, Commerce took new action by changing the factual basis for the application of AFA and by revising the rationale for its AFA finding of affiliation between Saha Thai and BNK. Commerce explained that it erred in the *Final Results* when it referenced Saha Thai's response to Question Six rather than Question Five of the third supplemental questionnaire as the source of the gap in the record. *See Third Remand Results* at 3–4. Commerce therefore revised its AFA analysis by referencing Question Five and detailed why Saha Thai's failure to disclose its ties with BNK warranted the application of partial AFA. *Id.* at 4–11. The analysis is virtually identical to the AFA finding of affiliation between Saha Thai and the six other undisclosed companies that the Court already sustained in the *Second Remand Order*. The only difference is that the factual gap in the record for BNK concerned Question Five rather than Question Six of the third supplemental questionnaire. As a result of this decision, Saha Thai's weighted-average dumping margin reverted to 14.74 percent. *Id.* at 11–12.

### III.  ARGUMENT

As stated above, Wheatland incorporates by reference and endorses the arguments made by the Government in its reply. Below, we supplement the Government's reply on certain issues and provide additional reasons why Saha Thai's opposition to the *Third Remand Results* is baseless.

5

*First*, in arguing that the *Third Remand Results* do not comply with the remand order, Saha Thai claims that there is no truth to Commerce's explanation that it intended to reference to Question Five in the *Final Results* but inadvertently referenced Question Six. *See* Saha Thai Comments at 12–15. This claim is irrelevant. The remand order only required that Commerce acknowledge that it erred; it did not instruct Commerce to supply the reason the error was committed in the first place. *See Third Remand Order*, 663 F. Supp. 3d at 1308. As required, Commerce forthrightly acknowledged the error it made in the *Final Results*. *See Third Remand Results* at 3–4. In any event, the record supports Commerce's explanation on this point. Both Question Five and Question Six are reproduced below:

> 5. Please state whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads currently are or previously were employed by any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the dates of current and/or previous employment at Saha Thai and/or its affiliates and the third party, and name(s) of the positions held.
>
> 6. Please state whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale and/or distribution of the merchandise under review. If so, please provide the complete details of the equity or debt positions held, as well as a complete ownership chart for the company and a list of managers, directors, officers, and department heads.

*See* Saha Thai Third Suppl. Questionnaire Resp. at 2–3 (Appx96467–96468). Saha Thai's response to Question Six (or lack thereof) was relevant for the six other companies that were never identified as potential affiliates. Given the relevance of Question Six to the other companies, coupled with the fact that there is considerable overlap in the language of both questions, it is understandable why Commerce mistakenly referenced Question Six in the *Final Results*.

6

*Second*, Saha Thai makes the incredible assertion that "{t}he evidentiary record demonstrates that Saha Thai fully cooperated to the best of its ability." *See* Saha Thai Comments at 15–17. In the context of this appeal, the Court found it clear from the evidence that "Saha Thai understood it had a duty to report *potential* affiliates." *See Second Remand Order*, 663 F. Supp. 3d at 1375 (emphasis added). The Court has ruled that Saha Thai failed to cooperate to the best of its ability when it did not report six other companies as potential affiliates in response to Section A and Question Six of the third supplemental questionnaire. *Id.* at 1375. Similarly, the *Third Remand Results* explain that Saha Thai failed to disclose its ties with BNK in response to Section A and Question Five of the third supplemental questionnaire. *See Third Remand Results* at 14–15. As Commerce stated, this "failure to disclose requested relevant information when given multiple opportunities to do so is an omission demonstrating a failure to cooperate with Commerce's request for information." *Id.* at 15. The bottom line is that Saha Thai's conduct in the investigation — in particular, its failure to disclose *seven* potential affiliates — was far less than the maximum it could have done and was not even close to satisfying the "best of its ability" standard of cooperation for mandatory respondents.

*Third*, Saha Thai's reliance on 19 U.S.C. § 1677m(d) is misplaced. *See* Saha Thai Comments at 19–21. Commerce's obligations under that statute are not triggered when a respondent intentionally submits incomplete data. *See Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016). Saha Thai has all but admitted that it made a conscious decision not to report the shared human resources manager because it decided for itself that the information was not relevant. Even if the statute applies here, Commerce provided Saha Thai with multiple opportunities to report its ties with companies involved in the production, sale, or distribution of the merchandise under review — Question 2.h of Section A and Question

7

Five of the third supplemental questionnaire. *See Third Remand Results* at 6–7. One supplemental questionnaire is all that is required to satisfy Commerce's obligation under 19 U.S.C. § 1677m(d). *See New Mexico Garlic Growers Coalition v. United States*, 352 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018) (citing *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017)).

*Fourth*, Saha Thai argues that it was never given an opportunity to respond to the factual information placed on the record by Wheatland because it was not directly responsive to Saha Thai's third supplemental questionnaire response. *See* Saha Thai Comments at 18–20. Saha Thai is in no position to complain, and we submit two points to supplement the Government's reply. *See* Gov't Reply at 16. While it is true that the regulations did not automatically entitle Saha Thai to an opportunity to rebut Wheatland's filing, Saha Thai never asked Commerce for permission to do so during the administrative review. Commerce cannot be expected to grant a party leave to submit factual information absent a request. *See Tri Union Frozen Products, Inc. v. United States*, 163 F. Supp. 3d 1255, 1292–93 (Ct. Int'l Trade 2016). In addition, Saha Thai has waived the argument because it could have raised its procedural concern in its complaint and Rule 56.2 opening brief, but chose not to do so. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."). Saha Thai cannot make this new argument concerning the underlying administrative review after four years of litigation and three remands. Thus, exhaustion and waiver requirements bar Saha Thai from making this argument for the first time at this juncture. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1350 (Fed. Cir. 2016).

*Fifth*, relying on the decision in *Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293 (Ct. Int'l Trade 2019), Saha Thai asserts that the analysis in that case is instructive because the Court "held that a bare citation to a shared employee with a shared email was insufficient to uphold Commerce's finding of affiliation through the application of an adverse inference." *See* Saha Thai Comments at 5. The Government distinguishes the *Hyundai* case. *See* Govt' Reply at 17–18. However, there are other key distinctions that make *Hyundai* an inapt comparison. In *Hyundai*, as the Government points out, Commerce applied total AFA for three reasons, one of which included a sales agent that was not reported as an affiliate and yet used a Hyundai email address and job title. *See Hyundai*, 393 F. Supp. 3d at 1299. A critical difference is that the Court in *Hyundai* found that the use of facts otherwise available was not justified, let alone AFA. *Id.* at 1318–19. Unlike Saha Thai, Hyundai disclosed the sales agent in its initial questionnaire response and further explained its position why no affiliation existed in response to a supplemental questionnaire. *Id.* Hyundai was cooperative when it responded to Commerce's requests for information, and there was no gap in the record that needed to be filled. Here, however, Saha Thai never disclosed its ties with *seven* potential affiliates in response to Section A and the third supplemental questionnaire. Saha Thai's failure to provide the requested information created a gap in the record regarding the extent of Saha Thai's relationship with BNK and deprived Commerce of an opportunity to investigate the issue further. Commerce's application of partial AFA in this case filled that gap and addressed Saha Thai's noncooperation.

*Sixth*, and finally, Saha Thai requests another remand, this time with "a clear directive from the Court for Commerce to recalculate Saha Thai's dumping margin without a finding of affiliation between Saha Thai and BNK." *See* Saha Thai Comments at 15; *see also id.* at 4 and 23. A remand is not warranted, because the *Third Remand Results* explain why the law and facts

9

justify the application of partial AFA to find affiliation between Saha Thia and BNK. However, in the event the Court decides that a remand is required, we agree with the Government that the Court should not limit Commerce's ability to administer the antidumping law by directing a particular outcome and instructing Commerce to treat BNK as an unaffiliated home market customer in the margin calculations. *See* Govt' Reply at 18–19. The U.S. Court of Appeals for the Federal Circuit has repeatedly stated that the type of limiting instruction that Saha Thai seeks is generally disfavored and is not within this Court's authority. *See Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367, 1374–75 (Fed. Cir. 2012); *NEXTEEL Co. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2008); *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1383 (Fed. Cir. 2008); *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1038–39 (Fed. Cir. 2003). Thus, even if the Court were to remand the case, the Court may only remand for further consideration and allow Commerce, the agency charged with administering the antidumping law, to fulfill its statutory duty by determining for itself the most suitable way to proceed.

## IV.       CONCLUSION

For the reasons set forth in the Government's reply and in this submission, Commerce's *Third Remand Results* comply with the remand order, are supported by substantial evidence, and are in accordance with law. Therefore, Wheatland respectfully requests that the Court enter judgment sustaining the *Third Remand Results*.

Respectfully Submitted,

/s/ Christopher T. Cloutier
Roger B. Schagrin
Christopher T. Cloutier
Saad Y. Chalchal*
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

* Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies.

Dated: December 8, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, <br><br> *Plaintiff,* <br><br> and <br><br> THAI PREMIUM PIPE COMPANY, LTD. <br><br> *Plaintiff-Intervenor,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC., <br><br> *Defendant-Intervenors.* | Court No. 21-00627 |

**ORDER**

Upon consideration of the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 112-1, the comments filed in opposition to the remand redetermination, the responses thereto filed in support of the remand redetermination, all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the remand redetermination is sustained; and it is further

**ORDERED** that judgment is entered in favor of the United States; and it is further

2

**ORDERED** that the subject entries shall be liquidated in accordance with the final court decision, including all appeals, as provided for in section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e).

**SO ORDERED**.

Dated: _____, 2025
    New York, New York

                                                              Honorable Gary S. Katzmann, Judge
                                                              U.S. Court of International Trade

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,080 words, including text, footnotes, and headings, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Christopher T. Cloutier
Christopher T. Cloutier

Dated: December 8, 2025